# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT G. WINGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08:CV-00368 |
| ) | |
| THYSSENKRUPP MATERIALS NA, INC., ) | Honorable Samuel Der-Yeghiayan |
| d/b/a COPPER and BRASS SALES, INC. ) | Magistrate Judge Schenkier |
| ) | |
| Defendant. ) | |
| ) | |

### AFFIDAVIT OF RANDY LUNT

STATE OF ILLINOIS    )
                     )ss
COUNTY OF COOK       )

I, Randy Lunt, being first duly sworn, depose and state, based on my personal knowledge, I am competent to testify as follows:

1. Since 2001, I have served as the plant manager for ThyssenKrupp Materials NA, Inc., d/b/a Copper and Brass Sales, Inc.'s ("Copper and Brass" or "the Company") warehouse facility located in Schaumburg, Illinois.

2. My job responsibilities include responsibility for disciplining the hourly workforce, and their terms and conditions of employment are governed by the collective bargaining agreement between Copper and Brass and Teamsters Local 714 ("the CBA") and related work rules.

3. Pursuant to its authority under the CBA, Copper and Brass enacted work rules governing its hourly workforce. Pursuant to the work rules, certain categories of infractions are

subject to progressive discipline, and certain specified major work rule offenses, such as falsifying company documents, may result in immediate termination. The work rules further specify that, when possible, progressive discipline will be followed but the severity of the violation as well as the employee's past work rule violations may influence management's action. See Def.'s L.R. 56.1 Statement of Undisputed Material Facts, Ex. L.

4.   Plaintiff Robert Wingo ("Plaintiff") was employed as a warehouse clerk at Schaumburg from 1984 until his termination on December 3, 2007.

5.   At the time of his termination, Plaintiff was assigned to the non-processing rod, bar and wire ("RBW") work station for more than a year, where his primary responsibilities consisted of packing orders for delivery to Copper and Brass's customers. He had more than ten years of experience at that work station. A critical component of that job included preparing reliable paperwork to enable the Company to track its inventory and properly service and bill its customers.

6.   Between 1995 and 2007, and excluding his termination, Plaintiff was disciplined at least twenty-two times including two suspensions in 1999. As of the date of his termination, his extensive disciplinary history included discipline issued on fifteen occurrences for errors with his paperwork:

| Date | Discipline |
|---|---|
| 5/28/99 | Letter of counsel, failure to follow order procedures |
| 6/15/99 | Oral warning, repetitive work order errors |
| 1/10/01 | Oral warning, incorrect labeling of work orders |
| 2/12/01 | Written warning, failure to follow order procedures |
| 10/1/02 | Oral warning, repetitive work order errors |
| 9/12/[no year] | Oral warning, repetitive work order errors |
| 9/22/03 | Written warning, repetitive work order errors |
| 9/22/04 | Written warning, incorrect labeling of work orders |
| 5/11/05 | Oral warning, repetitive work order errors |

[chart continued on next page]

| Date, cont. | Discipline, cont. |
|---|---|
| 6/22/07 | Oral warning, repetitive work order errors |
| 10/4/07 | Written warning, repetitive work order errors |
| 10/10/07 | One-day suspension, repetitive work order errors |
| 11/8/07 | Three-day suspension, repetitive key punch errors |
| 11/19/07 | Written notice, work order errors |
| 11/30/07 | Written notice, work order errors |

7. Six of these disciplines for errors in preparing his paperwork occurred between June and December, 2007.

8. After Plaintiff was suspended for three days on November 8, 2007 for repetitive errors with his paperwork, pursuant to the work rules, his next offense would subject him to termination.

9. On multiple occasions, including November 14 and 30, 2007, I counseled Plaintiff about the importance of properly preparing his paperwork and the consequences of his failure to do so.

10. Sometime in November or December, 2007 I made Plaintiff an offer to reassign him to the helper position in the Schaumburg warehouse.

11. Under the CBA, Plaintiff could have filed a grievance challenging any of his discipline. He never filed any grievance until after he was terminated on December 3, 2007. His union elected not to process that grievance to arbitration.

12. On November 29, 2007, Plaintiff's supervisor, Mark DeMien, brought to my attention that he had discovered that Plaintiff's daily production logs for November 28 and 29, 2007 misrepresented that he had completed work orders that had actually been processed by other employees.

13. Daily production logs are prepared by warehouse employees to accurately track the work orders that they complete during their shift.

3

14. Based on the information provided by Mark DeMien, I reviewed other daily production logs prepared by Plaintiff during November, 2007. Through that investigation, it was determined that Plaintiff also misrepresented that he had completed work orders actually done by other employees on November 15, 19 and 20, 2007.

15. After concluding the investigation, and based on Plaintiff's overall work record, I decided to terminate him on December 3, 2007 for falsifying company documents, which is a dischargeable offense for the first occurrence under the work rules. Plaintiff's age was not a factor in my decision to terminate or discipline him.

16. No other hourly employee at Schaumburg had as extensive of a disciplinary history as Plaintiff, whether viewed during the last six months of 2007 or the last twelve years of his employment with the Company. No other warehouse employee had made the misrepresentation on his daily production logs like Plaintiff.

17. The amount of discipline Plaintiff received is far more extensive than any other Schaumburg employee during my tenure as plant manager.

18. At the time of Plaintiff's termination, there were a total of thirty-nine hourly employees at Schaumburg. Seventeen of the employees were between the ages of 40 and 49 years, four of the employees (not including Plaintiff) were between the ages of 50 and 59 years, and two employees were over age 60 years. A total of twenty-three employees (not including Plaintiff) were over age 40 years.

19. Currently there are a total of thirty-four hourly employees at Schaumburg. Fifteen of the employees are between the ages of 40 and 49 years, six of the employees are between the ages of 50 and 59 years, and two employees are over age 60 years. A total of twenty-three employees are over age 40 years.

4

20. Plaintiff was 54 years old at the time of his termination.

21. Tyler DeMien was 22 years old at the time of Plaintiff's termination.

22. Eluterio Herrera was 43 years old at the time of Plaintiff's termination.

23. Isidro Garcia was 52 years old at the time of Plaintiff's termination.

24. Lizardo Hernandez was 35 years old at the time of Plaintiff's termination.

25. Ray Cather was 27 years old at the time of Plaintiff's termination.

26. Frederick Stelzik was 64 years old at the time of Plaintiff's termination.

27. Lance Amack was 63 years old at the time of Plaintiff's termination.

28. Denny Prosser was 51 years old at the time of Plaintiff's termination.

29. Arturo Flores was 51 years old at the time of Plaintiff's termination.

30. Tony Falco was 49 years old at the time of Plaintiff's termination.

31. On June 24, 2008, Tyler DeMien was terminated for his attendance.

Further Affiant sayeth not.

_____
Randy Lunt

Subscribed and sworn to before me
this _18_ th day of July, 2008

_____
Notary Public   _Cook_ County, IL
My Commission Expires: _09-01-08_
Acting in the County of Cook

**OFFICIAL SEAL**
JOSE T. VILLAFUERTE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 09/01/08

DETROIT.3206762.2