IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT G. WINGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:08:CV-00368 |
| | ) | |
| THYSSENKRUPP MATERIALS NA, INC., | ) | Honorable Samuel Der-Yeghiayan |
| d/b/a COPPER and BRASS SALES, INC. | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Robert Wingo ("Plaintiff") was terminated from his employment as a warehouse clerk by his employer, ThyssenKrupp Materials NA, Inc., d/b/a Copper and Brass Sales, Inc. ("Copper and Brass" or "the Company") at age 54 after it was determined that on two consecutive days he misrepresented on his daily production logs, which are a critical document for tracking the Company's inventory, that he completed work orders that actually were done by other employees. Plaintiff's termination for that offense by Copper and Brass's plant manager, who was age 54, was consistent with the Company's work rules and it occurred after he accumulated an extensive disciplinary record, not only in the few months immediately preceding his termination, but over the course of the years of his employment with the Company. Despite these incontrouertible facts, Plaintiff now alleges age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Plaintiff cannot prove his claim under either the direct or indirect methods of proof.

Plaintiff has no evidence of comments establishing age animus by the decision maker who was his contemporary. Rather his claim is supported by his unfounded assertion that similarly situated young employees were treated more favorably than him. By his own admission, none of his comparables were in fact similarly situated; many held different jobs performing different duties than him including not preparing the same paperwork which resulted in his termination. Moreover, none committed the same dischargeable offense or had similar extensive and abysmal disciplinary records. His remaining evidence consists of his difference of opinion with Copper and Brass's termination decision and speculation, neither of which constitutes evidence of age discrimination. Thus, Plaintiff cannot prove his claim via the direct method.

Plaintiff cannot establish his claim through the indirect method as well. Plaintiff cannot establish a *prima facie* case of age discrimination because he was not meeting his employer's legitimate job performance expectations. Plaintiff has admitted that much of the discipline that he received was warranted because of his performance mistakes. Plaintiff also cannot establish that there were any similarly situated younger employees treated more favorably than him -- none of his comparables committed the same dischargeable offense or had similar disciplinary records. For that matter, Plaintiff cannot establish a replacement by a younger employee because, initially employees worked overtime to fill the job, including one employee age 50; or some four years younger than Plaintiff, and the position was then filled pursuant to the collective bargaining agreement by an employee from another shift. Thus, no employee was ever hired to replace Plaintiff.

Nor can Plaintiff establish that the legitimate nondiscriminatory reason for his termination; the falsification of the Company's documents/records on two consecutive days in November, 2007, was a pretext for unlawful discrimination. He admits that such an offense was

covered by the work rules which warranted immediate termination. He also admitted the appropriateness of most of his prior discipline, including that issued in the few months immediately preceding his termination when he was repeatedly disciplined and warned about properly and accurately maintaining his paperwork. Plaintiff has no evidence to support his age discrimination claim, further illustrated by the fact that both before and after his termination a majority of the warehouse employees were over age 40.

For the following reasons, Copper and Brass's motion for summary judgment should be granted and Plaintiff's complaint dismissed.

## SUMMARY OF UNDISPUTED FACTS

Copper and Brass is a processor and distributor of non-ferrous metals who employed Plaintiff as a first-shift warehouse clerk in its Schaumburg, Illinois warehouse from 1984 until his December 3, 2007 termination for falsifying company documents and records at age 54. (Statement of Material Facts ("SMF") ¶¶ 2-4.) Plaintiff's job duties included verifying the accuracy of customer work orders, preparing related paperwork and documents, packing and labeling customer shipments, and entering relevant data onto Company reports and computers. (SMF ¶ 7, 21.) Employees called side load operators typically brought material to Plaintiff for filling customer orders, but it was his responsibility to ensure that orders were correct. (SMF ¶ 9.)

Plaintiff admits that computer entry of order data and preparing daily production logs detailing completed work orders were "essential functions" of his duties, and critical to the Company's ability to track inventory, bill customers, and provide efficient and accurate customer service. (SMF ¶¶ 22, 24-26.) Plaintiff's supervisor, foreman Mark DeMien ("M. DeMien,"), who was 46 years old at the time of Plaintiff's termination, counseled Plaintiff on several occasions regarding entering such data accurately. (SMF ¶¶ 11, 23.)

