IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT WINGO, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 CV 368 |
| ) | |
| vs. ) | |
| ) | Judge Samuel Der-Yeghiayan |
| THYSSENKRUPP MATERIALS NA, INC., ) | |
| db/a/ COPPER and BRASS SALES, INC. ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, ROBERT G. WINGO, through his counsel, LISA KANE & ASSOCIATES, P.C., respectfully submits his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's Motion should be denied in its entirety.[1]

**INTRODUCTION**

Plaintiff, a 24-year employee and the number (2) ranking senior Warehouseman at Defendant's Schaumburg, Illinois Plant ("Schaumburg Plant"), presents a claim of age discrimination pursuant to the Age Discrimination in Employment Act, as amended 29 U.S.C. §§ 621 et seq. In support of Plaintiff's claim of age discrimination, Plaintiff presents circumstantial evidence to establish that his supervisors issued Plaintiff a charade of disparate discipline culminating in Defendant's termination of Plaintiff's employment upon a pretext for age discrimination, which left Plaintiff, a 55-year-old "shattered" man, trying to begin anew after a 24-year career with Defendant that was his first and only job after graduating college. (Facts ¶¶ 80-81).[2] To establish his claim of age discrimination, Plaintiff demonstrates that Defendant terminated Plaintiff's employment through a discriminatory application of Defendant's alleged legitimate

---

[1] Defendant's Memorandum of Law fails to comport with the Local Rules by not including citations to its LR 56.1 Statement of Facts after each factual sentence.

[2] "Fact ¶" refers to Plaintiff's Local Rule 56.1(b) Statement of Material Facts.

1

expectations, which further manifests the dishonesty of Defendant's justification for firing Plaintiff.(Facts ¶¶ 96-118.) The overwhelming amount of evidence, creating genuine issues of material fact supportive of Plaintiff's age discrimination claim, compels complete denial of Defendant's summary judgment motion.

## STATEMENT OF FACTS

Twenty-four (24) years ago, Plaintiff began his employment with Defendant as a Warehouseman at the Schaumburg, Illinois Plant.(Fact ¶ 80.) During the subsequent twenty-four years of Plaintiff's employment, Defendant terminated the employment of nearly 300 employees. (Fact ¶ 80.) By the end of Plaintiff's employment, December 3, 2007, Plaintiff was earning $14.50 per hour as a Warehouseman, and was the number 2 ranking senior employee at Defendant's Schaumburg Plant. (Facts ¶¶ 80-81.)

Defendant employs thirty-nine (39) Warehousemen, who perform similar job responsibilities that "overlap" in many respects, and are interdependent of each other to complete their collective responsibility of processing work orders.[3] (Fact ¶ 82.) Warehousemen are moved around as needed by Defendant, which trains Warehousemen at every location for every position.[4] (Fact ¶ 82). Most importantly, each Warehouseman at the Schaumburg Plant is subject to the same standards of employment, the same job description, and subordinate to the same supervisor, Randy Lunt, who has the relevant supervisory responsibilities of disciplining, training, hiring, and firing of all Warehousemen at the Schaumburg Plant. (Fact ¶ 82.)

During his twenty-four (24) years of employment, Plaintiff processed more than 200,000 work orders with few errors in comparison to the regularity that Warehousemen commit work order errors at the Schaumburg Plant. (Fact ¶ 83.) Due to the regularity in which work order errors occur at the Schaumburg Plant, work order errors are not subject to termination under Defendant's

---

[3] Defendant erroneously attempts to distinguish Warehousemen through different labels.(Fact ¶ 82.) *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 891 (7th Cir. 2001) ("we are not bound by the labels that an employer uses").

[4] During the year when Plaintiff's employment was terminated, Plaintiff held four positions, machine operator, side loader operator, order clerk, and shipping/receiving, which were under the singular job description of Warehouseman.(Fact ¶ 82.)

progressive disciplinary policy.[5] (Facts ¶ ¶ 83, 85.) The current regional material controller, Mark Pucalik, who has held the position for the past five (5) years, and who checks all the processed work orders at the Schaumburg Plant for accuracy daily, found that Plaintiff processed work orders with the same accuracy as the other Warehousemen at the Schaumburg Plant.[6] (Fact ¶ 83.)

