# EXHIBIT A

LEXSEE 1995 U.S. DIST. LEXIS 3851

## JOY A. HANLON, Plaintiff, v. JENNY CRAIG, INC., d/b/a, JENNY CRAIG WEIGHT LOSS CENTERS, Defendants.

### No. 91 C 6084

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1995 U.S. Dist. LEXIS 3851*

### March 27, 1995, Decided
### March 28, 1995, DOCKETED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After a former employee was terminated, she filed a charge of age discrimination with the Illinois Department of Human Rights. She later sued under the Age Discrimination in Employment Act, *28 U.S.C.S. §§ 621-34*, and claimed that the court had jurisdiction under *29 U.S.C.S. § 626(c)(1)*. Defendant employer sought partial summary judgment on the claim that the decision to terminate employment was based upon age.

**OVERVIEW:** The employer did not address the employee's claims concerning demotion in its motion. The employee was 44 years old when she was hired. She worked for the employer for three years. The employer said that the employee twice failed to put cash receipts in a bank's night depository and violated an unwritten policy about leave. The employee disputed all of the evidence that the employer presented to support its assertion that her work performance did not meet legitimate expectations. Younger staff members assumed the employee's duties. Because the employee established a prima facie case, the court said that the burden shifted to the employer to articulate a legitimate, non-discriminatory reason for its decision. The court said that the employer articulated a legitimate, nondiscriminatory reason for its decision. The court determined that the employee provided sufficient evidence to raise a genuine issue of material fact with regard to the veracity of the explanation for the termination. The court explained that the case was one party's word against the other and a reasonable jury could infer from the evidence presented that age was the determinative factor in the employer's decision.

**OUTCOME:** The court denied the employer's motion for partial summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
*Labor & Employment Law > Discrimination > General Overview*
[HN1] Summary judgement is appropriate where no genuine issues of material fact exist and where one party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c).* This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Where a statute, such as the Age Discrimination in Employment Act, allows for trial by jury, caution is required in granting summary judgment. Even so, while it is true that all facts must be considered in the light most favorable to a non-movant, mere conclusory assertions of discrimination are not sufficient to preclude summary judgment.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards >*

*General Overview*
*Labor & Employment Law > Discrimination > Age*
*Discrimination > Proof > General Overview*

[HN2] To prevail on an Age Discrimination in Employment Act claim, a plaintiff must ultimately prove that she was discharged because of her age. She must show that age was a determining factor in defendant's decision to terminate her employment. Significantly, the plaintiff need not show that age was the sole motivating factor, but rather simply that "but for" her age, she would not have been terminated. Thus, if the plaintiff presents sufficient evidence such that a reasonable jury could find that the defendant would not have made the decision to terminate plaintiff but for her age, summary judgment for the defendant is inappropriate.

*Labor & Employment Law > Discrimination > Age*
*Discrimination > Proof > Burdens of Proof*

[HN3] There are two primary methods of proving age discrimination: direct evidence of discriminatory intent or the indirect burden-shifting scheme. The indirect burden-shifting method of proof requires a plaintiff to first establish a prima facie case of discrimination which is comprised of four elements: (1) that she was in the protected class, (age 40-70); (2) that she was doing her job well enough to meet her employer's legitimate expectations; (3) that she was discharged or demoted; and (4) that the employer sought a replacement. Proof of the elements of a prima facie case establishes a rebuttable presumption of discrimination and shifts the burden of production to defendant who must then articulate lawful reasons for its decision to terminate plaintiff. Once defendant articulates a legitimate, non-discriminatory reason for its action, the presumption of discrimination dissolves and the burden shifts back to plaintiff to prove that defendant's proffered reasons for termination are pretextual.

*Labor & Employment Law > Discrimination > Age*
*Discrimination > Proof > General Overview*

[HN4] A determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case under the Age Discrimination in Employment Act, may be based solely on the employee's testimony concerning the quality of her work.

*Labor & Employment Law > Discrimination > Age*

*Discrimination > Proof > Burdens of Proof*

[HN5] In order to demonstrate pretext, an Age Discrimination in Employment Act plaintiff must show either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. If the plaintiff puts forth sufficient evidence to indicate defendant's explanation is unworthy of credence, then the trier of fact is permitted, although not compelled, to infer the real reason was age.

