LEXSEE 2005 U.S. DIST. LEXIS 12096

**MARC A. TITUS, Plaintiff, v. ELGIN, JOLIET & EASTERN, RAILWAY
COMPANY OF INDIANA a/k/a EJ&E RAILROAD, Defendant.**

**Cause No.: 2:01-CV-424ps**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
INDIANA, HAMMOND DIVISION**

*2005 U.S. Dist. LEXIS 12096*

**June 16, 2005, Decided**

**SUBSEQUENT HISTORY:** Reconsideration denied by
*Titus v. Elgin, Joliet & E. Ry. Co., 2005 U.S. Dist. LEXIS
25424 (N.D. Ind., Oct. 20, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee
filed suit against defendant former employer, alleging
claims for racial discrimination under Title VII of the
Civil Rights Act of 1964, *42 U.S.C.S. § 2000e-2*, and *42
U.S.C.S. § 1981*. The employer filed a motion for
summary judgment.

**OVERVIEW:** The employee filed suit after he was fired
for sleeping on the job, which was a violation of
company policy. The employee alleged that he was the
victim of intentional discrimination based on race. In
response to the employer's motion for summary
judgment, the employee presented testimony from several
other employees, who stated that sleeping on the job was
a very common practice at work, despite official rules to
the contrary. The employee also presented evidence that a
white employee, who was caught sleeping on the job on
the same night as the employee, was neither fired nor
reprimanded. The court held that the employer was not
entitled to summary judgment on the employee's claims
because the employee presented sufficient evidence to
create questions of fact as to whether he was terminated
on account of his race. The court found that the
employer's selective enforcement of the no-sleeping
policy raised doubt about the employer's practices and the
employer's stated reasons for firing the employee. Thus, a
jury could reasonably find that the no-sleeping rule was
used only as a justification for firing an employee for

other reasons.

**OUTCOME:** The court denied the employer's motion for
summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General
Overview*
*Civil Procedure > Summary Judgment > Standards >
Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards >
Materiality*
[HN1] Summary judgment is proper if the pleadings,
depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of
law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Burdens of
Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of
Production & Proof > Nonmovants*
[HN2] A party seeking summary judgment carries the
initial burden of demonstrating an absence of evidence to
support the position of the non-moving party. The
non-moving party must then set forth specific facts
showing there is a genuine issue of material fact and that
the moving party is not entitled to judgment as a matter
of law.

***Civil Procedure > Summary Judgment > Standards > General Overview***

[HN3] A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

***Civil Procedure > Summary Judgment > Standards > General Overview***

[HN4] In determining a summary judgment motion, a court must draw every reasonable inference from the record in the light most favorable to the non-moving party.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview***

[HN5] On a motion for summary judgment, the non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview***

[HN6] The plain language of *Fed. R. Civ. P. 56(c)* mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof > Scintilla Rule***
***Civil Procedure > Summary Judgment > Opposition > General Overview***

[HN7] The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment.

***Civil Procedure > Summary Judgment > Standards > Genuine Disputes***
***Civil Procedure > Summary Judgment > Standards > Materiality***

[HN8] Employment discrimination cases, while often turning on factual questions, are nonetheless amenable to summary judgment when there is no genuine dispute of material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate.

***Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Protected Parties***
***Labor & Employment Law > Discrimination > Racial Discrimination > Employment Practices > Discharges***
***Labor & Employment Law > Discrimination > Racial Discrimination > Employment Practices > Failures to Hire***

[HN9] Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual because of such individual's race, color, religion, sex, or national origin. *42 U.S.C.S. § 2000e-2(a)(1).*

***Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Protected Parties***
***Constitutional Law > Equal Protection > Full & Equal Benefit***
***Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)***

[HN10] Under *42 U.S.C.S. § 1981*, all persons within the jurisdiction of the United States shall have the same right to the full and equal benefit of all laws as is enjoyed by white citizens.

***Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Proof of Discrimination***
***Labor & Employment Law > Discrimination > Disparate Treatment > Statutory Application > Reconstruction Statutes (secs. 1981, 1983 & 1985)***
***Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions***

[HN11] Under either Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e-2*, or *42 U.S.C.S. § 1981*, to prove a claim of disparate treatment, a plaintiff must establish that he is the victim of intentional discrimination on account of his race or national origin.

***Evidence > Procedural Considerations > Circumstantial & Direct Evidence***
***Evidence > Relevance > Circumstantial & Direct Evidence***
***Labor & Employment Law > Discrimination > Disparate Treatment > General Overview***

[HN12] A plaintiff may establish intentional

discrimination through either the "direct" or "indirect" method of proof. Under the direct method of proof, there are two types of permissible evidence. First, there is direct evidence, or evidence that, if believed by the trier of fact, would prove the fact in question without reliance on inference or presumption. Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.

*Evidence > Relevance > Circumstantial & Direct Evidence*
*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN13] The second type of evidence permitted under the direct method of proof relies more on circumstantial evidence and allows a plaintiff to prevail by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. The circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action.

*Evidence > Procedural Considerations > Circumstantial & Direct Evidence*
*Evidence > Relevance > Circumstantial & Direct Evidence*
*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN14] The courts have identified three types of circumstantial evidence of intentional discrimination: (1) suspicious timing, ambiguous statements, and behavior toward or comments directed at other employees in the protected group; (2) evidence that employees similarly situated to the plaintiff but outside the protected class received systematically better treatment; or (3) evidence that the plaintiff was qualified for a job in question, but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. Each type of circumstantial evidence can be used on its own or in conjunction with the other types of circumstantial evidence to establish discrimination.

**COUNSEL:** [*1] For Marc A. Titus, Plaintiff: Anna Marie Hearn, Blachly Tabor Bozik & Hartman, Valparaiso, IN.

For Elgin Joliet And Eastern Railway Company, also known as EJ&E Railroad, Defendant: David J. Burton PHV, Patrick W. Ritchey, Reed Smith LLP - Pit/PA, Pittsburgh, PA; Harold Abrahamson, Abrahamson Reed & Bilse, Hammond, IN; Michael C. Adley, Cohen & Malad LLP, Indianapolis, IN.

**JUDGES:** Philip P. Simon, Judge.

**OPINION BY:** Philip P. Simon

**OPINION**

**OPINION AND ORDER**

Plaintiff Marc A. Titus brought this action against his former employer, Defendant Elgin, Joliet & Eastern, Railway Company of Indiana ("EJ&E"), alleging racial discrimination in violation of *Title VII of the Civil Rights Act of 1964* and *42 U.S.C. § 1981*. The matter is before the Court on a Motion for Summary Judgment filed by EJ&E [Docket No. 71]. For the following reasons, the Defendant's Motion for Summary Judgment is granted in part and denied in part.

**BACKGROUND**

Titus began his employment with EJ&E as a hostler -- an employee who services the engines -- in June of 1997. In January of 1998, he became a machinist for EJ&E. In hopes of becoming a Trainman Trainee, Titus took the SRA Mechanical Aptitude Test on June 1, 2000 He did not score high enough to pass, but shortly after the exam, [*2] EJ&E realized they had a shortage of train operations personnel and they lowered the passing score. They then interviewed Titus and recommended he be accepted in the Trainman Trainee program. Titus began the Trainman Trainee program in August 2000. Because he was beginning as a Trainman Trainee, he had to relinquish his seniority rights under the collective bargaining agreement and became a probationary employee in the program. However, Titus believed that if he lost his position as a trainee, he would be able to go back to being a machinist. (Titus Dep. at 62).

As an EJ&E employee, Titus was trained in the company rules and was aware that sleeping while working was against those rules. (Titus Dep. at 89). He also knew that employees reclined with their eyes closed or covered were in violation of the no sleeping rule. (Titus Dep. at 89 and Pl. Exh. 6B). But knowledge of the

rule did not prevent Titus, and at least one other employee, Ryan Matlock, from violating the rule on the night of August 20, 2000.

