LEXSEE 2002 U.S. DIST. LEXIS 5702

**DWAYNE TAYLOR, Plaintiff, v. BRINKER INTERNATIONAL PAYROLL CORPORATION, Defendant.**

**No. 00 C 3866**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2002 U.S. Dist. LEXIS 5702*

**March 28, 2002, Decided**
**April 2, 2002, Docketed**

**DISPOSITION:**    [*1] Motion for summary judgment granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, alleging discrimination, retaliation, and defamation. The employer moved for summary judgment under *Fed. R. Civ. P. 56* on all claims.

**OVERVIEW:** There were two parts to the employee's retaliation claim. One was based on the reduction of his hours subsequent to his discrimination complaint, and the other was based on the reduction of his shifts per week. The alleged discriminatory acts were (1) a disciplinary write-up because he called off, (2) a reduction in working hours because of the disciplinary action, and (3) his termination. The employee asserted that comments made by a manager created a hostile work environment. The court found the comments, while reprehensible, did not create a hostile work environment, although it did indicate discriminatory animus. On the failure to transfer claim, the court found that the employer had made a decision prior to the employee's complaint to hire a new person for the position that the employee requested. On the retaliation claim based on a reduced number of hours, the employee gave contradictory statements. On the termination claim, the court found the employer's statement that he was dismissed for poor performance under cut by its assertion that the employee's work was always good. On the defamation claim, the presumption

of damages had not been rebutted.

**OUTCOME:** The employer's motion for summary judgment was granted on the racial harassment claim and the retaliation claims based on reduction of hours. Summary judgment was denied on the discriminatory animus claim, the retaliation claims based on reduction of shifts per week, termination, and defamation.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Discovery Materials*
[HN1] According to *Fed. R. Civ. P. 56*, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN2] See *42 U.S.C.S. § 2000e-2(a)(1)*.

*Civil Procedure > Summary Judgment > Standards > General Overview*

2002 U.S. Dist. LEXIS 5702, *1

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*

[HN3] Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action.

*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Burdens of Proof > Objective & Subjective Standards*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Burdens of Proof > Severe & Pervasive Standards*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Hostile Work Environment*

[HN4] To show racial harassment, an employee must demonstrate that his workplace was objectively and subjectively hostile such that the alleged harassment was severe and pervasive so as to alter the conditions of his employment.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*

[HN5] Determining a defendant's liability under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, must be made on a case-by-case basis after consideration of the totality of the circumstances, although there is no magic number of incidents that will sustain or defeat a claim of racial harassment.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*

[HN6] There are a number of factors that courts will consider when determining whether an employee's work environment was hostile, such as the frequency and severity of the conduct; whether it was physically threatening or merely an offensive utterance; and whether it interfered with the plaintiff's work performance.

*Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions > Reductions in Force*
*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Title VII of the Civil Rights Act of 1964 > Race & Color*

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*

[HN7] Complaining about a racially discriminatory work environment is a protected activity, even if the alleged conduct does not actually violate Title VII of the Civil Rights Act of 1964, *42 U.S.C.S § 2000e et seq. 42 U.S.C.S. § 2000e-3(a).*

*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Title VII of the Civil Rights Act of 1964 > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*

[HN8] To establish a prima facie case of retaliation, Mr. Taylor must show that (1) he engaged in a protected activity under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, (2) he suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Retaliation > General Overview*

[HN9] Under the McDonnell Douglas test, once a plaintiff has established a prima facie case for retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.

*Torts > Intentional Torts > Defamation > Elements > General Overview*

[HN10] To prove defamation, a plaintiff must show that (1) defendant made a false statement about him, (2) there was an unprivileged communication to a third party with fault by defendant, and (3) the publication damaged him.

*Torts > Intentional Torts > Defamation > Defamation Per Se*
*Torts > Intentional Torts > Defamation > Elements > General Overview*

[HN11] Damages are presumed in cases of defamation per se.

*Torts > Intentional Torts > Defamation > Procedure*

[HN12] A statement does not have to be made directly to

the plaintiff to constitute defamation; rather, the statement must be about the plaintiff.

**COUNSEL:** For DWAYNE TAYLOR, plaintiff: Andrew Jay Cohen, Law Offices of Andrew J. Cohen, Marshall J. Burt, Law Offices of Marshall J. Burt, Chicago, IL.

For BRINKER INTERNATIONAL PAYROLL CORPORATION, defendant: John F. Kuenstler, Wildman, Harrold, Allen & Dixon, Chicago, IL.