Discipline of the hourly Schaumburg warehouse employees, including Plaintiff, is conducted pursuant to the collective bargaining agreement ("CBA") between Copper and Brass and Plaintiff's union, Teamsters Local 714, and related work rules ("the Work Rules"). (SMF ¶¶ 6, 29.) Certain categories of work rules are subject to progressive discipline (such as repetitive work order errors, which generally require four occurrences before termination), but other specified categories of major offenses (such as falsifying daily production logs or other documents) justify immediate termination. (SMF ¶¶ 30-32.)

When terminated on December 3, 2007, Plaintiff had an extensive disciplinary record unlike any other hourly Schaumburg warehouse employee. (SMF ¶ 68.) Between 1995 and 2006, he was disciplined at least fifteen times. Nine of those disciplines related to Plaintiff's repetitive work order errors pertaining to his documentation and failure to follow relevant procedures, for which he received numerous oral and written warnings. His other disciplinary actions during that time were in response to his lack of production, wasting time and failure to perform a task, and included two separate suspensions. (SMF ¶ 33.) Plaintiff never grieved any of this discipline under the CBA, although he knew he could have done so, and admits that he made the various mistakes that led to his discipline. (SMF ¶¶ 34, 59.)

In the six months immediately preceding his termination in 2007, Plaintiff was disciplined on an additional seven occasions (excluding his termination), six of which related to deficiencies in his paperwork and documentation. These latter disciplines followed Copper and Brass's progressive disciplinary policy, as Plaintiff was given oral and written warnings for repetitive work order errors before being suspended for the same offenses for one day on October 10, 2007, and then for three days on November 8, 2007. He then received additional counseling on these issues on November 19 and 30, 2007. (SMF ¶¶ 35-41.) Prior to his

4

termination, Plaintiff never grieved any of the 2007 discipline under the CBA either, and again admitted he was at fault for the mistakes. (SMF ¶¶ 34, 53-54, 59.)

During a routine check of daily production logs on November 29, 2007, M. DeMien discovered that Plaintiff's November 28 and 29, 2007 logs indicated that he had completed work orders that other employees had done and packed. (SMF ¶¶ 43-44.) Only completed and packed orders are to be listed on daily production logs, and Copper and Brass provided numerous training opportunities on properly preparing these logs. At a minimum, employees must note the reason why a particular order was not completed on their logs, something which Plaintiff did not do. (SMF ¶¶ 27-28, 47-48.)

After M. DeMien's discovery, plant manager Randy Lunt ("Lunt"), age 54 at Plaintiff's termination, reviewed a random sample of Plaintiff's other November daily production logs and found three additional times where he logged work orders that other employees actually completed. (SMF ¶¶ 10, 45-46.) Based on the review of Plaintiff's daily production logs and the fact on two consecutive days his daily production logs misrepresented he completed all of the work orders listed, Lunt decided to terminate Plaintiff's employment on December 3, 2007. Thus, on that date, Plaintiff was terminated for falsifying company documents/records on November 27 and 28, 2007, pursuant to the work rules. (SMF ¶¶ 49-50.)

Although Plaintiff now claims that Copper and Brass's actions in suspending him for one day on October 10, 2007 and terminating him constitute unlawful age discrimination, he never filed a written grievance during his employment challenging the Company's discipline against him until he was terminated. (SMF ¶¶ 52, 59.) Even the grievance that he filed following his termination, and a discussion he had with one of the Company's vice presidents, made no mention of age discrimination. (SMF ¶¶ 60-62.) Finally, Plaintiff concedes that he made

5

mistakes that led to all of the disciplinary action, including his termination, and that his theory that his termination was age-related is based upon mere speculation. (SMF ¶¶ 53-55.)

Plaintiff also cannot establish any younger employees that were similarly situated to him. Three of his comparables admittedly performed different work than him. Two of them are side load operators: Tyler DeMien ("T. DeMien") and Lizardo Hernandez ("Hernandez"), and one is a receiving clerk (Patrick Bishop ("Bishop")). None of those employees, as Plaintiff admits, prepare the same paperwork, including daily production logs, as he did. (SMF ¶ 64.) Several comparables (T. DeMien, Eluterio Herrera ("Herrera"), Mario Alvarez ("Alvarez") and Isidro Garcia ("Garcia")) worked on different shifts and had different supervisors than Plaintiff. (SMF ¶ 67.) Garcia is 52 years old and Alvarez is 47 years old, only two and seven years younger, respectively, than Plaintiff. (SMF ¶¶ 4, 16-17.) Plaintiff admittedly has no knowledge regarding his alleged comparators' disciplinary records. In fact, none of them had comparable disciplinary records even remotely like Plaintiff's, as established by Lunt. (SMF ¶¶ 65-66, 68-71, 76.) Further, three of the comparables (Herrera, Alvarez and Garcia) were also disciplined for the same repetitive work order errors as Plaintiff was. (SMF ¶ 74.)