Plaintiff additionally used a daily production log to note all the work Plaintiff performed on a shift. (Facts ¶¶ 105-118.) The sole training that Plaintiff received about maintaining his daily production log, with respect to recording work orders, was the instruction from his supervisors, including Lunt, to include the work order numbers, the pieces and weight of the material for each work order, and a general time to when Plaintiff began processing the work order. (Facts ¶¶ 105-118.) Further, Plaintiff's supervisors required Plaintiff to include in Plaintiff's daily production logs, all the work Plaintiff performed on a shift.[7] (Facts ¶¶ 105-118.) Warehousemen, under the supervision of Mark DeMien, such as Elutido Herrera, 43-years-old, included as many as 1-2 incomplete work orders in each of his daily production logs that other Warehousemen, including Plaintiff, completed for him. (Facts ¶¶ 105-118.)

Plaintiff's claims of age discrimination matriculated on August 30, 2007, when Plaintiff was waiting for Jason Prosser, a twenty-nine (29) year old Warehouseman, to bring him materials so

---

[5]Defendant's assertion that its progressive disciplinary policy requires four occurrences of repetitive work order errors before termination is not supported by the express language of its progressive disciplinary policy. (Fact ¶ 84.) *See Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 427 (7th Cir. 1992).

[6]Defendant's assertion that "Plaintiff had an extensive disciplinary record unlike any other hourly Schaumburg warehouse employee" lacks foundation as it is a conclusory allegation in an affidavit and the record devoid of any specific information supporting this generalized statement, and, thus, provides no force to Defendant's arguments. *See Laborer's Pension Fund v. RES Envtl. Servs*, 377 F.3d 735, 739 (7th Cir. 2004). Defendant's further use of an affidavit to supplement Lunt's testimony presents credibility issues with respect to Lunt's testimony. *See Fischer v. Avanade, Inc.*, 593 F.3d 393, 406-7 (7th Cir. 2008)

[7]Warehousemen customarily worked on work orders that they could not complete work orders after beginning to process them for a myriad of reasons, as another Warehousemen may provide wrong or defective materials, or a Warehousemen's shift may end in the middle of processing a work order, in which case a Warehousemen would begin processing the work order and make a notation in his daily production log to indicate for the next Warehousemen where to begin and complete the work order. Consequently, Warehousemen frequently included incomplete work orders in their daily production logs. (Facts ¶¶ 105-116.)

Plaintiff could process his next work order. (Facts ¶¶ 86-119.) While waiting for Prosser, Plaintiff sought the assistance of another Warehouseman to lift a 80 lb. PVC roll.[8] (Fact ¶ 90.) Although Plaintiff's conduct was customary at the Schaumburg Plant, M. DeMien, Plaintiff's foreman, excoriated Plaintiff in front of his coworkers, ignoring Prosser's dereliction, by stating to Plaintiff, "*what the fuck are you doing?*"(Fact ¶ 87.) M. DeMien finished his tirade by asserting, "*fuck you*, I'll do anything I want." Moments later, M. DeMien castigated Plaintiff with obscenities for a third time, as Plaintiff was still waiting for Prosser. Ultimately, M. DeMien issued Plaintiff a letter of counsel for "wasting company time."(Facts ¶¶ 87-91.)

Following M. DeMien's baseless abuse, Plaintiff grieved M. DeMien's conduct to Pete LaRocco, his union steward, and Lunt, as Plaintiff was working at the time of M. DeMien's vitriol, while substantially, younger Warehousemen, such as Tyler DeMien, 23-years-old, Lizardo Hernandez, 35-years-old, and Ray Cather, 27-years-old, under M. DeMien's supervision brazenly wasted company time by chatting on their cell phones in non-work related conversations, violating company rules, and without incurring any rebuke from M. DeMien.[9] (Facts ¶¶ 87-91.) Most revealing of M. DeMien's utter lack of concern for younger Warehousemen wasting company time was his allowance of Cather to sleep during his shifts. (Facts ¶¶ 87-91.) As the evidence in the record shows that M. DeMien was unconcerned about the daily instances when young Warehousemen wasted time, a genuine issue of fact exists whether DeMien abused Plaintiff and evaluated his conduct because of his age – an illegal criteria. (Facts ¶¶ 87-91.)

Shortly after Plaintiff's grievance, M. DeMien issued Plaintiff disparate discipline on October 4, 2007, after Plaintiff and Herrera mistakenly switched labels on work orders 457976 and 457983. (Facts ¶¶ 84, 96-97.) Rather than issue Plaintiff and Herrera similar discipline for identical conduct, M. DeMien issued Plaintiff a written warning, which is a second step disciplinary action under Defendant's progressive disciplinary policy, but merely issued the twelve years younger, Herrera,

---

[8]Defendant has a 70 pound weight restriction at the Schaumburg Plant, which requires Warehousemen to have help when you are lifting anything heavier than 70 pounds. (Fact ¶ 90.)