*Labor & Employment Law > Discrimination > Age*
*Discrimination > Proof > General Overview*

[HN6] The issue of pretext in an age-discrimination suit does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether an employer honestly believes in the reasons it offers.

*Labor & Employment Law > Wrongful Termination >*
*Defenses > General Overview*

[HN7] When the existence of a uniform policy is in doubt, it cannot serve as a reason for discharge.

*Civil Procedure > Summary Judgment > Standards >*
*General Overview*

[HN8] On summary judgement, a court can neither make a credibility determination nor choose between competing inferences. Rather, these functions are for a jury.

**COUNSEL:** For JOY A HANLON, plaintiff: James Brian Dykehouse, Witwer, Burlage, Poltrock & Giampietro, Chicago, IL.

For JENNY CRAIG INC dba Jenny Craig Weight Loss Centers, defendant: Gerald J. Huffman, Jr., Lemle & Kelleher, New Orleans, LA. Richard Edward Custin, Custin Law Office, Lake Villa, IL.

**JUDGES:** [*1] JOHN A. NORDBERG, United States District Judge

**OPINION BY:** JOHN A. NORDBERG

**OPINION**

*MEMORANDUM OPINION AND ORDER*

1995 U.S. Dist. LEXIS 3851, *1

Plaintiff Joy A. Hanlon ("Plaintiff") has sued her former employer Defendant Jenny Craig, Inc. ("Defendant") for alleged violations of the Age Discrimination in Employment Act (ADEA), *28 U.S.C. §§ 621-634 (1994)*. Defendant seeks partial summary judgment on Plaintiff's claim that the decision to terminate her employment on March 9, 1990 was based upon her age. In her complaint, Plaintiff also contends that age was a determining factor in the decision to demote her, on October 1, 1989, from the position of Centre Manager. However, as Defendant and Plaintiff agree that Plaintiff's discriminatory demotion claim at this time is inappropriate for resolution on summary judgment at this time, this Court's opinion only addresses Plaintiff's discriminatory termination claim. This Court has jurisdiction to decide the ADEA claim pursuant to *29 U.S.C. § 626(c)(1) (1994)*.

**BACKGROUND**

Except where noted, the following facts are uncontested. Plaintiff, Joy Hanlon, worked for Defendant, Jenny Craig, Inc., from November 16, 1987 to March 9, 1990. (Defendant's 12(m) Statement of Uncontested Material [*2] Facts [hereinafter "Def's 12(m) St."] P 2; Plaintiff's 12(n) Statement [hereinafter "Pl.'s 12(n) St."] P 2). Plaintiff began employment with Defendant as a Weight Loss Counselor, at the age of 44 and worked at the company's Woodridge Centre for her first year and a half. *Id.*

In April of 1988, Plaintiff was promoted to the position of Program Director at the Woodridge Centre. (Def.'s 12(m) St. P 3; Pl.'s 12(n) St. P 3). She worked as the Program Director until September 1, 1988, when she was promoted to the position of Assistant Manager. *Id.* During her tenure at Woodridge, Plaintiff was directly supervised by manager, Patricia Costello. (Def.'s 12(m) St. P 5; Pl.'s 12(n) St. P 5). Approximately, one month later, on October 13, 1988, Plaintiff was again promoted, this time to the position of Centre Manager for Defendant's new Orland Park Centre. (Def's 12 (m) St. P 4; Pl.'s 12(n) St. P 4). Defendant maintains that Costello continued to directly supervise Plaintiff at the Orland Park Centre. (Def.'s 12(m) St. P 5). However, Plaintiff asserts that Costello supervised her only during the last two months of her tenure as Centre Manager at Orland Park Centre. (Pl.'s 12(n) St. [*3] P 5).