On that night, Titus was working the midnight shift in a locomotive. Ryan Matlock was also working the midnight shift, but as an engineer. During Matlock's dinnertime break, he lay [*3] down on a bench, made a pillow out of some rolled up clothes, and planned to catch a nap for about an hour. (Matlock Dep. at 10). According to Matlock, it was common for employees to take a nap during break time and that EJ&E management knew this to be the case. (Matlock Dep. at 16). When Titus was caught sleeping, he was on his dinner break. (Matlock Dep. at 34). Matlock himself had previously been caught napping by the general manager and nothing happened to him. (Matlock Dep. at 20). Indeed, Matlock did not care that he was caught sleeping on the night in question. (Matlock Dep. at 32).

Returning to the events of that evening, as Matlock was lying on the bench with his eyes shut and a pillow under his head, someone came in the room. A few minutes later, that person, Gerry Carr, asked Matlock if he was working with Titus. After Matlock told him that he was not, Carr said, "Well, the least you could do is sit up when you see me," while Matlock was still lying down, apparently in acknowledgment of the fact that Matlock was breaking the no sleeping rule. (Matlock Dep. at 10). Matlock replied that if he was going to get in trouble for sleeping, he wanted to at least fall asleep first. [*4] (Matlock Dep. at 10). Then, before he left, Carr told him, "You didn't see me tonight," which Matlock interpreted to mean that Carr was specifically looking for Titus and that he did not have to worry about getting in trouble for being caught sleeping. (Matlock Dep. at 34-35). At first, Matlock laid his head back down to go back to sleep but then decided to follow Carr.

Matlock watched as Carr entered the engine where Titus and another employee, Lonnie Gregory, were working, and sat down in the middle seat. According to Gregory, Carr motioned for him to be silent and not turn the lights on. After a few minutes, Titus woke up and saw Carr standing over him. Carr smiled and told Titus to get his bags and get off the locomotive. (Titus Dep. at 65). Carr told Titus to clean out his locker and explained that his application for the position of Trainman Trainee would be rejected and his employment with EJ&E would end. The next day, Carr spoke with Titus over the phone

and again informed him that his application for employment as a trainman was being rejected. Because he had relinquished his seniority status with the union when he entered the Trainman Trainee program, when he was dropped [*5] out of the program he was effectively fired, since he could not go back to his old job.

Gerard Austin is another black employee who was terminated from EJ&E over an incident involving the no sleeping rule. Unlike Titus, but similar to Matlock, Austin was not a probationary employee. According to Austin's affidavit, Carr snuck onto his train when the lights were off and attempted to photograph him sleeping. Startled by the sense that someone was behind him, Austin abruptly turned around and his hand inadvertently hit Carr's camera. Carr then accused him of striking him the face and sleeping on the job. It takes one hundred demerits to be terminated. Austin had sixty demerits prior to this incident, and he was fired afterwards.

## DISCUSSION

In his Amended Complaint, Titus asserted national origin and racial discrimination claims under Title VII and *Section 1981*, as well as retaliation, tortious interference and blacklisting claims based on Defendant's decision to terminate his employment. His claim of retaliation was previously dismissed with prejudice when the Court found that Titus was not engaging in protected activity when he wrote letters to the management of EJ&E. Additionally, [*6] Titus has conceded in his Opposition to Motion for Summary Judgment that there is no evidence as to his claims of tortious interference, blacklisting and discrimination based on national origin. Thus, the Court grants Defendant's Motion for Summary Judgment with respect to those claims. The Court will now consider Titus's claims of racial discrimination under Title VII and *Section 1981*.