For BRINKER INTERNATIONAL PAYROLL CORPORATION, defendant: Geoffrey M Gilbert, Jr, Robert D. Younger, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO.

**JUDGES:** James B. Zagel, United States District Judge.

**OPINION BY:** James B. Zagel

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dwayne Taylor is a former employee of a Chili's restaurant, which is operated by defendant. Mr. Taylor alleges that during his employment as a cook at Chili's, he was subjected to racist comments by his manager, Randy Nicholas, and that in response to his complaint regarding these comments and the overall treatment of black kitchen employees at Chili's, his hours were reduced; he was not given the position he requested; and he was subsequently terminated. In addition, Mr. Taylor [*2] contends that the racist comments that Mr. Nicholas allegedly made were defamatory. On or about October 12, 2000, Mr. Taylor filed a two count amended complaint against defendant Brinker International Payroll Corporation alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. § 2000e et seq.* ("Title VII") and retaliation also in violation of Title VII. In the second count of his amended complaint, Mr. Taylor also alleges defamation. Defendant moves for summary judgment on all claims.

[HN1] According to *Rule 56 of the Federal Rules of Civil Procedure,* summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." After considering the facts of this case in the light most favorable to Mr. Taylor, I find that summary judgment is appropriate for the racial harassment claim and the retaliation claims based on reduction of hours on the days Mr. Taylor worked subsequent to his discrimination complaint and [*3] the denial of his request for position transfer, but not for the discriminatory animus claim, the retaliation claims based on reduction of shifts per week and termination, and the defamation claim.

Count One: Discrimination

[HN2] According to Title VII, "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." *42 U.S.C. § 2000e-2(a)(1).* Mr. Taylor alleges discriminatory acts resulting from racial animus and hostile work environment. The discriminatory acts alleged by Mr. Taylor are (1) a disciplinary write-up because he called off; (2) a reduction in working hours because of the disciplinary action; and (3) his termination. [1] Mr. Nicholas, Mr. Taylor's manager, allegedly made three comments revealing racial animus towards blacks (which will be discussed in more detail below). For the purpose of this motion, I must assume that these comments were made and thus that Mr. Nicholas had discriminatory animus. Because he participated in the decisions resulting in these three actions by defendant, [*4] I must deny summary judgment for Mr. Taylor's discrimination claim based on these acts. [HN3] "Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1459 (7th Cir. 1994).* Mr. Nicholas ordered the write-up of Mr. Taylor, and he participated in the discussions which led to the reduction of Mr. Taylor's hours and subsequent termination. [2] With regard to the termination, it appears from the deposition of Stanley Zubek, the manager who decided to terminate Mr. Taylor, that Mr. Nicholas had not informed him that Mr. Taylor called off because of a doctor's appointment, and it also appears from the record that this incident played a role in the decisions to reduce hours and terminate. Thus, summary judgment is denied for Mr.

2002 U.S. Dist. LEXIS 5702, *4

Taylor's discriminatory animus claim based on his write-up, reduction of hours, and termination.

1  Defendant argues that in his deposition, Mr. Taylor was asked for all possible bases for his discrimination claim and that he did not mention the reduction of hours or his termination in his responses. Defendant concludes from this part of the deposition that Mr. Taylor never claimed that the reduction of hours or termination were motivated by racial animus. However, during this line of questioning, defendant tells Mr. Taylor that he "included several other things" amongst the other named occurrences, and it has not been shown that the reduction of hours and termination were not within those "other things." Also, given the number of incidents that were being discussed at this point, it is feasible to believe that Mr. Taylor thought that he had already named these occurrences when he said that there was nothing else that he thought was racially motivated or created a hostile work environment. Thus, I reject defendant's argument that Mr. Taylor's discrimination claims based on reduction of hours and termination should be stricken.

[*5]

2  Defendant argues that Mr. Nicholas did not participate in the decision to terminate Mr. Taylor. However, for the purpose of this motion, I must accept Mr. Taylor's version of the facts, which allege that Mr. Nicholas did play a role in the decision to discharge.

[HN4] To show racial harassment, Mr. Taylor must demonstrate that his workplace was objectively and subjectively hostile such that the alleged harassment was severe and pervasive so as to alter the conditions of his employment. *See Johnson v. Bodine Electric Co., 215 F.3d 1330 (7th Cir. 2000).* Mr. Taylor bases his racial harassment claim on three incidents [3] in which Mr. Nicholas allegedly commented on Mr. Taylor's BMW and asked if Mr. Taylor was selling drugs because black people could not get such a car unless they were selling drugs. Mr. Nicholas denies making these statements; however, for the purpose of this motion, I will accept Mr. Taylor's assertion that he did make the statements. Defendant argues that these comments, even if made, do not constitute severe or pervasive conduct such that Mr. Taylor's employment [*6] conditions were affected or a hostile working environment was created.