Copper and Brass never hired a replacement for Plaintiff but instead filled his job using established job-bidding procedures under the CBA. Initially, Copper and Brass covered Plaintiff's duties with overtime worked by warehouse clerks on other shifts (Arturo Flores, age 50, and Herrera), and then filled the position permanently based upon a seniority-based bidding process under the CBA from a pool of interested warehousemen. (SMF ¶¶ 78-79.) The Company continues to employ numerous warehouse employees in the protected-age class (including some that are older than Plaintiff). (SMF ¶¶ 56, 58, 78-79.) At the time of Plaintiff's termination, twenty-three of the thirty-nine Schaumburg hourly employees were over age 40 years (not including Plaintiff). Of these twenty-three, seventeen were between the ages of 40

6

and 49 years, four (not including Plaintiff) were between the ages of 50 and 59 years, and two were over age 60 years. Today, twenty-three of thirty-four hourly employees are over age 40; with six between the ages of 50 and 59 years, and two over age 60 years. (SMF ¶ 20.)

## ARGUMENT

### I.  PLAINTIFF'S AGE DISCRIMINATION CLAIM LACKS MERIT

A plaintiff claiming age discrimination may proceed under either the direct or indirect method of proof. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Regardless of the method used, Plaintiff must show that Copper and Brass would not have taken action against him "but for" intentional age discrimination. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). Plaintiff cannot make the necessary showing here under either method of proof.

#### A.  Plaintiff Cannot Prove His Case By The Direct Method

The direct method of proof demands either direct or circumstantial evidence that the employer's motivation for its action was due to the employee's age. *Id.* "Direct evidence *essentially requires an admission* by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (emphasis added). Plaintiff lacks any such evidence.

The requisite circumstantial evidence of discrimination is shown when the plaintiff presents a "'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision maker.' That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'" *Rhodes v. Illinois Dep't of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004) (internal citations omitted). Even actual, alleged statements that referred to age were insufficient to meet the circumstantial threshold in one such case. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1062-64 (7th Cir. 2003) (holding that alleged

7

statements of "out with the old and in with the new," someone was "going to handle the young pups," and "how is the old man doing today" were not circumstantial evidence of age discrimination). Plaintiff's evidence in this case consists of his speculation that age motivated the termination decision as well as his unfounded conjecture about comparables.[1] (SMF ¶¶ 55, 63, 75.) Such evidence is not competent direct evidence of age discrimination. Clearly, Plaintiff does not have proof which constitutes the "convincing mosaic" required for circumstantial evidence of discrimination.

### B. Plaintiff's Claim Fails Under the Indirect Method

#### 1. Plaintiff Cannot Establish a *Prima Facie* Case

Indirect proof of discrimination requires that Plaintiff initially demonstrate a *prima facie* case by showing: "(1) []he is a member of a protected class; (2) []he was performing at a level that met h[is] employer's legitimate expectations; (3) []he was subject to an adverse employment action; and (4) []he was treated differently than a similarly situated person outside h[is] protected class[]" or where, as here, the claim involves a termination, by showing a younger employee outside of the protected class replaced him. *Raymond*, 442 F.3d at 610; *Balderston*, 328 F.3d at 321. A plaintiff's failure to meet a single one of these elements is fatal to his discrimination claim in its entirety. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 453 (7th Cir. 1998). Plaintiff cannot establish either prong two or four of the *prima facie* case.[2]

---

[1] For further discussion regarding his comparables see Section I.B.1.b of the memorandum.

[2] Plaintiff complains that Copper and Brass allowed younger employees to: (1) use cell phones during work hours without discipline; (2) have "free time;" and (3) leave warehouse doors open without discipline. None of these allegations constitute an actionable adverse employment action, however. *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)) ("not everything that makes an employee unhappy is an actionable adverse action. Otherwise, *minor* and even *trivial* employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" (emphasis added)). Moreover, Plaintiff has shown no evidence that *he* was disciplined for engaging in any of that type of conduct.