[9]Mark DeMien is the father and supervisor of Tyler Demien, which violates Defendant's policy that relatives should not supervise each other. (Fact ¶ 88.).

4

a lesser oral warning, which is a first step disciplinary action.[10] (Facts ¶¶ 84, 96-97.)

Just one (1) day later, on October 5, 2007, Defendant again dispensed with its uniform disciplinary policy, and suspended Plaintiff for one (1) day, without pay, upon the accusation of an alleged work order error.[11] (Facts ¶¶ 98-99.) Evidencing the age related motivation for this one (1) day suspension is the fact that T. DeMien, 23-years-old, was primarily responsible for the work order error by bringing Plaintiff the wrong material for Plaintiff to process the work order, yet M. DeMien did not discipline the 32-years younger T. DeMien, despite Plaintiff presenting M. DeMien with evidence of T. DeMien's culpability. (Fact ¶ 98.)

On November 8, 2007, only one (1) month later, Lunt and M. DeMien suspended Plaintiff for allegedly committing "key-punch errors," which was a complete fabrication as evidenced by the fact that M. DeMien refused to show Plaintiff what he did wrong. (Fact ¶ 100.) Most importantly, Plaintiff did everything properly with respect to processing the work order for which Defendant alleged Plaintiff made the error.(Fact ¶ 100.) Notwithstanding Plaintiff's refutation of the allegations against him, Lunt ignored Plaintiff's evidence to the contrary, and issued Plaintiff the three (3) day suspension anyway.[12] (Fact ¶ 100.)

On December 3, 2007, Lunt, with input from M. DeMien, accused Plaintiff of "falsifying company documents," which Lunt explained to Plaintiff "was taking credit for completing work that others completed." (Facts ¶¶ 100-101.) Defendant's sole support for its accusations against Plaintiff was two (2) work orders from each of Plaintiff's daily production logs on November 28, 2007 and November 29, 2007, which Defendant alleges that M. DeMien stumbled across in a random check

---

[10] Two (2) bases belie Defendant any contention that Hererra was deserving of lesser discipline. First, Herrera was issued discipline on July 10, 2007 which was more recent than Plaintiff's previous discipline on June 22, 2007. Second, Defendant's progressive disciplinary policy works within a 90 day framework and Plaintiff's June 22, 2007 oral warning falls outside 90 days from the October 4, 2007 discipline. (Facts ¶¶ 84, 96-97.)

[11] Following Plaintiff's August 30, 2007 complaint, Plaintiff suspiciously began to see a significant increase in bad work orders from the younger Warehousemen, Tyler DeMien and Lizardo Hernandez, which prevented Plaintiff from succeeding in his responsibilities. Plaintiff raised this issue with Lunt, who ignored Plaintiff's pleas for rectification. (Facts ¶¶ 90, 92.)

[12] M. DeMien further orally disciplined Plaintiff for leaving the Schaumburg Plant door open, while he allowed substantially younger Warehousemen, like Cather, to routinely leave the door open year-round. (Fact ¶ 101.)

of daily production logs. (Fact ¶ 102-115.) After Plaintiff immediately explained to Lunt how the daily production logs accurately reflected the work Plaintiff performed on November 28-29, 2007, and do not suggest Plaintiff completed the work orders Lunt identified as incomplete, Lunt, whom Plaintiff trained as an employee of Defendant, nevertheless, fired Plaintiff. (Facts ¶¶ 102-115.) Following the termination of Plaintiff's employment, Defendant replaced Plaintiff, 55-years-old, with a 34-year-old Warehouseman, Mike Perrone, who is outside Plaintiff's protected class. (Fact ¶ 80, 119.)

## ARGUMENT

### I.     Standard of Review

Summary judgment is appropriate only when the materials before the Court demonstrate that there are no genuine issues of material fact, in which case the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine if a genuine issue of fact exists, the Court must "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party." *Myers v. Hasara*, 226 F.3d 821, 825 (7th Cir. 2000.) If a reasonable jury could find in favor of the nonmoving party based on the evidence, summary judgment should be denied. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001).

Summary judgment is improper in a discrimination case where material issues involve any weighing of conflicting indications of motive and intent. *Kielczynski v. Village of LaGrange*, 122 F.Supp.2d 932, 943 (N.D. Ill. 2000). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.*; *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150-53 (2000).