Plaintiff worked as the Centre Manager of Orland Park until about October 1, 1989, when she was demoted

to the position of "floating" Program Director. (Def.'s 12(m) St. P 6; Pl.'s 12(n) St. P 6). Approximately three months later, Plaintiff was appointed to the position of Assistant Manager and transferred back to Defendant's Woodridge Centre. (Def.'s 12(m) St. P 7; Pl.'s 12(n) St. P 7). At the Woodridge Centre, Plaintiff was directly supervised by Centre Manager, Maddelena Zanfardino (age 23), Area Supervisor, Patricia Rodebaugh (age 42), and Regional Supervisor Jennifer Holt (age 44). (Def.'s 12(m) St. P 8; Pl.'s 12(n) St. P 8). Defendant contends that Plaintiff's previous Area Supervisor and Center Manager, Costello, exercised no supervision over her at this time, (Def.'s 12(m) St. P 9). However, Plaintiff notes that Costello did directly supervise Zanfardino. (Pl.'s 12(n) St. P 9).

One of the responsibilities of the Centre managers and assistant managers is to deposit the Weight Loss Centre's cash receipts into the company's bank account at the close of business each day. (Zanfardino's Aff. P 4; Plaintiff's Dep. at 119). It is an unwritten policy that, if the Centre Manager [*4] or Assistant Manager is unable to make a formal deposit into the company accounts at the end of the business day, he or she may prepare the deposit to be made on the next business day. (Zanfardino's Aff. P 5). However, it is mandatory that, even if a formal deposit is not made, the cash receipts are taken to the bank's night depository for safekeeping. *Id.* Under no circumstances is cash to be left in a Weight Loss Centre overnight as Jenny Craig has experienced incidents of theft when cash has remained at the Centre after working hours. *Id.*

On February 10, 1990, Plaintiff worked a Saturday shift at Defendant's Woodridge Centre from 8:00 a.m. to 4:05 p.m. and 4:20 p.m. to 5:30 p.m. (Plaintiff's Ex. 2). Plaintiff had only worked one Saturday at Woodridge Centre prior to this time. (Plaintiff's Ex. 1 & 2). On this particular Saturday, February 10, Plaintiff contends that she had the bank bag and keys when she left the Woodridge Center at 5:30 p.m., and after locking up and closing the Centre, she took the bank bag to the night depository. (Plaintiff's Aff. P 11). Plaintiff admits that she did not make a formal deposit on Saturday, February 10, as she had yet to balance the ledgers. [*5] (Plaintiff's Aff. P 7). Defendant claims that a formal deposit was not made on February 10 and more importantly, the cash receipts were not deposited at the bank depository, and thus they remained in the Woodridge Centre all weekend. (Def.'s 12(m) St. PP 11-12).

In response to this alleged violation of the company's banking policy, Defendant claims that Plaintiff was counselled orally and in writing by Zanfardino. *Id.* at P 12. Plaintiff denies that she was counselled either orally or in writing by Zanfardino regarding her banking responsibilities. (Pl.'s 12(n) St. P 12; Pl.'s Aff. P 8). Plaintiff maintains that Zanfardino inquired only as to why Patty Wagner, a Program Director, had worked overtime on that Saturday. *Id.* Furthermore, Plaintiff states that she never saw Zanfardino's written "training report," discussing Plaintiff's failure to make a formal deposit on Saturday, February 10, until after she was terminated. (Pl.'s 12(n) St. P 12; Plaintiff's Aff. P 8).

Plaintiff's compliance with Defendant's banking policy came into question again on Saturday, March 3, 1990. On March 3, Plaintiff worked from 10:30 a.m. to 3:45 p.m. (Plaintiff's Ex. 2). According to Plaintiff's [*6] affidavit, on the Saturdays that she worked only until 3:00 p.m., the program director was responsible for making the bank deposit or otherwise taking the bank bag containing the receipts to the bank's night depository, as the Centre did not close until 5:00 p.m. (Plaintiff's Aff. P 9). Because she was scheduled to leave before the Centre closed, Plaintiff instructed Bonnie Temps, the program director working that day, to make the bank deposit or at least take the bank bag containing the receipts to the bank's night depository. (Plaintiff's Dep. at 120). According to Plaintiff, Temps had made company deposits before and was familiar with the procedure as she had previously handled the deposit for Zanfardino. (Plaintiff's Aff. P 9).

Defendant contends that Plaintiff's failure to insure that the bank bag containing the bank receipts was deposited in the night depository on March 3 represented a second violation of company banking policy. (Def.'s 12(m) St. P 13). In response, Plaintiff maintains that she has personal knowledge that Temps put the bag in the night depository on Saturday March 3 as she herself picked up the Woodridge Centre bank bag from the bank on her way to work Monday, [*7] March 5, 1990. (Pl.'s 12(n) St. P 14; Plaintiff's Aff. P 11).