### I. Summary Judgment Standard

[HN1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. [HN2] The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994)*. The

non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* [*7] [HN3] A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).*

[HN4] In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).* [HN5] The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex, 477 U.S. at 324.* [HN6] The plain language of *Rule 56(c)* mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. [HN7] The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson, 477 U.S. at 252.* [HN8] Employment discrimination cases, while often turning on factual questions, are nonetheless amenable to summary judgment when there is no genuine dispute of [*8] material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *Cliff v. Board of Sch. Comm'rs, 42 F.3d 403, 409 (7th Cir. 1994).*

## II. Title VII and Section 1981 Claims

[HN9] Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin. . . ." *42 U.S.C. § 2000e-2(a)(1).* [HN10] Under *Section 1981,* "all persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." *42 U.S.C. § 1981.* [HN11] Under either theory, to prove a claim of disparate treatment, a plaintiff must establish that he is the victim of intentional discrimination on account of his race or national origin. *See Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999); see also Patton v.*

*Indianapolis Public Sch. Bd., 276 F.3d 334, 338 (7th Cir. 2002)* (noting that Title VII and [*9] *§ 1981* discrimination claims are analyzed in the same manner). [HN12] A plaintiff may establish this discrimination through either the "direct" or "indirect" method of proof. *Id.*

Under the direct method of proof, there are two types of permissible evidence. First, there is direct evidence, or evidence that, if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." *Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003)* (internal quotation omitted). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (internal quotation omitted). [HN13] The second type of evidence permitted under the direct method of proof relies more on circumstantial evidence and allows a plaintiff to prevail by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004)* (citing *Troupe v. May Dep't Stores Co., 20 F.3d 734, 737 (7th Cir. 1994)).* The circumstantial evidence, however, [*10] "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).*

In *Troupe,* [HN14] the Court identified three types of circumstantial evidence of intentional discrimination: (1) suspicious timing, ambiguous statements, and behavior toward or comments directed at other employees in the protected group; (2) evidence that employees similarly situated to the plaintiff but outside the protected class received systematically better treatment; or (3) evidence that the plaintiff was qualified for a job in question, but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Troupe, 20 F.3d at 736.* Each type of circumstantial evidence can be used on its own or in conjunction with the other types of circumstantial evidence to establish discrimination. *Id.; See also Gorence v. Eagle Food Ctrs., 242 F.3d 759, 762 (7th Cir. 2001).*

Titus most clearly argues that the Court should analyze his claim under the [*11] indirect method, yet he discusses cases that deal primarily with the direct method

and presents a significant amount of circumstantial evidence of discrimination under the direct method in his Response. (*See* Plaintiff's Response at 20-23). So although the method Titus is using to pursue his claim is unclear, the Court will give Titus the benefit of the doubt in reviewing the evidence and will analyze his claim under the direct method.

The Court finds that Titus has produced enough admissible circumstantial evidence as required by the court in *Troupe* to create questions of material fact as to whether he was a victim of intentional discrimination. The most important part of this evidence is the testimony that establishes quite clearly that despite rules to the contrary, sleeping on the job was a very common practice at EJ&E. For instance, Titus and three other employees, Ryan Matlock, Brian Brown, and Gerard Austin testified that they knew of other specific employees who had taken naps and that it was common for people to sleep for an hour during breaks. (Plaintiff's Dep. at 80, Matlock Dep. at 16, Brown Dep. at 11, Austin Aff. PP 5, 6, 7, 8, 9, 12). Lonnie Gregory was a thirty [*12] year employee of the EJ&E and was the person in the locomotive with Titus. He testified that he slept during coffee breaks (Gregory Dep. at 9), and that he knows of no one who was ever fired for napping during break time (*Id.* at 14). According to Gregory, when Titus (and Matlock) were caught sleeping, it was break time. Titus was fired; Matlock was neither fired nor reprimanded.

Matlock also testified that as far as he knew, the management employees knew about employees taking naps during their breaks. (Matlock Dep. at 16). Indeed, Matlock was caught sleeping not only on the same day as Titus but on prior instances as well. (Matlock Dep. at 20). Further, Austin explained in his affidavit that supervisors also take naps. (Austin Aff. P 12). According to Austin, supervisor Steve Kelly closes the blinds to his office, turns on the television he has in there and goes to sleep. (Austin Aff. at P 12).