3  The parties are in dispute over whether one of the incidents was race neutral because the alleged comment did not contain any direct reference to race. Mr. Taylor argues that if the comment is considered in the context of the other two incidents, there is a reasonable inference that the alleged comment had a racial meaning. After looking at all three alleged comments together, I agree with Mr. Taylor's argument and thus view the comment as discriminatory.

[HN5] Determining a defendant's liability under Title VII "must be made on a case-by-case basis after consideration of the totality of the circumstances." *Nazaire v. Trans World Airlines, 807 F.2d 1372, 1380-81 (7th Cir. 1986).* Although there is no magic number of incidents that will sustain or defeat a claim of racial harassment, *see Daniels v. Essex Group, Inc., 937 F.2d 1264, 1273-74 (7th Cir. 1991),* I do not find that these alleged incidents rise to the [*7] level of a hostile work environment. [HN6] There are a number of factors that courts will consider when determining whether an employee's work environment was hostile, such as the frequency and severity of the conduct; whether it was physically threatening or merely an offensive utterance; and whether it interfered with the plaintiff's work performance. *See Silk v. City of Chicago, 194 F.3d 788, 804 (7th Cir. 1999).* Mr. Nicholas' alleged comments, albeit offensive and expressive of an extremely objectionable stereotype of blacks, are not sufficiently frequent or severe to create a hostile work environment, nor do they physically threaten Mr. Taylor, who has testified that his work performance was always good and not affected by the incidents in question. *See, e.g., Tillmon v. Garnett Corp., 1999 U.S. Dist. LEXIS 11972 (N.D. Ill. 1999)* (holding that although defendant's alleged conduct in making eight extremely racist comments using words such as "nigger" and "slave" "was reprehensible and without place in a civilized society, it simply was not sufficiently severe or pervasive to create a hostile working environment."). For these reasons, I deny summary judgment [*8] on the discriminatory animus claim and grant summary judgment on the racial harassment claim.

Count Two: Retaliation

Mr. Taylor alleges that defendant retaliated against him for complaining about Mr. Nicholas' comments and the disparate treatment of black kitchen employees in

general. [HN7] Complaining about a racially discriminatory work environment is a protected activity, even if the alleged conduct does not actually violate Title VII. *42 U.S.C. § 2000e-3(a)*. Mr. Taylor argues that after complaining about the alleged discrimination to the restaurant's general manager, Maggie Kochvar, on August 17, 1999, his work hours were reduced, he did not get the position transfer he requested, and he was subsequently terminated as a result. [4]

> 4   In his complaint and deposition, Mr. Taylor also alleges that he was retaliated against because he called in sick and talked to three co-workers about Mr. Nicholas' comments. Mr. Taylor also alleged that (1) he was required to stay late to clean equipment, do additional prep work, and take out the trash, and (2) he was denied a 50 cent raise in retaliation for his complaint. Defendant's motion responded to all of these allegations. However, Mr. Taylor does not address any of these allegations in his response to defendant's motion and thus, I am limiting his retaliation claim to the allegations concerning the complaint to Ms. Kochvar, the reduction of hours, the denial of position transfer, and the termination.

[*9] [HN8] To establish a prima facie case of retaliation, Mr. Taylor must show that (1) he engaged in a protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir. 1996)*. Since complaining of racial discrimination is a protected activity and the employment actions that Mr. Taylor names are adverse, the first two elements do not appear to be at issue. What remains is the question of whether there exists a causal nexus between Mr. Taylor's complaint to Ms. Kochvar and the adverse employment actions listed by Mr. Taylor.

With regard to Mr. Taylor's claim based on reduction of hours, there appear to be two issues: first, whether Mr. Taylor's hours were reduced on the days he worked and second, whether his number of shifts per week were reduced in retaliation of his complaint. In his deposition, Mr. Taylor testified that after complaining to Ms. Kochvar, he was required to stay late, and he makes this allegation in his second amended complaint as well. Although this argument is no longer at issue in the [*10] retaliation claim (*see supra* footnote 4), Mr. Taylor has

not indicated that this testimony is incorrect. This contradicts Mr. Taylor's assertion that his hours were reduced by 20% on the days he worked after complaining to Ms. Kochvar and consequently, I am granting summary judgment on the retaliation claim based on reduction of hours on the days Mr. Taylor worked.