### a. Plaintiff Did Not Meet Copper and Brass's Legitimate Expectations

The question of whether an employee is meeting his employer's legitimate expectations focuses on items such as the individual's disciplinary history and if the employee is meeting important requirements of the job. *Cengr*, 135 F.3d at 452-53. The operative time period for consideration is at the time of the allegedly wrongful acts because an employee may have been qualified previously without being qualified at the time of the employer's actions. *Id.* at 453. An employee's length of time with the company or the amount of knowledge he had are irrelevant to this analysis. *Id.* at 452. In *Cengr*, *supra*, the plaintiff alleged age discrimination after being terminated from his quality control job. He was disciplined at least four times over the final two years of his employment, however, and three of those times occurred within six months of his termination. Most of that discipline involved the plaintiff's continued failure to meet his quality-control responsibilities. The *Cengr* court recognized that the record was "replete with evidence of [the plaintiff's] repeated performance problems" and held that he did not meet his employer's legitimate expectations of job performance. *Cengr*, 135 F.3d at 452. The same reasoning applies here.

In the six months preceding his termination, it is undisputed that Plaintiff was disciplined on seven occasions concerning his job performance. Moreover, he had been disciplined on multiple occasions for the same type of documentation issues in the years preceding his discharge. Significantly, Plaintiff has admitted most of his wrongdoing for the discipline issued in 2007. (SMF ¶¶ 52-53.) Beyond Plaintiff's discipline problems with his work orders, his termination resulted from his similar lack of attention to Company rules regarding daily transaction logs when he misrepresented which work orders he himself completed, and did not include the requisite explanatory comments. Plaintiff admits that it is important that warehouse clerks process customer work orders and document completed orders on daily production logs

9

accurately and efficiently. (SMF ¶¶ 25-26.) Such logs provide Copper and Brass management with the critical information necessary to track *processed* work orders. (SMF ¶ 27.)

The importance of daily production logs is illustrated by the fact that foremen, like M. DeMien, spend valuable time on a daily and weekly basis conducting random checks to ensure employees are properly recording work orders on these logs. (SMF ¶ 43.) The Company's posting of information regarding proper completion of daily production logs and provision of ongoing training in this area is additional evidence of these documents' importance to the Company. (SMF ¶ 27.) Most of all, Plaintiff specifically recognizes the importance of properly completing daily production logs. (SMF ¶ 26.) His utter inability to fulfill this key duty of his position, by misrepresenting completed work orders in November, 2007, is irrefutable evidence of his inability to meet Copper and Brass's legitimate expectations.

Perhaps most importantly, Plaintiff *admits* that he made the repetitive work order errors that led Copper and Brass to discipline him, and that he did not indicate on his daily production logs the work orders that he did not complete himself. (SMF ¶¶ 37-39, 41, 47, 53.) Plaintiff's chronic failure to remedy his performance deficiencies and properly prepare his documentation adversely impacted his employer. Based on the record, it is clear that Plaintiff was not meeting Copper and Brass's legitimate expectations.

### b. Plaintiff Cannot Establish Disparate Treatment or Replacement

"[I]n disciplinary cases . . . a plaintiff must show that he is similarly situated [to a younger employee] with respect to performance, qualifications, and conduct." *Radue*, 219 F.3d at 617. The similarly-situated employee must be "substantially younger" than the plaintiff for the necessary inference of age discrimination to arise. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). "Substantially younger" is at least ten years younger under Seventh Circuit law. *Balderston*, 328 F.3d at 322. The allegedly comparable employee(s) must

10

have also "dealt with the same supervisor, [been] subject to the same standards, and [] engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18 (internal citations omitted). It is also proper to consider differentiating factors between a plaintiff and his purported comparators, such as disciplinary records. *Id.* For example, the *Radue* court found that the plaintiff was not similarly situated to several other employees because he had a different position, responsibilities, and disciplinary history. Plaintiff too cannot establish that he is similarly-situated to his alleged comparables: T. DeMien, Herrera, Alvarez, Garcia, Hernandez and Cather, for myriad reasons. (SMF ¶ 63.)