### II.    Summary Judgment Remains Unwarranted on Plaintiff's Claim of Age Discrimination.

Plaintiff may establish a *prima facie* claim of age discrimination through the indirect, burden shifting method set forth in *McDonnell Douglas* by demonstrating that he: (1) is a member of a protected class; (2) was meeting his employer's legitimate job expectations, (3) suffered an adverse employment action; and (4) was replaced by someone substantially younger than him. *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635-36 (7th Cir. 2004). Defendant fallaciously seeks to obtain

judgment by cursorily arguing that Plaintiff cannot establish the second and fourth elements. Contrary to Defendant's arguments, Plaintiff is only required to prove that Defendant's proffered justification for terminating Plaintiff's employment is a pretext as he presents a multifaceted assault that Defendant's alleged legitimate performance expectations themselves are discriminatory. *Walid Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831-32 (7th Cir. 2007)("[w]hen a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner, the second and fourth prongs merge–allowing plaintiffs to stave off summary judgment for the time being, and proceed to the pretext inquiry.'")

Plaintiff meets the requirements to establish a *prima facie* case of age discrimination. First, Plaintiff has presented undisputed evidence that he is a member of a protected class and suffered an adverse employment action, as he was 55 years old at the time his employment was terminated; thus, Plaintiff surpasses the hurdles of the first and third elements to his *prima facie* case.(Facts ¶¶ 80,102.) Most importantly, Plaintiff satisfies the second element for the purposes of his *prima facie* case as Plaintiff's claim of age discrimination is based upon a disparate application of Defendant's proffered legitimate expectations, and Defendant's explanation for Plaintiff's failure to meet its expectations is a lie.[13] *See Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998); *See also Goodwin v. Bd. of Trs. Of the Univ. Of Ill.*, 442 F.3d 611, 619 (7th Cir. 2006)(stating that otherwise, such an "argument assumes its conclusion"). Finally, Plaintiff satisfies the fourth element by producing evidence that Defendant replaced Plaintiff, 55 years-old, with the 34-year-old, Mike Perrone.(Fact ¶ 119.) *See Olson v. Northern FS, Inc.*, 387 F.3d 632, 655-56 (7th Cir. 2004).[14]

---

[13] Defendant's exclusive reliance on *Cengr v. Fusibond Piping Sys., Inc.* is inapposite to the case at bar as *Cengr* involved an employee who alleged that the employer's decision to terminate his employment was based upon incorrect reasons; however, Plaintiff, here, as opposed to the plaintiff in *Cengr*, argues that Defendant applied its legitimate expectations to him in a disparate manner than it did with other substantially younger employees. *See Id.*, 135 F.3d 445, 453 (7th Cir. 1998).

[14] In Section II(B), Plaintiff also presents evidence of substantially younger, similarly situated Warehousemen, Herrera, 43 years old, T. DeMien, 23 years old, and Cather, 27 years old treated more favorably to satisfy his *prima facie* case and pretext. *See Olson*, 387 F.3d at 635. Plaintiff, Herrera, T. DeMien, and Cather are similarly situated as they(i) had the same job description,Warehousemen, (ii) were subject to the same standards, and (iii) were subordinate to the same supervisor(s), Lunt and M. DeMien, and (iv) Defendant did not rely on education, experience, or qualifications to issue Plaintiff

As Plaintiff has established a *prima facie* case for age discrimination under *McDonnell Douglas*, the burden shifts to Defendant to present a legitimate non-discriminatory reason for the adverse employment action, and then Plaintiff can defeat summary judgment by showing these reasons to be a pretext for age discrimination. *See Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). When reviewing all the overwhelming number of disputed facts, Plaintiff presents sufficient issues of material fact to show that Defendant's proffered justification for terminating his employment is a pretext for age discrimination.

> **A.  Plaintiff Presents Evidence that Defendant Fired Plaintiff for Following the Customary Procedures at the Schaumburg Plant.**