Defendant asserts that, upon discovering that cash had remained in the Centre over the weekend a second time, Zanfardino counselled Plaintiff on the necessity of delivering the receipts to the bank for safekeeping, even if it was not possible to make a deposit with the bank on that day. (Defendant's Ex. A-24). At that time,

Zanfardino also scheduled a "follow-up conference" with Area Supervisor Pat Rodebaugh for March 9, 1990 so that Rodebaugh could discuss "with [Plaintiff] the responsibilities of an Assistant Manager." *Id.*

Plaintiff concedes that Zanfardino counselled her on this occasion, however, she asserts that she was only counselled with regards to the importance of making a formal deposit on Saturday or at a minimum, preparing the formal deposit so that it could be made first thing Monday morning. (Pl.'s 12(n) St. P 14; Pl.'s Aff. P 11). According to Plaintiff, Zanfardino did not even mention that the receipts had remained in the Center over the weekend, let alone accuse Plaintiff of failing to take the receipts to the bank for safekeeping. *Id.*

The second alleged infraction relevant to the instant litigation [*8] occurred on or about February 19, 1990, when Plaintiff requested Wednesday, February 28, off from work so that she could accompany her adult son to a surgery appointment. (Def.'s 12(m) St. P 16; Pl.'s 12(n) St. P 16 (A)). Zanfardino initially approved the time off. However, on Monday the 26th, or Tuesday the 27th, Zanfardino informed Plaintiff that she could no longer have this time off. (Def.'s 12(m) St. P 16; Pl.'s 12(n) St. P 16(B)).

Defendant contends that it is an unwritten company policy that managers and assistant managers work on the last day of the month so that monthly Centre productivity goals and revenue reporting requirements are met. (Zanfardino's Dep., Ex. H at 52; Def.'s 12(m) St. P 15). Plaintiff claims that she was not aware of any company policy requiring managers to work the last day of the month and that other managers, including Zanfardino, had taken the last day of the month off in the past. (Pl.'s 12(n) St. P 15; Zanfardino's Dep., Ex. H at 52).

According to Defendant, Plaintiff was counselled by Zanfardino on Tuesday, February 27th, and at this time, Zanfardino discussed with Plaintiff the importance of working the last day of the month. (Def.'s 12(m) St. [*9] P 16). Plaintiff denies that Zanfardino explained the "last day of the month" policy to her on February 27th. (Pl.'s 12(n) St. P 16(B); Pl.'s Aff. P 15). Rather, Plaintiff claims that Zanfardino only informed her that it was mandatory that she work Wednesday, February 28th. *Id.*

Ultimately, Zanfardino allowed Plaintiff to work an irregular shift on Wednesday the 28th because Plaintiff needed to take her son to the hospital for surgery during

this stays

her regular shift. (Def.'s 12(m) St. P 16; Pl.'s 12(n) St. P 16(A)). Plaintiff told Zanfardino that she would be in around 2:00 p.m. and that she would contact Zanfardino if she would be any later. (Zanfardino's Dep. at 49). On February 28, Plaintiff worked a full shift from 1:50 p.m. to 5:15 p.m. and then from 6:15 to 9:45. (Plaintiff's Ex. 2).

The third incident which Defendant allegedly considered in deciding to terminate Plaintiff concerned a complaint which Plaintiff received from customer Susan Pfeifer on March 1, 1990. (Plaintiff's Aff. P 18). In response to Pfeifer's concerns, Plaintiff suggested that Pfeifer consult a different weight loss counselor on her next visit and told Pfeifer that she would leave a note for her manager, Zanfardino, [*10] regarding Pfeifer's complaint. *Id.* Plaintiff posted the note for Zanfardino on a bulletin board at Zanfardino's desk. *Id.* Plaintiff contends that it was the practice and customary procedure for Woodridge Centre staff to leave messages and notes for Zanfardino on her bulletin board. *Id.*

Defendant charges that Plaintiff failed to bring this customer complaint to Zanfardino's immediate attention. (Defendant's Ex. A-26). According to Zanfardino, she was approached by the customer on March 7, 1990, who informed her that she had placed a complaint with Plaintiff on February 21 and that Plaintiff had done nothing to address such complaint. (Defendant's Ex. A-26; Defendant's Ex. H at 52-55). Plaintiff responds that she had been unaware of the complaint until the customer brought it to her attention on March 1, 1990. (Pl.'s Aff. P 18).