Austin also stated that he found Carr himself asleep on his locomotive with the lights off and his seat reclined. (Austin Aff. at P 13). That incident began when Austin was going to fuel the locomotive Carr was on. When he went in, the lights were off and Carr was asleep in a reclined [*13] seat. (Austin Aff. at P 13, 15). After he woke Carr, he was visibly disoriented and Austin had to give him instructions on how to release the brake and move the train. (Austin Aff. at P 15). Austin also claims

that there is a room known as the "Hotel," in which employees have pillows and mattresses.

As noted above, on the night Titus was terminated, Carr found Matlock lying down with his eyes closed, which is considered sleeping according to EJ&E's rules. (Matlock Dep. at 29, 30, 32). After Carr asked Matlock if he had a trainee working with him that night, Carr said to him, "You didn't see me tonight." (Matlock Dep. at 34). Matlock took this to mean that he was not going to get in trouble for having the appearance of taking a nap. (Matlock Dep. at 35).

Overall, the evidence put forth by Titus demonstrates that while there may have been a formal rule against sleeping while on the job at EJ&E, enforcement was lax at best and sleeping on the job was a widespread practice. With such intermittent enforcement, a jury could infer that the rule was only used as a justification for firing an employee for other reasons.

EJ&E claims that Carr treated Matlock and Titus differently because [*14] Titus was a probationary employee while Matlock was not. But this explanation breaks down when considering what happened to Gerald Austin, another black employee. Austin was also -- like Matlock -- a nonprobationary employee, yet he was reprimanded by Carr (and fired due to other demerits) for sleeping on the job. In contrast, Carr took no action against Matlock. Especially in light of the other circumstantial evidence, a reasonable jury could infer that the real reason Titus and Matlock were treated differently by Carr is race, not probationary status.

EJ&E correctly points out that Titus has not put forth a similarly situated white individual who was treated differently, which would doom his claim under the indirect, burden-shifting method. However, as mentioned above, we read Titus's Response Brief as stating a claim under the direct method as well, and that method does not require Titus to fulfill the similarly-situated prong. Rather, all it requires is a showing sufficient for a jury to find intentional discrimination by the decisionmaker. *Rhodes*, 359 F.3d at 504.

In addition to the extremely lenient enforcement of the no sleeping rule, Titus's "convincing mosaic [*15] of discrimination" includes evidence that ties Carr's use of the no sleeping rule to race. As mentioned above, Austin stated in his affidavit that the only employees that he knew of who were terminated because of the no sleeping

rule were he and Titus, both of whom are black. EJ&E counters with the fact that of the eight probationary employees whose applications were rejected for safety violations, six were white and two (including Titus) were black. But because this statistic is for safety violations in general, not just violations of the no sleeping rule, it misses the mark.

In the end, EJ&E's selective enforcement of the no sleeping rule raises enough doubt about the practices at EJ&E and the stated reasons for firing Titus that the ultimate judgment should be left to a jury, who could reasonably find that Carr intentionally discriminated against Titus. Accordingly, EJ&E's motion for summary judgment on Titus's claim of race discrimination under Title VII and *Section 1981* is denied.

**CONCLUSION**

Titus has presented enough evidence to create questions of fact as to whether he was terminated on account of his race. However, Plaintiff has conceded there is no evidence as [*16] to his claims of tortious interference, blacklisting and discrimination based on national origin. Accordingly, Defendant's Motion for Summary Judgment [Docket No. 71] is **GRANTED IN PART** with respect to Titus's claims of tortious interference, blacklisting and discrimination based on national origin and **DENIED IN PART** with respect to Plaintiff's claim of race discrimination under Title VII and *Section 1981*. Plaintiff's Motion to Strike [Docket No. 78] is **DENIED** as moot.

**SO ORDERED.**

**ENTERED: June 16, 2005**

Philip P. Simon, Judge

United States District Court