In response to Mr. Taylor's allegation that his number of shifts per week were reduced after complaining to Ms. Kochvar, defendant asserts that the decision to reduce Mr. Taylor's shifts per week by one shift was made the day before the complaint was made, and that Mr. Taylor's shifts were never reduced by more than one per week. This decision was allegedly based on Mr. Taylor's calling off for which he was disciplined. Mr. Taylor contends that "a factual question exists whether [he] actually called off on August 15, 1999 as alleged by defendant." However, later in his response to defendant's motion, Mr. Taylor asserts that he called Mr. Nicholas on the night of August 15 to let him know that he would miss work the next day because of a medical emergency and subsequently presented a doctor's note reflecting the medical [*11] emergency in accordance with defendant's calling off policy. Thus, it seems that Mr. Taylor's calling off on August 15, 1999, is not in dispute, and thus, I do not find that a factual question exists regarding the occurrence of this incident. Mr. Taylor also questions the verity of defendant's assertion that the decision to reduce his shifts by one per week was made the day before he complained to Ms. Kochvar but then goes on to argue that even if that were true, his shifts per week were reduced by more than one after his complaint to Ms. Kochvar on August 17. The evidence indicates that Mr. Taylor worked two shifts (he had previously worked four shifts per week prior to the decision to reduce by one shift) between August 26 and September 1, 1999. Defendant argues that Mr. Taylor was expected to work three shifts that week and does not know why he only worked two. Even if I accept Mr. Taylor's assertion that his shifts that week were reduced to two, the evidence indicates that he worked three shifts the following week, which suggests that the week of August 26 was an isolated occurrence. Nevertheless, it is Mr. Taylor's contention that the decision to reduce his shifts per week was [*12] made after his complaint to Ms. Kochvar, and for the purpose of this motion, I must accept this as true. The temporal proximity between the complaint and the reduction of shifts is sufficient to satisfy the causation element of a prima facie case for retaliation. *See King v. Preferred Tech. Group, 166 F.3d 887, 893 (7th Cir.*

1999); *Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1458 (7th Cir. 1994).* [HN9] Under the test laid out in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, once the plaintiff has established a prima facie case for retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. In the present case, defendant argues that the decision to reduce Mr. Taylor's shifts was the result of Mr. Taylor's calling off on August 15. However, in the discussion of Mr. Taylor's discrimination claims, I found that a genuine issue of fact exists regarding whether the disciplinary actions subsequent to Mr. Taylor's calling off were motivated by Mr. Nicholas' alleged racial animus. Thus, defendant has not met its burden under the [*13] *McDonnell* test, and I deny summary judgment for Mr. Taylor's retaliation claim based on the reduction of shifts per week.

With respect to Mr. Taylor's request to be transferred to the flattop position, defendant similarly argues that the decision to give another individual, Armando Arteaga, the requested position was made prior to the complaint to Ms. Kochvar. Mr. Taylor argues that Mr. Arteaga did not start working in the flattop position until three days after Mr. Taylor made his request to Ms. Kochvar, which was during the same conversation in which Mr. Taylor complained of discrimination to her. However, the evidence indicates that defendant had already decided to hire Mr. Arteaga by August 16, 1999, and that Mr. Arteaga was requested to start working the flattop position on August 17. Even though the record indicating defendant's intention to hire Mr. Arteaga on August 16 does not specify the flattop position, and Mr. Arteaga did not start working the flattop position until a few days later, it is apparent that defendant had made the decision to hire Mr. Arteaga for the flattop position on August 16, the day prior to Mr. Taylor's complaint. Thus, I grant summary judgment [*14] for the retaliation claim based on denial of Mr. Taylor's request for transfer to the flattop position.

Finally, Mr. Taylor bases his retaliation claim on his termination. Defendant has been inconsistent with regard to the question of whether Mr. Taylor was actually discharged. Defendant has previously asserted that Mr. Taylor voluntarily resigned to seek another position but now contends that Mr. Taylor was discharged for good cause. Even if I overlook this inconsistency, I find that summary judgment on Mr. Taylor's claim based on his