Plaintiff admits that T. DeMien and Hernandez were side load operators, and Cather was a receiving clerk. Thus, they had different jobs and responsibilities than him -- including the fact that they did not complete daily production logs like him -- and none of them are similarly situated to Plaintiff. (SMF ¶ 64.) In addition, Garcia was 52 years old, (SMF ¶ 17) and Alvarez was 47 years old, (SMF ¶ 16) so neither is sufficiently younger than Plaintiff under established law in this Circuit to give rise to any evidence of age discrimination. *Balderston*, 328 F.3d at 322. Lastly, T. DeMien, Herrera, Alvarez and Garcia worked on different shifts and therefore had different supervisors than Plaintiff. (SMF ¶ 67.)

Plaintiff also cannot establish that any of his alleged comparators had similarly extensive disciplinary records as he did, or engaged in the same conduct resulting in his termination. None of his alleged comparators misrepresented on their daily production logs, let alone on multiple occasions, that they completed work orders which actually were done by other employees. Plaintiff admittedly has no knowledge of any other employee's disciplinary record besides his own. (SMF ¶ 65.) Beyond Plaintiff's unsubstantiated claim that Herrera put uncompleted work orders on his daily production logs, he has no evidence that Copper and Brass ever knew of any

11

such occurrences nor does he provide any evidence concerning the details of any such occurrences. The facts otherwise establish that three of Plaintiff's comparables (Herrera, Alvarez and Garcia) were disciplined for the same work order errors that resulted in most of Plaintiff's discipline. (SMF ¶ 74.) Finally, the facts establish that no other Copper and Brass employee (much less any of his alleged comparators) engaged in the same conduct or had a disciplinary record similar to Plaintiff. (SMF ¶ 68.)

Plaintiff also has no evidence that he was replaced by a younger employee, which is necessary to support the portion of his claim for an unlawful termination. *Balderston*, 328 F.3d at 321. The evidence demonstrates that no one was hired to replace Plaintiff nor did any particular employee ever replace him. In fact, the open position was first covered by warehouse clerks on other shifts working overtime; one of whom was 50 years old, and it was eventually permanently filled under the CBA's bidding process by being awarded to the most senior employee from another shift. (SMF ¶¶ 78-79.)

### 2. Plaintiff Cannot Establish Unlawful Pretext

Assuming that Plaintiff is able to establish a *prima facie* case, which he cannot, Copper and Brass may then assert a legitimate, nondiscriminatory reason for its actions. Upon that showing, Plaintiff then has the burden of demonstrating that the Company's justification is pretext for otherwise unlawful discrimination. *Raymond*, 442 F.3d at 610. An employee's performance problems are an accepted legitimate, nondiscriminatory justification for an adverse employment action. *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1404 (7th Cir. 1996). Copper and Brass has thus met any necessary burden of production by establishing it disciplined and terminated Plaintiff for his performance deficiencies, including the misrepresentations on his November 28 and 29, 2007 daily performance logs. He must establish those reasons are pretext for unlawful discrimination. *Raymond*, 442 F.3d at 610. That burden

requires Plaintiff to show that Copper and Brass's justification was: (1) "factually baseless," (2) "not the actual motivation for the" adverse action, or (3) "insufficient to motivate the discharge." *Balderston*, 328 F.3d at 323.³  Plaintiff cannot establish unlawful pretext under any of these methods.

Plaintiff conceded at deposition that he made numerous work order errors and included uncompleted work orders on his daily production logs.  (SMF ¶¶ 47, 53.)  He therefore cannot now assert that Copper and Brass's reasons for his discipline and termination were factually baseless.

An employer's consistent explanations regarding an employee's discharge support summary judgment in favor of the company because a lack of changing reasons does not permit an "inference of mendacity." *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) (citing *Rand v. CF Indus.*, 42 F.3d 1139, 1146 (7th Cir. 1994)).  Here, Copper and Brass's explanation for Plaintiff's termination has been consistent throughout.  The Company and Lunt have consistently based Plaintiff's termination on his daily production log misrepresentations in November 2007.  (SMF ¶¶ 49-50.)  Clearly, that was the actual motivation for Plaintiff's termination.