Defendant's explanation for firing Plaintiff directly contradicts the customary procedure at the Schaumburg Plant, as Warehousemen customarily include incomplete work orders in their daily production logs, and further note the general start times of when they begin to process a work order in their daily production logs.[15] (Facts ¶¶ 102-116.) Accordingly, Lunt and DeMien's decision to fire Plaintiff for including incomplete work orders in his November 28-29, 2007 daily production logs, and its later interpretation that Plaintiff wrote completion times next to the work orders, Lunt identified as incomplete, despite Plaintiff's refutation of Lunt's interpretation, contravenes the customary policy at the Schaumburg Plant. (Facts ¶¶ 102-116.) Contrary to any wrongdoing, Plaintiff's corroborated evidence shows that he was following Defendant's customary procedures by noting general start times for the four (4) incomplete work orders on his November 28-29, 2007 daily production logs. (Facts ¶¶ 102-116.) By presenting evidence that he followed the customary policy for completing his November 28-29, 2007 daily production logs, "Plaintiff has produced sufficient evidence to create a genuine issue with respect to the credibility of Defendant's decision to terminate Plaintiff's employment," satisfying his showing of pretext. *See Hanlon v. Jenny Craig, Inc. d/b/a Jenny Craig Weight Loss Centers*, 1995 U.S. Dist. LEXIS 3851, *26 (N.D. Ill.

---

discipline. (Facts ¶¶ 88-89, 96.) *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 774 (7th Cir. 2006). Accordingly, there are no distinctions between them that are so significant that they render the comparison effectively useless. *Humphries v. CBOCS West, Inc.*, 474 F.3d 404-405 (7th Cir. 2007).

[15] The evidence also shows that each Warehousemen used a different system for recording the time spent processing a work order depending on their comfort level. (Facts ¶¶ 109.)

1995)(Attached as Exhibit A).

Significantly, Lunt's decision to fire Plaintiff strains credibility, as Plaintiff was following Lunt's instruction when he noted general start times of when he began processing the work orders in his November 28-29, 2007 daily production logs.[16] (Facts ¶¶ 102-116.) Lunt's further contention that Plaintiff should have made comments in his daily production logs showing that Plaintiff did not complete the work orders is further belied by the facts that such comments do exist in Plaintiff's daily production log, as corroborated by M. DeMien, who asserted that he believed that Plaintiff's November 28-29, 2007 daily production logs do record the work he performed on those shifts. (Facts ¶¶ 102-116.) Plaintiff's evidence that he followed the instruction of his supervisors in completing his daily production log creates a genuine issue of fact the honesty to Defendant's decision to fire Plaintiff. *See Sarsha v. Sears, Roebuck & Co.* 3 F.3d 1035, 1040, 43 (7th Cir. 1993) (evidence that Defendant did not have a policy that Plaintiff failed to follow meets the evidence required to survive summary judgment).

### B. Plaintiff Presents Evidence That Similarly Situated, Substantially Younger Employees Were Not Terminated for Engaging in the Same Conduct Used As a Basis for Terminating Plaintiff's Employment.

A genuine issue of fact is created as to whether the employer's reason for an adverse employment action is pretext for discrimination, if the plaintiff produces evidence that the employer enforced a uniform policy differently to him than similarly situated employees in order to subject him to an adverse employment action. *Curry v. Menard, Inc.*, 270 F.3d 473, 479 (7th Cir. 2001). If it is shown that the employer's adherence to a formal policy was inconsistent, then such inconsistency permits the conclusion that the resort to the policy was a pretext for singling out the Plaintiff for unfavorable treatment. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001).

Herrera, a 43-year-old Warehouseman, who worked in Plaintiff's division, had the same

---

[16] Evidencing the dishonesty in Defendant's justification for terminating Plaintiff's employment is Lunt's sole basis for determining that Plaintiff took credit for completing work orders completed by others was the times that Plaintiff listed on daily production logs for the work orders, which is contradicted by the fact that Lunt instructed Plaintiff to write "general times" of when Plaintiff started to process the work order, not his completion times. (Facts ¶¶ 110.) *See Perdomo v. Browner,* 67 F.3d 140, 146 (7th Cir. 1995).

responsibilities as Plaintiff, with the same set of supervisors, Lunt and M. DeMien, and under the same set of rules, submitted daily production logs, completed in the same manner as Plaintiff that were checked daily by M. DeMien, and included 1-2 incomplete work orders a day for which he took credit in his daily production logs, but other Warehousemen, including Plaintiff, completed instead of him.[17](Facts ¶¶ 96, 106,116.) *See Thanongsinh*, 462 F.3d at 774*; See also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 313 (1996)(finding that a ten (10) year difference presumptively substantial for age discrimination). By identifying Herrera, a 43-year-old Warehouseman, as similarly situated to Plaintiff in all relevant respects, and who engaged in the same conduct as Plaintiff, but only Plaintiff was fired, "Defendant must explain this discrepancy to the jury." *See Wright v. Efficient Lighting Systems, Inc.* 63 Fed. Appx. 942 (7th Cir. 2003). Defendant's disparate application of its purported policies calls into question the legitimacy of Defendant's performance expectations as applied to Plaintiff, and as a result, raises the inference that Defendant's proffered reason for firing Plaintiff did not actually motivate Defendant's actions. Defendant's more favorable treatment of similarly situated, substantially younger employees meets the pretext requirement. *Russell v. Bd. of Tr. of the Univ. Of Ill. at Chi.*, 243 F.3d 336, 342 (7th Cir. 2001).