Finally, Defendant contends that on March 6, 1990, Zanfardino received a complaint from Woodridge Centre employee Terry Olejniczak regarding Plaintiff. (Def.'s 12(m) St. P 17). According to Zanfardino, Olejniczak described two incidents in which she found Plaintiff to be "unapproachable" in her capacity as Assistant Manager. (Defendant's Ex. A-25). [*11] Plaintiff maintains that she was never informed of or counselled about a complaint made by a Centre employee regarding Plaintiff's approachability. (Plaintiff's Aff. P 17).

Defendant terminated Plaintiff on March 9, 1990 from the position of Assistant Manager. (Def.'s 12(m) St. P 20; Pl.'s 12(n) St. P 20). Immediately prior to Plaintiff's termination, Zanfardino met with Area Supervisor Patricia Rodebaugh and Regional Supervisor Jennifer Holt to discuss Plaintiff's alleged performance problems,

including Plaintiff's failure to comply with company bank deposit procedures. (Def.'s 12(m) St. P 19). Defendant asserts that the decision to fire Plaintiff was made at this meeting. *Id.* After the meeting, Holt gave Plaintiff a Supervisor's Awareness Report, (Defendant's Ex. A, 27-28), and told Plaintiff that her termination was not "open for discussion." (Pl.'s 12(n) St. P 19; Pl.'s Aff. at P 19). Plaintiff asserts that she was given no verbal explanation for her termination. *Id.*

On March 13, 1990, Plaintiff filed a charge of age discrimination with the Illinois Department of Human Rights. (Pl.'s 12(n) St. P 21). Defendant was notified of this charge by letter from the Department [*12] on March 22, 1990. *Id.* On September 25, 1991, Plaintiff filed a complaint in federal district court alleging her termination constituted discrimination on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), *28 U.S.C. §§ 621-634*. (Def.'s 12(m) St. P 21).

## ANALYSIS

[HN1] Summary judgement is appropriate where no genuine issues of material fact exist and where one party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. This standard is applied with "added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Robinson v. PPG Industries, Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)*; *Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993)*. Additionally, the Seventh Circuit has noted that where a statute, such as the ADEA, allows for trial by jury, "caution is required in granting summary judgment." *Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 660, (7th Cir. 1991)*. Even so, while it is true that all facts must be considered in the light most favorable to the non-movant, *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*, mere [*13] conclusory assertions of discrimination are not sufficient to preclude summary judgment.

[HN2] To prevail on an ADEA claim, Plaintiff must ultimately prove that she was discharged because of her age. *Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035 (7th Cir. 1993)*. In other words, she must show that age was a determining factor in Defendant's decision to terminate her employment. Significantly, Plaintiff need not show that age was the sole motivating factor, but rather simply that "but for" her age, she would not have been

terminated. *Kralman v. Illinois Dept. of Veteran's Affairs, 23 F.3d 150, 153* (7th Cir.), *cert. denied,    U.S.    , 115 S. Ct. 359 (1994)*. Thus, if Plaintiff presents sufficient evidence such that a reasonable jury could find that Defendant would not have made the decision to terminate Plaintiff but for her age, summary judgment for the Defendant is inappropriate.

[HN3] There are two primary methods of proving age discrimination: direct evidence of discriminatory intent or the indirect burden-shifting scheme. *LaMontagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 (7th Cir. 1984)*. Plaintiff has elected to use the indirect, burden-shifting [*14] method of proof detailed by the Supreme Court in *McDonnell Douglas v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. The indirect burden shifting method of proof requires Plaintiff to first establish a prima facie case of discrimination which is comprised of four elements: (1) that she was in the protected class, (age 40-70); (2) that she was doing her job well enough to meet her employer's legitimate expectations; (3) that she was discharged or demoted; and (4) that the employer sought a replacement. *LaMontagne,* 750 F.3d at 1409.