termination is inappropriate. Although defendant asserts that it was Mr. Zubek alone who decided to discharge Mr. Taylor and that Mr. Zubek was unaware of the complaint to Ms. Kochvar, Mr. Taylor contends that Mr. Nicholas was involved in that decision, and for the purpose of this motion, I must accept Mr. Taylor's version of what occurred. To defeat the causation element of Mr. Taylor's prima facie case of retaliation, defendant argues that Mr. Zubek decided to discharge Mr. Taylor "because of [his] poor performance and because the restaurant ran more smoothly without [him] working." This argument is disingenuous, given that in response to Mr. [*15] Taylor's racial harassment claim, defendant offers Mr. Taylor's testimony that his work performance was always good as evidence that the alleged harassment did not adversely affect Mr. Taylor's ability to perform. Defendant cannot have it both ways. Since the termination occurred in close proximity to the complaint to Ms. Kochvar, and defendant has not provided sufficient evidence to defeat the causal connection between these two occurrences, I find that Mr. Taylor has met the requirements of a prima facie case for retaliation. Defendant argues that its legitimate, non-discriminatory reason for discharging Mr. Taylor was his poor work performance. However, as discussed above, defendant's assertions with regard to Mr. Taylor's work performance are inconsistent, and consequently, I find that defendant has not met its burden under the *McDonnell* test. Hence, I deny summary judgment for Mr. Taylor's claim based on his termination.

Count Three: Defamation

[HN10] To prove defamation, Mr. Taylor must show that (1) defendant made a false statement about him; (2) there was an unprivileged communication to a third party with fault by defendant; and (3) the publication damaged him. *Vickers v. Abbott Laboratories, 308 Ill. App. 3d 393, 719 N.E.2d 1101, 1107, 241 Ill. Dec. 698 (Ill.App. 1999).* [*16] Defendant argues that Mr. Taylor cannot show publication or damages. The alleged statements at issue here are the same statements on which Mr. Taylor bases his discrimination claims, namely the comments by Mr. Nicholas, who allegedly stated on three separate occasions that because Mr. Taylor drove a luxury car, he must be selling drugs because all black people who own luxury cars are drug dealers. Such statements, if made, would constitute defamation *per se* because they impute to Mr. Taylor the commission of a criminal act, namely drug dealing. *See, e.g., Costello v. Capital Cities*

*Communications, Inc., 125 Ill. 2d 402, 532 N.E.2d 790, 795, 126 Ill. Dec. 919 (Ill. 1988).* Since [HN11] damages are presumed in cases of defamation *per se*, defendant (for the purpose of this motion only) "concedes that if publication is established with respect to any or all of the alleged statements by Nicolas, Plaintiff can state a claim of defamation per se." Looking at the evidence before me, it appears that although there were no witnesses to the first alleged statement, and publication of the third alleged statement is based solely on Mr. Taylor's speculative testimony that an unidentified [*17] white woman overheard Mr. Nicholas making the statement, there is sufficient evidence of publication with respect to the second alleged statement. Jimmy Drummer, a co-worker of Mr. Taylor, alleges in his statement that approximately two to three weeks prior to Mr. Taylor's termination, Mr. Nicholas approached Mr. Drummer and asked him who owned the BMW in the parking lot, to which Mr. Drummer responded that he believed the car was Mr. Taylor's. Mr. Drummer alleges that Mr. Nicholas then said, "how do we get a black guy affording a car like that, he must be selling drugs." This testimony raises a genuine issue of fact with regard to publication. Defendant suggests that because Mr. Drummer did not testify that he overheard Mr. Nicholas making this statement to Mr. Taylor, there was no publication. However, [HN12] a statement does not have to be made directly to the plaintiff to constitute defamation; rather, the statement must be about the plaintiff, which it is in this case. Defendant also argues that Mr. Taylor's deposition testimony rebuts the presumption of damages to his reputation. In his deposition, Mr. Taylor stated that he would have suffered damages even if he himself had

not told [*18] others about Mr. Nicholas' alleged statements. Defendant offers this testimony as Mr. Taylor's admission that his damages were not caused by publication of the statements. However, defendant only asked Mr. Taylor about his own voluntary publication to third parties, not whether any damage resulted from the involuntary publication to Mr. Drummer. Therefore, defendant's argument that this testimony rebuts the presumption of reputation damage for the defamation *per se* claim is rejected. Because the presumption of damages has not been rebutted and there exists a genuine issue of fact with respect to publication of Mr. Nicholas' second alleged statement, I am denying summary judgment for the defamation claim.

For the reasons discussed above, summary judgment is GRANTED for the racial harassment claim and the retaliation claims based on reduction of hours on the days Mr. Taylor worked subsequent to his discrimination complaint and the denial of his request for a position transfer. Summary judgment is DENIED for the discriminatory animus claim, the retaliation claims based on reduction of shifts per week and termination, and the defamation claim.

ENTER:

James B. Zagel

United States [*19] District Judge

DATE: 28 March 2002