Plaintiff also cannot establish that his serious transgressions on the daily production logs did not warrant termination.  The Work Rules explicitly state that the first occurrence of falsification of company documents or records is a dischargeable offense.  (SMF ¶ 31.)  Plaintiff admits that he was aware of that rule and its consequences, and that falsifying daily production logs violates that rule.  (SMF ¶ 32.)  Moreover, Plaintiff cannot establish unlawful pretext by quibbling with Copper and Brass's decision to terminate him for the multiple misrepresentations

---

³ When an employer's legitimate, nondiscriminatory justification for its actions against an employee is discipline-related, there is necessarily some overlap between the second prong of the plaintiff's *prima facie* case and the plaintiff's burden of showing pretext.  *Fuka*, 82 F.3d 1404.  Accordingly, the evidence stated in Section I.B.1.a of this Memorandum applies here as well.

on his daily production logs.  It is well established that employees may not challenge an employer's business judgment when attempting to show evidence of pretext.  *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1124 (7th Cir. 1998) (holding that an employee could not challenge the reasonableness of his supervisor's interpretation of a comment the employee made that led to his termination).  "All [the court asks] is whether the decision maker honestly relied on the proffered reason for firing the employee."  *Id.*  No evidence exists that Lunt relied on anything other than Plaintiff's admitted falsification of daily production logs in making the termination decision.  Plaintiff is precluded from attacking the Company's legitimate exercise of business judgment here.  Lastly, any evidence that others were not terminated for falsifying daily production logs is irrelevant because no other Schaumburg employees were shown to have misrepresented these reports on *multiple occasions* in a two-week period during November 2007 like Plaintiff.

        **3.**     **No Evidence of Discriminatory Animus**

Plaintiff has no evidence of any age animus.  It is undisputed that a large part of the Schaumburg hourly workforce both before and after Plaintiff's termination consisted of employees over age 40.  As Plaintiff recognized, those employees included Frederick Stelzik (age 64 at the time of Plaintiff's termination), Lance Amack (age 63), Denny Prosser (age 51), Flores (age 51) and Tony Falco (age 49).  (SMF ¶ 58.)  Furthermore, Lunt and M. DeMien are within the protected class and were not substantially younger than Plaintiff when he was terminated.  Plaintiff therefore lacks any inference that the Company's actions constituted unlawful age discrimination.  *Balderston*, 328 F.3d at 322.

Significantly, Plaintiff admits that virtually all of Copper and Brass's disciplinary actions against him were justified because of his personal mistakes and were not connected to his age.  (SMF ¶ 53.)  Although he claimed that his one-day suspension on October 10, 2007 was age-

related, Plaintiff later conceded his error on that occasion as well.  It was his *responsibility* to catch the error before packing the wrong product for shipment to the customer.  (SMF ¶ 54.)

Finally, Plaintiff's claim that his December 3, 2007 termination resulted from discrimination is unsupported by any facts.  Instead, Plaintiff *concedes* that he is only speculating when he asserts his termination was age-related.  (SMF ¶ 55.)  It is well established that mere speculation is insufficient to avoid summary judgment when faced with direct evidence that no discrimination occurred.  *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 433 (7th Cir. 2005).

## CONCLUSION

Based on the foregoing, Defendant ThyssenKrupp Materials NA, Inc., d/b/a Copper and Brass Sales, Inc., respectfully requests that its motion for summary judgment be granted and the Court enter an order dismissing Plaintiff's complaint with prejudice.

Respectfully submitted,

DATED:  July 18, 2008            THYSSENKRUPP MATERIALS NA, INC.,
                                 d/b/a Copper and Brass Sales, Inc.


                                 By:    /s Russell S. Linden
                                        One of its Attorneys


Russell S. Linden
Admitted *pro hac vice*
2290 First National Building
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226
(313) 465-7466

Jeffrey S. Piell, Esq.
Quarles & Brady LLP
500 West Madison Street, Suite 3700
Chicago, IL 60661
(312) 715-5000

## *CERTIFICATE OF SERVICE*

  RUSSELL S. LINDEN states that on July 18, 2008, he caused a copy of **Memorandum in Support of Defendant's Motion for Summary Judgment,** along with this **Certificate of Service**, to be served via the electronic notification system of the United States District Court for the Northern District of Illinois Eastern Division to the e-mail address listed below:

Lisa Kane, Esq.
Lisa Kane & Associates, P.C.
lisakane@sbcglobal.net

                s/Russell S. Linden
                RUSSELL S. LINDEN

DETROIT.3204704.2