Plaintiff's evidence of Defendant's more lenient means of addressing allegations against substantially younger Warehousemen supports a finding that Defendant discriminated against Plaintiff because of his age. *See Gordon*, 246 F.3d at 893. Additional favorable treatment afforded to Plaintiff's similarly situated, substantially younger coworkers includes the more severe discipline imposed on Plaintiff than the 12 years younger Herrera, despite Herrera and Plaintiff's identical conduct in switching labels on work orders on October 4, 2007, and Plaintiff's one (1) day suspension for a October 5, 2007 work order error, while T. DeMien, a 23-year-old Warehouseman did not receive any discipline, despite his actions being the primary cause of the error.(Facts ¶¶ 96-97.) Such a distorted application of Defendant's disciplinary policy supports a finding of pretext.*Id.*

---

[17]Any assertion by Defendant to differentiate Plaintiff from his identified comparatives on the basis of disciplinary histories is erroneous for a number of bases, including the fact that Defendant disparately disciplined Plaintiff in comparison to his identified comparatives, and the fact that Defendant did not take into consideration discipline history in terminating Plaintiff's employment. *See Fischer*, 593 F.3d at 403. (finding that explanations allegedly the results of discrimination are insufficient to disprove Plaintiff's similarly situated inquiry). (Facts ¶¶ 87-118).

Most revealing of the favorable treatment afforded to substantially younger and similarly situated Warehousemen is Plaintiff's supervisors' participation in substantially younger Warehousemen's egregious and clear falsification of company documents.(Fact ¶ 117.) *See also Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005)(finding that a supervisor engaging in conduct similar to the conduct alleged against the employee was sufficient to survive summary judgment on the employee's discrimination claim). In stark contrast to the treatment imposed upon Plaintiff, T. Demien, a 23-year-old Warehouseman and Mike Perrone, a 34-year-old Warehouseman, left their shifts as much as an hour early, and their supervisors, M. DeMien and Jon Barena, would punch T. DeMien's and Perrone's time cards at the end of their shift in order to induce Defendant into paying them for time they did not work. (Fact ¶ 117.) Plaintiff's evidence of T. DeMien's and Perrone's falsification of company documents with the aid of their supervisors remains sufficient to raise a triable question as to Defendant's honesty in firing Plaintiff.[18] *See Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 581 (7th Cir. 2003)(finding that the employer's different application of a policy applicable to two employees' separate and they could view distinguishable conduct as disparate treatment of two similarly situated employees).

By presenting evidence of similarly situated employees who engaged in conduct subject to termination under Defendant's uniform disciplinary policy, but were not terminated, Plaintiff has raised a genuine issue of material fact to whether similarly situated coworkers outside his protective class received favorable treatment to meet Plaintiff's pretext requirement. *See Ezell v. Potter*, 400 F.3d at 1050. Defendant's exceptions to its uniform disciplinary policy for younger employees outside Plaintiff's protected class are sufficient to show that "Defendant's stated reason for discharging [Plaintiff's] employment was a pretext for discrimination." *See Curry* 270 F.3d at 479-80.

### C. Plaintiff Has Produced Additional Circumstantial Evidence Creating a Convincing Mosaic to Permit a Jury to Find That Plaintiff was the Victim of Age Discrimination.

Courts in the 7th Circuit allow Plaintiff to show discriminatory intent through evidence of "suspicious timing, ambiguous statements . . . or evidence that employees similarly situated to the


plaintiff but outside the protected class received systematically better treatment." *Titus v. Elgin, Joliet & Eastern Railway Company of Indiana a/k/a EJ&E Railroad*, 2005 U.S. Dist. LEXIS 12096, * 15 (N.D. Ind. 2005)(Attached as Exhibit B). "No one piece of evidence need support a finding that age was a determining factor, but rather the court must take the facts as a whole." *Mantia v. Great Books Found.*, 2003 U.S.Dist.LEXIS 16484, *21 (N.D. Ill. 2003) (Attached as Exhibit C) (citing *Huff v. UARCO, Inc.* 122 F.3d 374, 379 (7th Cir. 1997).