Proof of the elements of a prima facie case establishes a rebuttable presumption of discrimination and shifts the burden of production to Defendant who must then articulate lawful reasons for its decision to terminate Plaintiff. *Id.* Once Defendant articulates a legitimate, non-discriminatory reason for its action, the presumption of discrimination dissolves and the burden shifts back to Plaintiff to prove that Defendant's proffered reasons for termination are pretextual. *Kralman, 23 F.3d at 153*.

Plaintiff has presented sufficient evidence to establish a prima facie case. Plaintiff clearly satisfies the first element since [*15] she was approximately 47 years old when Defendant discharged her from her job. As to the second element, this Court notes that [HN4] a determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely on the employee's testimony concerning the quality of her work. *Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 n. 7 (7th Cir. 1988)*. In her deposition, Plaintiff testified that she was always told she was doing a good job while working at the Orland Park Centre, this requirement is met. (Plaintiff's Dep. at 27).

Moreover, Plaintiff disputes all of the evidence presented by Defendant in support of its assertion that plaintiff's work performance did not meet Defendant's legitimate expectations. Namely, Plaintiff contests the facts cited by Defendant in its training reports which, according to Defendant, suggest that Plaintiff's work performance was less than satisfactory. These alleged facts include: (1) Plaintiff's failure to follow company bank procedures; (2) Plaintiff's failure to work her regularly scheduled shift on February 28th; (3) Plaintiff's failure to notify [*16] her manger regarding a customer complaint; and (4) a co-employee's comments regarding Plaintiff's approachability. Finally, as to the fourth element, Zanfardino and other younger staff members have assumed Plaintiff's duties at the Woodridge Centre. (Zanfardino's Dep. at 75; Defendant's Motion at 16).

Because Plaintiff has established a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. Defendant offers one primary reason for its decision to fire Plaintiff and refers to three additional factors which it considered. Defendant's primary explanation for its termination of Plaintiff is Plaintiff's alleged failure to comply with company banking procedures on two occasions. The secondary factors which Defendant also considered include: (1) Plaintiff's failure to work her regularly scheduled shift on the last day of the month; (2) Plaintiff's failure to inform the Centre Manager of a customer complaint; and (3) a Centre employee's complaint regarding Plaintiff's approachability.

As Defendant has articulated a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back [*17] to Plaintiff to put forth sufficient evidence to show that a reasonable jury could find that Defendant's proffered reasons for terminating her are pretextual. [HN5] In order to demonstrate pretext, Plaintiff must show either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *LaMontagne, 750 F.2d at 1409*. If Plaintiff puts forth sufficient evidence to indicate Defendant's explanation is unworthy of credence, then the trier of fact is permitted, although not compelled, to infer the real reason was age. *Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123 (7th Cir. 1994)* (citing *Visser v. Packer Engineering Assoc. Inc., 924 F.2d 655, 657 (7th Cir. 1991)* (en banc)).

1995 U.S. Dist. LEXIS 3851, *17

This Court finds that Plaintiff has provided sufficient evidence to raise a genuine issue of material fact with regard to the veracity of Defendant's explanation for Plaintiff's termination. Thus, a reasonable jury could infer that Defendant decided to terminate Plaintiff because of her age.

In its Motion for Summary Judgment, Defendant asserts it terminated Plaintiff principally because of the two occasions on which she allegedly [*18] failed to insure that daily receipts were properly stored in the bank's night depository and not left in the Weight Loss Centre overnight. According to Defendant, Plaintiff's failures to provide for the safekeeping of the Centre's cash receipts occurred on Saturday, February 10, 1990, and Saturday, March 3, 1990. (Def.'s 12(m) St. PP 11, 12, 14). Plaintiff, however, denies that she failed to insure that the Centre's cash receipts were placed in the night depository for safekeeping on either Saturday. (Pl.'s 12(n) St. PP 11, 12, 14; Plaintiff's Dep. at 118).