The significant disparities in the in terminating the employment of Plaintiff's substantially younger comparatives as compared to him is exemplified by the clemency T. DeMien received when Defendant provided T. DeMien with numerous oral and written warnings, beyond no fewer than *four (4) final warnings* less than a 1.5 year span for the same attendance problems. (Fact ¶ 118.) After T. DeMien was tardy again on December 21, 2006, Lunt still retained T. DeMien as an employee, despite Lunt admitting that T. DeMien's conduct should have resulted in the termination of his employment, pursuant to its discipline policy.(Fact ¶ 118.) Plaintiff's evidence that Defendant would freely depart from Defendant's own disciplinary policy in favor of substantially younger Warehousemen evinces pretext. *See Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 727 (7th Cir. 2005).

Most importantly, Plaintiff is the only employee Defendant fired for "falsifying company documents" within, at least, the last 5½ years, despite Plaintiff's substantial and corroborated evidence of conduct identical to Plaintiff's conduct that served as Defendant's basis for the termination of Plaintiff's employment. (Facts ¶¶ 102-116.) *Titus*, 2005 U.S. Dist. LEXIS at *15; *See also Gordon*, 246 F.3d at 893 (finding that the rarity in which the provision was invoked supportive of pretext). Moreover, Plaintiff presents substantial evidence that the decision to terminate Plaintiff's employment was directly tainted by a hostile supervisor, M. DeMien, whose animus toward Plaintiff was age-related.[19] (Facts ¶¶ 87-91.) *See Taylor v. Brinker International Payroll*

---

[19] The age-related motivation behind DeMien's August 30, 2007 abusive tirade against Plaintiff under the pretense that Plaintiff was "wasting time" is shown through the fact that DeMien allowed Warehousemen outside Plaintiff's protected class waste company time. (Facts ¶¶ 87-89.) *See Venters v. City of Delphi, et al.* 123 F.3d 956, 973 (7th Cir. 1997) ("remarks and other evidence that reflect a propensity by the decision-maker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination"); *See also Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990) ("The task of disambiguating ambiguous utterances is for trial, not for summary judgment.")

*Corporation*, 2002 U.S. Dist. LEXIS 5702, *4 (N.D. IL 2002)(Attached as Exhibit D). Further, Defendant's sudden decision to terminate Plaintiff's employment on the alleged basis of how he completed daily production logs, in the midst of a series of other disparate discipline, presents compelling questions of suspicious timing as Plaintiff had been completing his daily production logs in the same manner for the past 15 years, including for the past six (6) years under M. DeMien's supervision and "random checks," but Plaintiff has never been told that he completed his daily production logs improperly. (Facts ¶¶ 102-118.) *See Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 690 (7th Cir. 2003). Plaintiff's evidence demonstrates that age was a motivating factor in the termination of his employment. *Venters v. City of Delphi, et al.* 123 F.3d 956, 973 (7th Cir. 1997).

### D. Plaintiff Presents Evidence That Defendant Fabricated Baseless Allegations Against Him in Order to Terminate His Employment.

Plaintiff presents specific evidence that Defendant's justification for firing Plaintiff was factually baseless. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000). Directly refuting Lunt's explanation of "falsifying company documents" as taking credit for completing work orders Plaintiff did not finish, is the fact that all four (4) work orders on November 28-29, 2007, for which Defendant contended Plaintiff took credit for completing, show that Plaintiff did not take credit for the work orders.[20] (Facts ¶¶ 102-115.) *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460-61 (7th Cir. 1994)("A detailed refutation of events which underlie the employer's negative performance assessment demonstrates that the employer may not have honestly relied on the identified deficiencies in making its decision"). Most importantly, Plaintiff expressed these facts, refuting the accusations against him, to Lunt during the meeting when Lunt and DeMien terminated his employment for allegedly "falsifying company documents."[21] (Facts ¶¶ 100-118.) *Id*.

---

[20]Lunt, himself, instructed Plaintiff to include on his daily production logs general start times to when he began processing the work order, which directly contradicts his later assertion that his sole basis for concluding that Plaintiff took credit for the work orders is the times Plaintiff wrote down, which he asserts are completion times. (Facts ¶¶ 107, 109-110.) *Perdomo*, 67 F.3d at 145.

[21]Even M. Demien believes that Plaintiff was documenting the work he performed on his November 28, 2007 production logs, contradicting any assertion that Lunt and DeMien honestly believed that Plaintiff was trying to take credit for completed work orders he did not complete, which DeMien further expected Plaintiff to include on his production logs. (Fact ¶ 108.) *Perdomo*, 67 F.3d at 145.