In her affidavit, Plaintiff states that on February 10, she left the Woodridge Centre at 5:30 p.m. with the bank bag which contained the cash receipts and proceeded to deposit the bag in the bank's night depository. (Plaintiff's Aff. P 11). As to the March 3, 1990 deposit, Plaintiff states that she knows that the cash receipts were stored in the bank's night depository because she picked up the bank bag, containing the cash receipts, from the bank depository on the morning of Monday, March 5. *Id.*

However, even if Plaintiff did not fail to insure that the receipts were placed in the bank depository for safekeeping, what is [*19] important is whether Defendant honestly believed that Plaintiff did not place the receipts in the night depository. [HN6] "The issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy V. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992).*

Significantly, neither of Defendant's training reports, prepared on February 12, 1990 and March 5, 1990 by Zanfardino, contain any reference to Zanfardino's concern that money had been left over the weekend in the Centre or Plaintiff's duty to provide for the safekeeping of cash receipts by placing the money in the bank's night depository. (Defendant's Ex. A-22 & A-24). Instead, both reports cite Plaintiff's failure to make a "formal" deposit

into the Defendant's bank account. Similarly, the "Supervisor's Awareness Report" given to Plaintiff at the time she was fired cites only her failure to make a "bank deposit," presumably a formal bank deposit. (Defendant's Ex. A-28). The Court cannot ignore the difference between Defendant's written reports which refer to Plaintiff's failure [*20] to make a formal deposit and Defendant's legitimate non-discriminatory explanation for discharge: Plaintiff's failure to place the Centre's cash receipts in the bank's night depository. (Defendant's 12(m) St. PP 11-14; Defendant's Motion at 18-19).

The discrepancy between the reason for termination, recorded in both the Supervisor's Awareness Report and the training reports prepared by Zanfardino, and the legitimate nondiscriminatory reason proffered by Defendant in response to this litigation raises a genuine issue as to whether Defendant honestly believed Plaintiff failed to insure that the cash receipts were placed in the night depository for safekeeping. *See Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 22 (7th Cir. 1987)* (holding that evidence that employer failed to comply with its own reasons for termination supports a finding of pretext).

In addition to establishing a genuine issue of fact with respect to Defendant's primary reason for firing her, Plaintiff has also presented sufficient evidence from which a fact finder could reasonably conclude that the additional factors allegedly considered by Defendant in deciding to discharge Plaintiff were pretextual.

The first [*21] of these factors considered by Defendant was Plaintiff's failure to work her regularly scheduled shift on the last day of the month as required by unwritten company policy. (Defendant's Motion at 6-7). Initially, Plaintiff notes that, when she first asked to have February 28th off in order to take her adult son to his surgery appointment, the Centre Manager, Zanfardino approved her request. (Def's 12(m) St. P 16(A)). However, Zanfardino contends that, when she realized February 28th was the last day of the month, she immediately informed Plaintiff that, in compliance with company policy, Plaintiff had to work that day. *Id.* Plaintiff, on the other hand, testifies in her deposition that Zanfardino never informed her of any policy requiring her to work the last day of the month, *see* Pl.'s 12(n) St. P 16(B); Plaintiff's Dep. P 115, but rather told her that it was mandatory that she work on February 28th with no further explanation. (Def's 12(m) St. P 16; Pl.'s 12(n) St.

P 16(A); Plaintiff's Dep. P 113). Moreover, both parties agree that Zanfardino and Plaintiff ultimately resolved the issue by agreeing that Plaintiff would work an irregular shift from 2:00 p.m. to 10:00 p.m. on [*22] the 28th. (Def.'s 12(m) St. P 16(A)). As Plaintiff testifies that Zanfardino never informed her of the alleged company policy requiring a manager or assistant manager to work the last day of the month and as Plaintiff did work an irregular shift on February 28th, Plaintiff has successfully raised a genuine issue of material fact as to the credibility of Defendant's claim that it factored into its termination decision Plaintiff's failure to comply with an alleged company policy requiring that managers or assistant managers work the last day of the month.