13

Plaintiff's specific evidence refuting Defendant's basis for terminating Plaintiff's employment precisely calls into question the veracity of Defendant's reason for terminating Plaintiff's employment needed to overcome summary judgment. *Perdomo,* 67 F.3d at 146 ; *Reeves*, 530 U.S. at 147. As Plaintiff has presented specific evidence refuting the facts which Defendant supported its decision to fire Plaintiff, this case turns on the credibility of witnesses, which is a course of action not available to Defendant on summary judgment. *Collier v. Budd Co.*, 66 F.3d 866 (7th Cir. 1995); *See also Russell*, 243 F.3d at 342. These factual disputes would lead a reasonable jury to find that Defendant concocted its reasons for firing Plaintiff. *See Dey*, 28 F.3d at 1461.

### E. Defendant Has Presented Shifting and Inconsistent Explanations for The Basis of Terminating Plaintiff's Employment.

The undisputed basis given to Plaintiff for the termination of his employment after 24 years was "falsifying company records/documents on both 11/28/07 and 11/29/07, Robert took credit for completing work orders on his "daily production log" which (sic) were competed by other employees." (Facts ¶¶ 102-104.) Since then, Defendant has presented a variety of other shifting explanations to justify firing Plaintiff. Defendant's varying justifications for terminating Plaintiff's employment reek of pretext. *Appelbaum*, 340 F.3d 573.

Other than his initial basis, Lunt has tried to explain alternatively that Defendant's decision to terminate Plaintiff's employment was based upon Plaintiff's daily production logs on November 15, 19, and 20, 2007 besides the November 28-29, 2007 daily production logs. Lunt has also shifted his stance by stating that Lunt fired Plaintiff on the basis of Plaintiff's November 28-29, 2007 daily production logs in addition to an "extended period of unacceptable performance for which he had been disciplined." *See Fischer,* 593 F.3d at 403 (finding that explanations allegedly the results of discrimination are insufficient to disprove Plaintiff's claim). Defendant has further gone from stating that Plaintiff included two (2) incomplete work orders on both his November 28, 2007 and November 29, 2007 to now stating in Defendant's brief that Plaintiff did not complete <u>all</u> of his entries on his November 28-29, 2007 daily production logs. Defendant instills yet more puzzlement into its defense by switching characterizations of Plaintiff's entries in his November 28-29, 2007 production logs from "misrepresentations" to flatly stating that he should not have included incomplete work orders in the daily production logs, no matter their veracity.

Most revealing, Defendant has proffered its most grandiose justification for terminating Plaintiff's employment in its Motion for Summary Judgment by stating that Plaintiff had the worst performance of any Warehousemen at the Schaumburg Plant for the past twelve (12) years upon an conclusory and unsupported allegation in an affidavit used to supplant prior deposition testimony. *See Fischer*, 593 F.3d at 406-7(Defendant's use of an affidavit to supplement Lunt's testimony presents credibility issues with respect to Lunt's testimony). However, Defendant's sham defense merely created more inconsistent explanations. *See Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1047 (7th Cir. 2000). Defendant inability to articulate a clear, cohesive, and consistent basis for terminating Plaintiff's employment shows that there is a disputed issue of fact about the true reason for Plaintiff's termination. *See Pantoja v. American NTN Bearing Manufacturing Corporation*, 495 F.3d 840, 851 (7th Cir. 2007) (denying summary judgment on the basis that Defendant assertion that the employee was fired for one incident, but, at other times, representing that he was fired for some combination of reasons created a disputed issue of fact about the true reason for the employee's firing).

## CONCLUSION

The record establishes that Plaintiff was subjected to discipline leading to Plaintiff's termination to which Elutido Herrera and Tyler DeMien, similarly situated Warehousemen twelve years and thirty-two years younger than Plaintiff respectively, were not subjected despite their similar conduct. In addition, the evidence raises compelling inferences that Defendant's stated reason for terminating Plaintiff's employment is a pretext for age discrimination where gross disparity in the application of Defendant's uniform disciplinary policy and Defendant's baseless, shifting accusations suggest Defendant could not honestly have fired Plaintiff for the reasons it proffers for purposes of this litigation.

                                              Respectfully submitted,
                                              Robert G. Wingo,

                                              /s/ Lisa Kane
                                            Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES, P.C.
120 S. LaSalle Street, Suite 1420
Chicago, IL 60603
(312) 606-0383
Attorney Code No. 06203093