In *Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1040 (7th Cir. 1993)*, a similar case, the employer claimed the employee's termination was the result of his failure to comply with the company's no-dating policy. The plaintiff questioned the existence of such a policy citing the absence of any written explanation of such a policy, the fact that other similarly situated employees had not in accordance with any such policy, and the testimony of other employees that they were not aware of such a policy. *Id. at 1040*. The Seventh Circuit found that [HN7] "when the existence of a uniform policy is in doubt, it cannot serve as a reason for [*23] discharge..." *Id.* Thus, the Seventh Circuit held that based on the record before it, a material issue of fact existed as to whether the employer had a policy against employee dating, and thus whether the employer did in fact fire the employee for violating the policy. *Id.*

Although Plaintiff has not offered testimony of other employees stating that they were unaware of any policy requiring managers to work the last day of the month, it is uncontested that no written explanation of the policy exists. Further, Plaintiff offers evidence that other younger, similarly situated employees have not been held to the same requirements of working the last day of the month. Specifically, Plaintiff points to the testimony of Maddelena Zanfardino, who is 23 years old and who admits that she had taken the last day of the month off in the past. (Zanfardino Dep. at 73-75). In addition, Plaintiff provides the testimony of former Evergreen Park Centre Manager, Kimberly Woods, who was 27 years old at the time of Plaintiff's termination and who was permitted to take the last day of the month off when her son developed chicken pox. (Woods Dep. at 40-42). While such evidence does not prove that the [*24] policy does not

exist, the fact that other younger similarly situated employees have not been held to the same requirement of working the last day of the month creates a disputed issue as to whether Defendant applied the policy in a discriminatory fashion. As in *Sarsha*, the evidence regarding differential application of the alleged policy, the absence of any written explanation of the policy and Plaintiff's testimony that she was never informed of such a policy raise a genuine issue of material fact as to whether Defendant had a policy requiring that managers and assistant managers work the last day of the month, and thus whether Defendant terminated Plaintiff for violating such a policy. As such, the jury could infer that the real reason for Plaintiff's termination was discriminatory, and therefore summary judgment is inappropriate.

In addition to Plaintiff's alleged failure to take the cash receipts to the bank's night depository for safekeeping and to work her regularly scheduled shift on the last day of the month, Defendant cites two other factors it considered in its decision to terminate Plaintiff: Plaintiff's failure to properly notify the Centre Manager of a customer complaint, [*25] and a Centre employee's complaint asserting that Plaintiff is unapproachable. Significantly, Defendant indicates that the allegedly improperly handled customer complaint and the employee complaint were secondary factors considered in its decision to terminate Plaintiff, and presumably, not sufficient reasons, in and of themselves, for firing Plaintiff.

Nevertheless, the Court observes that in one of Plaintiff's training reports, Zanfardino notes that a co-employee states that she asked Plaintiff to assist her in providing a refund to a customer and that Plaintiff adequately instructed her as to how to handle the situation. (Defendant's Ex. A-25). However, the co-employee complained that Plaintiff should have personally handled the situation rather than having the co-employee do so. *Id.* The co-employee never states that Plaintiff is unapproachable; rather, it is Zanfardino who characterizes the co-employee's complaint as such.

Moreover, as to the customer complaint, Plaintiff states that she posted a note on Zanfardino's board near her desk and that it was the customary office procedure to leave messages for Zanfardino on the board at her desk when she was not in. (Plaintiff's [*26] Dep. at 122). Plaintiff testified that on the day the customer approached

her, she followed this procedure and posted a note on the board at Zanfardino's desk. Thus, in asserting that she followed the customary procedure for notifying Zanfardino of customer complaints, Plaintiff has produced sufficient evidence to create a genuine issue with respect to the credibility of Defendant's assertion that it considered Plaintiff's failure to notify Zanfardino of a customer complaint in deciding to terminate Plaintiff.

## CONCLUSION

As the Seventh Circuit noted in its decision in *Sarsha:*

> "Stripped down, this is a case of one party's words against the other. . .We cannot resolve the conflict between these two positions without deciding which side to believe. [HN8] On summary judgement, a court can neither make a credibility

determination nor choose between competing inferences. Rather, these functions are for a jury."

*Sarsha, 3 F.3d at 1041.* Plaintiff has provided sufficient evidence to create a genuine issue of material fact with regard to the veracity of Defendant's proffered explanation for its decision to terminate Plaintiff. Thus, a reasonable jury could infer from [*27] the evidence presented that age was the determinative factor in Defendant's employment decision. For all the foregoing reasons, the Court denies Defendant's Motion for Partial Summary Judgment.

**ENTER:**

**JOHN A. NORDBERG**

**United States District Judge**

**DATED: March 27, 1995**