## IN UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WINGO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 CV 368 |
| | ) | |
| vs. | ) | |
| | ) | Judge Samuel Der-Yeghiayan |
| THYSSENKRUPP MATERIALS NA, INC., | ) | |
| db/a/ COPPER and BRASS SALES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT OF FACTS

Plaintiff, ROBERT G. WINGO, pursuant to Rule 56.1(b)(3) of the Local Rules of the United States District Court for the Northern District of Illinois, in support of his Response to Plaintiff's Motion for Summary Judgment, hereby submits the following Statement of Material Facts to which it disputes each fact submitted in Defendant's Statement of Material Facts to which it contends there is a genuine issue of material fact, and submits his Additional Statement of Facts to which he contends there is no genuine issue and entitles him to judgment as a matter of law.

### Defendant's Statement of Facts

1.     This Court has subject matter jurisdiction over Plaintiff's Complaint (the "Complaint") arising under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. 621, *et seq*., pursuant to 28 U.S.C. 1331. (Compl. 2.) Copper and Brass concedes that this Court has personal jurisdiction over it in this matter. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. 1391(b)(1) and (2). (Compl ¶ 3.)

**Response:**

Plaintiff does not dispute the allegations contained in paragraph one (1).[1]

---

[1] Defendant LR 56.1(a)(3) statement fails to this District's Local Rules, as LR 56.1(a)(3) requires a moving party referencing a deposition transcript in its Statement of Facts to include page and *line* numbers citations. *See Kause v. The Alberto-Culver Company*, 1999 U.S.Dist. LEXIS 16846, at *6

2.     Copper and Brass is a processor and distributor of non-ferrous metals with a Schaumburg, Illinois warehouse facility stocking approximately 2,000 different types of such products. (Lunt Dep. at 16.)

**Response:**

Plaintiff disputes the allegations contained in paragraph two (2) as lacking in foundation, as the citations to the record do not support the statement set forth as fact in the above-referenced paragraph.[2] Defendant's citation to paragraph two (2) solely states that Copper and Brass is a metal distributor of approximately 2,000 part numbers.  Accordingly, the remainder of allegations in paragraph two (2) lack foundation in the record.

3.     Plaintiff is a former warehouse clerk at Copper and Brass's Schaumburg facility who was terminated for falsifying company documents pursuant to the Company's work rules on December 3, 2007. (Compl. ¶ 3)

**Response:**

Plaintiff disputes paragraph three (3) as being argumentative, incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph three (3) as lacking foundation and relying on impermissible inferences in favor of the moving party. Defendant correctly notes that Plaintiff was a former Warehousemen at Copper and Brass's Schaumburg facility, and that Plaintiff was terminated for falsifying company documents on December 3, 2007.  In addition to his duties as a warehouse clerk, Plaintiff performed the duties of machine operator, side loader operator, and shipping and receiving dock at the time his employment was terminated. (Ex. A -Wingo Dep. at 44:23-45:7, 287:20-288:9; Ex. C -Lunt Dep. at 15:19-24, 39:12-41:21; Ex. E -Bishop Dep. at 14:20-15:11, 28:9-15; Ex. L). Defendant's citations to the record do not support that his employment

_____

(N.D.Ill. 1999) (Attached as Exhibit A).

[2]As all material facts to Plaintiff's claim of age discrimination as alleged by Defendant in its LR 56.1 Statement of Facts are disputed, Defendant's Motion for Summary Judgment is baseless. *See Alvin George v. Am. Airlines, Inc.*, 378 F.Supp.2d 870, 872 (N.D. Ill. 2005).

was terminated "pursuant to Company's work rules." Rather, the issue of why Plaintiff was terminated is a stringently disputed issue in this case, as Plaintiff presents facts that his employment was terminated on a pretext for age discrimination, contravening Company's work rules.[3]

4.     Copper and Brass employed Plaintiff from January 1984 until his employment terminated on December 3, 2007 – when he was 54 years old – and he worked on the Company's first shift from 6:00 a.m. until 2:30 p.m. ever since his first two weeks of employment. (Compl. 4, 8, 20; Wingo Dep. at 51.)

**Response:**

Plaintiff disputes paragraph four (4) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph four (4) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff would come in at 4:00 in the morning to begin his shift. (Ex. A -Wingo Dep. at 211:7-17.)

5.     Copper and Brass's three shift times are: (a) first shift 6:00 a.m. to 2:30 p.m.; (b) second shift 2:30 p.m. to 11 p.m.; and (c) third shift 11:00 p.m. to 7:00 a.m., so the most that employees on different shifts would overlap is approximately one hour between third and first shift. (LaRocco Dep. at 44.)

**Response:**

Plaintiff disputes paragraph five (5) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph five (5) as lacking foundation and relying on impermissible inferences in favor of the moving party. Defendant's citation states, at most, that Tyler DeMien's hours on his third shift is 6:00 to 2:30, 2:30 to 11:00, 11:00 to 7:00. Nowhere in

---

[3]As evidenced by the fact that Plaintiff's Memorandum in Opposition to Summary Judgment does not rely upon a single fact from Defendant's LR 56.1 Statement of Facts, Defendant has further dispensed with its responsibility of including only undisputed facts in its LR 56.1 Statement of Facts as it has presented a self-serving presentation of alleged facts without regard to conflicting evidence in this record. *See Jeffrey Daoust v. Abbott Laboratories*, 2006 U.S.Dist.LEXIS 72064, *4,*16 (N.D.Ill. 2006) (Instead of meaningfully engaging in the summary judgment process, the defendant submitted an overview of its position, while completely disregarding the plaintiff's allegations). (Attached as Exhibit B)

Defendant's citation does it identify the shifts and times thereto at Copper and Brass's Schaumburg

Plant, or the times that employees' shifts would overlap.  Contrary to the assertions in paragraph five

(5), Plaintiff's shift would overlap with Herrera's shift, when Herrera worked the third shift, as much

as three (3) hours as Plaintiff would come in at 4:00 in the morning, and Hererra worked until 7:00.

(Ex. A -Wingo Dep. at 211:7-17.)  Further, DeMien, the supervisor of the first and third shifts, states

that the third shift lasts from 11:00 p.m. to 7:30 a.m. and the first shift typically lasts from 6:30 a.m.

to 2:30 p.m. (Ex. D -DeMien Dep. 12:21-13:20; 18:20-22.)

     6.     All hourly Schaumburg warehouse employees are represented and members of
Teamsters Local 714 ("the Union") and their employment is governed by the terms of a collective
bargaining agreement ("the CBA") and work rules. (Wingo Dep. at 18, 42; Exhibit H (Collective
Bargaining Agreement).)

     **Response:**

Plaintiff disputes paragraph six (6) as being incomplete, misleading, and misrepresenting

facts in evidence.  Plaintiff further disputes paragraph six (6) as lacking foundation and relying on

impermissible inferences in favor of the moving party.  Defendant's citations to the record do not

contain any evidence regarding whether "all hourly Schaumburg warehouse employees are

represented and members of Teamsters Local 714 ("the Union") and their employment is governed

by the terms of a collective bargaining agreement ("the CBA") and work rules."  At the most,

Defendant's citations state that Plaintiff is a member of the Union on January 5, 1984, and

represented by the nondescript "Teamsters" during his employment.  Further, Defendant has failed

to provide foundation for the admission of Exhibit H into evidence of this matter.

     7.     Plaintiff's specific work assignment for the last two years of his employment at
Copper and Brass was the rod, bar and wire ("RBW") work station, where his responsibilities
included weighing, measuring and packing various metal products for shipment to customers
according to written work orders and instructions, generating and attaching shipping labels for
delivery of the product, verifying the accuracy of the materials he was to pack by reviewing

work orders, and reading, understanding and following all work orders, entering shipment data into the Company's computerized work order/inventory system and maintaining daily production logs of work orders he completed. (Lunt Dep. at 43; Wingo Dep. at 49-50, 54-55; Exhibit I (Job Description).)

      **Response:**

Plaintiff disputes paragraph seven (7) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph seven (7) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff's responsibilities were to measure, to weigh, and to pack work orders. (Ex. A -Wingo Dep. 49:22-50:13). Plaintiff also maintained a daily production log from which Plaintiff would record information in order to enter the pieces or weight of the work order, where you would put the work order, and his name and initials. (Ex. A -Wingo Dep. 54:13-55:18). There is no foundation for asserting that Plaintiff's responsibilities were to maintain "daily production logs of work orders he completed." Instead, creating a genuine issue of material fact, the evidence in the record shows that Warehousemen, including Plaintiff, included both work orders he completed and *could not complete* in their daily production logs. (Ex. A -Wingo Dep. at  64:15-:67:7, 104:6-106:6, 187:22-188:6, 191:20-192:9, 195:15-19, 196:18-197:18, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. Q at ¶ 21-25.)

      8.     Plaintiff performed similar order-processing duties in other work areas for an additional five to seven years before moving to the RBW work station. (Wingo Dep. at 51-52.)

      **Response:**

Plaintiff disputes paragraph eight (8) as being ambiguous, incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph eight (8) as lacking foundation and relying on impermissible inferences in favor of the moving party. With respect to

the duties supported by the record and identified in paragraph seven (7) for completing production

logs, Plaintiff had been completing daily production logs in a similar manner for the past 15 years.

(Ex. A -Wingo Dep. at 294:16-24.)  There is no foundation that Plaintiff was performing the rest of

the duties attributed to him in paragraph seven (7) for the previous five (5) to seven (7) years.

9.     Other warehouse employees work as side load operators who bring materials and
product for filling customer orders to warehouse clerks (or clerks may obtain the material
themselves), but regardless of who actually brings material, warehouse clerks must perform their
job accurately. (Lunt Dep. at 44-45; Alvarez Dep. at 73-74.)
     **Response:**

Plaintiff disputes paragraph nine (9) as being incomplete, misleading, and misrepresenting

facts in evidence.  Plaintiff further disputes paragraph nine (9) as lacking foundation and relying on

impermissible inferences in favor of the moving party.  Contrary to the allegations in paragraph nine

(9), the record reflects that "the younger employees were allowed to make unlimited mistakes, and

they were never disciplined.  They were pulling me the wrong orders, I was constantly dealing with

bad orders, wrong sizes, wrong allows, wrong department, it didn't belong in my department.  They

were bringing me all these bad orders that I had no chance to succeed.  I tried to bring it to the

attention of the bosses to make them be accountable and, and there was nothing.  So they were

discriminating against me, being older, and letting the younger guys do whatever they wanted." (Ex.

A -Wingo Dep. at 239:10-240:1).  "It is the responsibility of the side loader to bring all the material

with the PK-10 with the order.  Sometimes they make the mistakes and because we don't check it,

they blame it on us.  But whoever has it first is the side loader.  The side loader is the one who is

responsible to bring us the right material to our station.  So we just process it in the computer." (Ex.

B -Alvarez Dep. at 18:18-19:16).  "It took side load operators hours to bring materials, which made

the other Warehousemen simply wait." (Ex. B -Alvarez Dep. at 19:24-20:6.)  The younger side load

operator, Tyler DeMien, was bringing Plaintiff the wrong materials three or four times a day. (Ex.

A -Wingo 178:14-14-179:22).  Lizardo Hernandez and DeMien were the side loader operators that

brought Wingo the wrong metals and pulled orders for him but were not disciplined, despite Plaintiff

complaining to Randy Lunt about their mistakes. (Ex. A -Wingo Dep. at 218:21-220:19.)  Mario

Alvarez, another Warehousemen, witnessed Wingo trying to explain to Mark DeMien the things that

were happening to him, and M. DeMien, Plaintiff's foremen, just laughed and did not care about it.

(Ex. B -Alvarez Dep. at 25:14-16.)

> 10.    Randy Lunt ("Lunt"), who was 54 years old at the time of Plaintiff's termination,
> has been Schaumburg's plant manager since approximately 2001. (Lunt Dep. at 11, 14-15.)
> **Response:**

Plaintiff disputes paragraph ten (10) as being incomplete, misleading, and misrepresenting

facts in evidence.  Plaintiff further disputes paragraph ten (10) as lacking foundation and relying on

impermissible inferences in favor of the moving party.  Defendant's citations to the record state that

Lunt was the Plant Manager, who was responsible for disciplinary action, training, hiring, and firing

of the Warehousemen at Defendant's Schaumburg, IL Plant.[4] (Lunt Dep. at 14:23:15:24.)

> 11.    Mark DeMien ("M. DeMien"), who was almost 46 years old at the time of
> Plaintiff's termination, has been a foreman at Schaumburg since 2003 and directly supervised
> Plaintiff from at least September 2004 until Plaintiff's termination. (M. DeMien Dep. at 7, 11.)
> **Response:**

Plaintiff disputes paragraph eleven (11) as being incomplete, misleading, and misrepresenting

---

[4]Due to the incomplete statements and misleading misrepresentations littered throughout
Defendant's LR 56.1(a)(3) Statement of Facts, Plaintiff is compelled to present additional facts in his
Responses. *See  A. Robert McKay v. Town and Country Cadillac, Inc.*, 2002 U.S.Dist.LEXIS 2357, *9-13
(N.D.Ill. 2002)(A party may respond cite additional facts as a denial to the "unstated factual implications
that one might glean from the materials" cited in support of the other party's statement of facts)(Attached
as Exhibit C.)

facts in evidence.  Plaintiff further disputes paragraph eleven (11) as lacking foundation and relying

on impermissible inferences in favor of the moving party.  Defendant's citations to the record only

establish, DeMien's age, 46, that DeMien has been Plant Supervisor since 2003, that DeMien

supervises the employees on the first and third shifts, and that DeMien's supervisory responsibilities

are to supervise plant production, order filing for customer work orders, and the safety of the

employees.  (Ex. D -DeMien Dep. at 12:21-13:20.).

    12.    Pete LaRocco ("LaRocco"), who was 48 years old at the time of Plaintiff's
termination, is a lead machine operator at Schaumburg and serves as its union steward.
(LaRocco Dep. at 8, 10.)
    **Response:**

    Plaintiff disputes paragraph twelve (12) as vague and ambiguous.  Defendant fails to identify

"its" with respect to whom is referenced by "its union steward."  Without a proper identifying

subject, Plaintiff cannot dispute or accept the allegations of whom LaRocco represents as a union

steward.

    13.    Patrick Bishop ("Bishop") is a warehouse clerk working in Schaumburg's
receiving department who previously worked in the Company's RBW station and was 30 years
old at the time of Plaintiff's termination. (Bishop Dep. at 10, 13-14.)
    **Response:**

    Plaintiff disputes paragraph thirteen (13) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph thirteen (13) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  Defendant's

citations to the record only support, as identified by Bishop, that Bishop was a Warehouseman, not

warehouse clerk. (Ex. E -Bishop Dep. at 12:20-22; 13:24-15:6.)

    14.    Tyler DeMien ("T. DeMien") is a former side load operator on the third shift at
Schaumburg, who was 22 years old at the time of Plaintiff's termination, and was himself
terminated on June 24, 2008, for attendance issues. (M. DeMien Dep. at 18-19; Exhibit J ¶¶ 21,

31 (Lunt Aff.).)

**Response:**

Plaintiff disputes paragraph fourteen (14) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph fourteen (14) as lacking foundation and relying on impermissible inferences in favor of the moving party. Paragraph fourteen (14) relies upon an affidavit that contains solely conclusory allegations with no evidentiary support and contradicting earlier deposition testimony, and thus, lacking foundation and credibility. The testimony of M. DeMien, who admits to being unsure of time frames regarding T. DeMien's employment. (Ex. D -DeMien Dep. at 18:16-18.)[5] Mark DeMien's supervised Tyler DeMien, which violated Defendant's policy that relatives not supervise each other. (Ex. C -Lunt Dep. at 105:16-106:4.).

15.     Eluterio (Al) Herrera ("Herrera") is a warehouse clerk on the third shift at Schaumburg and was 43 years old at the time of Plaintiff's termination. (Lunt Dep. at 115; Wingo Dep. at 211; Ex J ¶ 22.)

**Response:**

Plaintiff disputes paragraph fifteen (15) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph fifteen (15) as lacking foundation and relying on impermissible inferences in favor of the moving party. However, due to the allegations made by Defendant in its Memorandum of Law in Support of its Motion for Summary Judgment, Herrera and Plaintiff were subject to the same supervisors, Lunt and M. DeMien, and had the same responsibilities, were subject to the same standards of conduct, and worked alongside one another.

---

[5]Defendant's use of Lunt's later affidavit to supplement his deposition testimony, raises credibility concerns about Lunt's testimony. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 406-407 (7th Cir. 2008); *See also Laborer's Pension Fund v. RES Envtl. Servs*, 377 F.3d 735, 739 (7th Cir. 2004) (finding conclusory allegations in a summary judgment ineffective on summary judgment.)

(Ex. C -Lunt Dep. at 112:2-21; Ex. J; Ex. A -Wingo Dep. at 211:7-17; Def. Statement of Facts ¶ 6; Ex. D -DeMien Dep. at 12:21-13:20.).

16.    Mario Alvarez ("Alvarez") is a former warehouse clerk who worked on the second shift at Schaumburg and was 47 years old at the time of Plaintiff's termination. (Alvarez Dep. at 8, 10-12.)

**Response:**

Plaintiff disputes paragraph sixteen (16) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph sixteen (16) as lacking foundation and relying on impermissible inferences in favor of the moving party. Defendant's citations fail to establish that Alvarez was a warehouse clerk on the second shift at Schaumburg at the time of Plaintiff's termination. Defendant's citations do establish that Alvarez, like Plaintiff, worked as a Warehouseman on the first shift under the supervision of Mark DeMien. (Ex. D -Alvarez Dep. at 10:24-11:18.)

17.    Isidro Garcia ("Garcia") is a warehouse clerk who works on the second shift at Schaumburg and was 52 years old at the time of Plaintiff's termination. (Wingo Dep. at 215; Ex. J ¶ 23.)

**Response:**

Plaintiff disputes the contentions in paragraph seventeen (17) as ambiguous, lacking foundation, lacking relevance, and relying on impermissible inferences in favor of the moving party.

18.    Lizardo Hernandez ("Hernandez") works as a side load operator on the first shift at Schaumburg was being and was 35 years old at the time of Plaintiff's termination. (Wingo Dep. at 218; Ex. J ¶ 24.)

**Response:**

Plaintiff does not dispute paragraph eighteen (18). Plaintiff notes that, within Defendant's citation, Plaintiff identified Hernandez as a Warehouseman, working with him, who was treated more favorably than Plaintiff, as he was making work order errors, but was never disciplined for

them. (Ex. A -Wingo Dep. at 48:7-11, 133:13-22;150:18-151:1, 218:14-220:19,  223:5-15; Ex. B

-Alvarez Dep. at 40:4-13, 42:13-43:19; Ex. C -Lunt at 20:17-22, 105:16-106:4; Ex. F -LaRocca Dep.

at 43:13-24, 105:8-106:4; Ex. K.).

19.    Ray Cather ("Cather") works as a warehouse clerk at Schaumburg and was 27
years old at the time of Plaintiff's termination. (Wingo Dep. at 222-23; Ex. J ¶ 25.)
    **Response:**

Plaintiff does not dispute paragraph eighteen (18).  Plaintiff notes that ,within Defendant's

citation, Plaintiff identified Hernandez as a Warehouseman, working with him, who was treated

more favorably than Plaintiff, as he was allowed to waste company time and sleep on his shift, but

was never disciplined for his conduct. (Wingo Dep. 222:18-225:22);

20.    At the time of Plaintiff's termination, there were a total of thirty-nine hourly
employees at Schaumburg; seventeen of the employees were between the ages of 40 and 49
years, four of the employees (not including Plaintiff) were between the ages of 50 and 59 years,
and two employees were over age 60 years; so a total of twenty-three employees (not including
Plaintiff) were over age 40 years. Today, twenty-three of thirty-four employees are over age 40.
(Ex. J ¶¶ 18-19.)
    **Response:**

Plaintiff disputes paragraph twenty (20) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph twenty (20) as lacking

foundation, lacking relevance, and relying on impermissible inferences in favor of the moving party.

Defendant cites an affidavit containing conclusory allegations with no evidentiary support and

lacking in foundation from the record; accordingly, allegations from Exhibit J should be disregarded

from the consideration on Defendant's Motion for Summary Judgment.


21.    The duties of warehouse clerks, including Plaintiff, require reviewing work orders
from Copper and Brass customers, entering corresponding data into the Company's computer
system, verifying weight and piece-count of customer orders, confirming that the product

matches what the customer ordered prior to it being packed for shipping, and then packing orders. (Lunt Dep. at 43; Wingo Dep. at 54-56, 154.)

**Response:**

Plaintiff disputes paragraph twenty-one (21) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-one (21) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff's responsibilities were to measure, to weigh, and to pack work orders. (Wingo Dep. 49:22-50:13). Plaintiff also maintained a daily production log from which Plaintiff would record information in order to enter the pieces or weight of the work order, where you would put the work order, and his name and initials. (Ex. A -Wingo Dep. 54:13-55:18). It is the responsibility of Plant Supervisors, Quality Reps, Material Control Supervisors to check work orders for accuracy. Specifically, the the Material Control Supervisor, Mark Pucalik checks them almost daily. (Ex. D -DeMein Dep. at 39:19-40:15).

22.     It is important that warehouse clerks accurately enter the information in the Company's computer for purposes of inventory and billing. (Wingo Dep. at 57, 63; Ex. I.)

**Response:**

Plaintiff disputes paragraph twenty-two (22) as being vague, ambiguous, incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-two (22) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff disputes paragraph 22 on the basis that the allegations contained therein have no supporting information describing what "information" or what "Company's computer" is referenced, so as to provide refuting evidence.

23.     M. DeMien counseled Plaintiff on more than one occasion about the need to accurately and reliably enter data into Copper and Brass computers. (Wingo Dep. at 142-43.)

**Response:**

12

Plaintiff disputes paragraph twenty-three (23) as being inflammatory, incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-three (23) as lacking foundation and relying on impermissible inferences in favor of the moving party.. There is no evidence cited by Defendant that M. DeMien counseled Plaintiff on more than one occasion about the need to accurately and reliably enter data into Coppar and Brass Computers. Rather, the record, as cited by Defendant, only reflect that M. DeMien and Plaintiff had discussions about the importance of accurately and reliably doing the PK10 process. (Ex. A - Wingo Dep. at 142:23-143:2.) Clearly, having discussions and being counseled are highly distinguishable and should not be attributed to one another, as Defendant wrongfully attempts to do in paragraph 23.

24.    The economic downturn in the fall of 2007 led to an even greater concern about careful customer service and accurately processing customer orders. (Wingo Dep. at 64.)
    **Response:**

Plaintiff disputes paragraph twenty-four (24) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-four (24) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff testified that accuracy of processing orders was always an issue, not simply from the fall of 2007 onward. (Ex. A - Wingo Dep. at 64:7-12.) Contrary to the allegation that it was a greater concern, supervisors at the Schaumburg Plant would allow Warehousemen to make a lot of mistakes repetitively before disciplining them. (Ex. F - LaRocco Dep. at 27:1-8.) Numerous People made repetitive mistakes. (Ex. F - LaRocco Dep. at 1-15.) Mistakes were committed regularly by Warehousemen at the Schaumburg Plant. (Ex. B - Alvarez Dep. at 38:21-39:1.) Mark Pucalick, Defendant's Material Control Supervisor, who is responsible for checking Warehousemen's work orders almost daily for accuracy, concluded that he has "observed just about every warehouseman working and Mr. Wingo

13

performed his job duties in a similar manner as other warehouseman." ( Ex. D -DeMien Dep. at 39:14-40:3; Ex. G -Pucalik Dep. at 21:5-17).

     25.    Completing paperwork correctly was an "essential function" of Plaintiff's job as a warehouse clerk, and it was mostly new employees who received discipline for repetitive errors on work orders. (Wingo Dep. at 340; LaRocco Dep. at 27.)

     **Response:**

     Plaintiff disputes paragraph twenty-five (25) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph sixteen (25) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff testifed that paperwork is only part of the order, which includes a physical component, too. (Ex. A -Wingo Dep. at 339:20-340-5). LaRocco further testifed that a lot of people received discipline for repetitive work order mistakes. (Ex. F -LaRocco Dep. at 27:9-24.)

     26. Certain job positions within the warehouseman classification require that they maintain and complete daily production logs, which provide details about the name of the employee performing the work, shift, date, work station and the work orders filled, including work order number, number of pieces, weight, any applicable comments and the time a work order was completed, Plaintiff completed such paperwork for ten to fifteen years as a part of his warehouse clerk duties, and he admits that it was important to complete them accurately. (Lunt Dep. at 57-58; Wingo Dep. at 64, 67, 182, 294; Ex. J ¶ 13; Exhibit K (Daily Production Log Policy).)

     **Response:**

     Plaintiff disputes paragraph twenty-six (26) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-six (26) as lacking foundation and relying on impermissible inferences in favor of the moving party. There is no foundation for Exhibit K. Further, there is no evidence that Warehousemen were trained in Exhibit K. The testimony in the record states, "on Daily production logs, you would put in the work order number, the pieces and weight. If the orders were bent metal, or sometimes you weren't able to

complete an order because the work order was not shippable you would write notes to that effect to show that the order was not finished, so the next shift could complete it." Moreover, incomplete work orders were commonly included in a Warehousemen's daily production log, and Lunt expected Warehousemen to include all the work that Warehousemen performed in their daily production. Further, Plaintiff received instruction on how to fill out the daily production logs from Lunt or his foreman. Randy Lunt told Plaintiff to try and get a general time of when Plaintiff began filling out his production logs.(Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 187:22-188:6, 191:20-192:9, 195:15-19, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. Q at ¶ 21-25.)

27. Daily production logs are "self-explanatory," and plant postings detail how to complete the logs. Additionally, every one to two years, warehousemen receive a review of the information that must be noted on the daily production logs, and meetings have been conducted to train employees and provide refreshers on how to properly complete them, which includes instruction that employees are to write down completed work orders only. (Lunt Dep. at 87-88; LaRocco Dep. at 61; M. DeMien Dep. at 50-51; Bishop Dep. at 27-28.)

**Response:**

Plaintiff disputes paragraph twenty-seven (27) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-seven (27) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff received instruction on how to fill out the daily production logs from Lunt or his foreman. (Ex. A -Wingo 191:20-192:9.) Randy Lunt told Plaintiff to try and get a general time of when Plaintiff began filling out his production logs. (Ex. A -Wingo Dep. at 325:1-10). Alvarez testified, "[t]he timing that you do and how you do it on your daily production logs, is how you feel comfortable how you do your orders. Everybody has a different system." (Ex. B -Alvarez Dep. at 83:21-23). Plaintiff was

instructed to document the partial orders that went through. (Ex. A -Wingo Dep. at 299:6-18).

Plaintiff testified, "[w]ehousemen included incomplete and completed work orders in his production

log. Mainly most of them that you put down there are completed. Later in the day you may get some

projects that go uncompleted or that get canceled. Some times the orders get cancelled before you

can finish them or right after you finish them."(Ex. A -Wingo Dep. at 296:1-7). Plaintiff further

testified, "[o]n production logs, you would put in the work order number, the pieces and weight. If

the orders were bent metal, or sometimes you weren't able to complete an order because it was not

shippable you would write notes to that effect to show that the order was not finished, so the next

shift could complete it. (Ex. A -Wingo Dep. at 64:15-:66:16). Contrary to the training alleged in

paragraph 27, Alvarez, a Warehousemen, described his training as: "in the beginning when I started

working there, the other guy showed me a week. And after that I did it myself. Confirming what

other people were doing, I was doing it too. They, you know what, they showed us everything about

all the safety and all that stuff, but they never came out with how we suppose to do this." (Ex. B

-Alvarez 27:15-22). With respect to the customary procedure in maintaining daily production logs,

Alvarez testified: "It is always the way it was done that Wingo would write down, what he had

completed on any work order for Alvarez to know what to finish, then Alvarez would write it down

also on his shift, the same work order, the pieces and the pounds and where they are going and the

time I finish." (Ex. B -Alvarez Dep. at 29:16-30:7). Alvarez included incomplete work orders in his

production log for his six years and nobody said anything. (Ex. A -Wingo Dep. at 64:15-:67:7,

104:6-106:6, 187:22-188:6, 191:20-192:9, 195:15-19, 238:6-19, 275:23-10, 294:16-24, 295:16-

296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7,

31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. Q at ¶ 21-25.)

28.     If an employee is in the middle of a work order at the end of a shift, they must either stay and inform the next shift or write down notes on their daily production log. In either case an employee must note on their daily production log that they did not complete the order. (LaRocco Dep. at 44-46.)

**Response:**

Plaintiff disputes paragraph twenty-eight (28) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph twenty-eight (28) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff testified, "[y]ou would tell the guy on the next shift by a note or verbally if you could that the order is incomplete so they could finish it, but the process to do so was never the same." (Ex. A -Wingo 66:19-67:7). Contrary to the allegations in paragraph twenty-eight (28) as cited by Defendant, LaRocco testifed that "there is not really a procedure." (Ex. F -LaRocco Dep. at 45:1-7). With respect to Plaintiff's November 28, 2007, which Defendant alleges Plaintiff took credit for work he did not complete and terminated him thereupon, Alvarez testified, "[i]t is always the way it was done that Wingo would write down, what he had completed on any work order for Alvarez to know what to finish, then Alvarez would write it down also on his shift, the same work order, the pieces and the pounds and where they are going and the time I finish." (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 187:22-188:6, 191:20-192:9, 195:15-19, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. Q at ¶ 21-25.)

29.     Copper and Brass work rules ("the Work Rules"), enacted pursuant to the CBA, establish a progressive discipline policy for certain categories of infractions and certain specified major offenses are subject to immediate termination. The work rules further specify that, while progressive discipline may be followed, the severity of the violation and the employee's past work rule violations may influence management's action. (Lunt Dep. at 35-36, 38-39; Ex. H; Ex. J ¶ 3; Exhibit L at 2 (Copper and Brass Work Rules).)

**Response:**

Plaintiff disputes paragraph twenty-nine (29) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph twenty-nine (29) as lacking foundation and relying on impermissible inferences in favor of the moving party. There is no foundation for Exhibit H.  Further, Defendant contorts the language of Exhibit L (Copper and Brass Work Rules), by stating, "while progressive discipline may be followed." Exhibit L's express language state  "when possible, the 4 step progressive disciplinary process will be followed." Defendant's misquote of its rules is a inflammatory to mislead the Court.

30.    Pursuant to the Work Rules, warehouse employees, including Plaintiff, are subject to discipline for repetitive errors (administrative or otherwise) in properly filling work orders, and subject to discharge for the fourth violation of that rule. (Wingo Dep. at 134; Ex. L at 1, 3.)
**Response:**

Plaintiff disputes paragraph thirty (30) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph thirty (30) as lacking foundation and relying on impermissible inferences in favor of the moving party.  The progressive discipline policy relied upon by Defendant for paragraph 30 does not provide for discharge for repetitive errors; rather, a three (3) day suspension is the most severe form of discipline for repetitive work order errors. (Ex. L.) Further, LaRocco, the union steward, described the progressive discipline policy as "very lenient. I mean, you have to make the same mistakes over and over.  Unless, you know, like a one-month span, if you make six (6) mistakes, you are going to get disciplined... I am just saying you really need to make the same mistake over." (Ex. F -LaRocco Dep. at 26:10-27:8.)  Discipline for work order errors varied at Defendant's Schaumburg Plant as supervisors would handle it differently as far as whether to do a verbal, a sit-down, letter of counsel, or sometimes just a blurb in the Warehouseman's training file to go over and make sure that the employee understood what he did

wrong and how to correct that situation. (Ex. C -Lunt Dep. at 115:8-15, Ex. A -Wingo Dep. at 297:9-18.)

31.    The Work Rules provide that employees may be terminated for their first offense of falsifying Copper and Brass documents or records. Misrepresenting the status of work orders on an employee's daily production log constitutes falsifying company documents or records. (Lunt Dep. at 38-39; Wingo Dep. at 134, 190; M. DeMien Dep. at 28; Bishop Dep. at 57; Ex. L at 8.)

**Response:**

Plaintiff disputes paragraph thirty-one (31) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph sixteen (31) as lacking foundation and relying on impermissible inferences in favor of the moving party.   Lunt informed Plaintiff that "falsifying company documents" was taking credit for the work he did not do. (Ex. A -Wingo Dep at 205:4-206:24.)  DeMien believed that falsifying company documents was "writing untrue figures on company documents." (Ex. D -DeMien Dep at 28:16-19.) Bishop testified that Defendant never made him aware of what the company's definition of "falsifying company records." (Ex. E -Bishop Dep. at 57:21-24).

32.    Plaintiff admits that providing false or misleading information and misrepresenting the status of work on daily production logs subjects an employee to discipline. (Wingo Dep. at 190-91.)

**Response:**

Plaintiff disputes paragraph thirty-two (32) as being irrelevant, incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph thirty-two (32) as lacking foundation and relying on impermissible inferences in favor of the moving party. Defendant's citation states, at the most, that Plaintiff agrees that he would be subject  to discipline for misrepresenting things in the daily production log. (Ex. A -Wingo Dep. at 190:6-9.)  Nothing in the record suggests, as alleged by Defendant here, that "Plaintiff admits that providing misleading

information subjects an employee to discipline." Defendant's insertion of "misleading" is highly

inflammatory as "misleading" suggests a level of precision is required, while "misrepresenting,"

which is in the record, is an outright falsehood, and distinguishable from "misleading." Plaintiff

further denies that he provided any false or misleading information, or misrepresenting the status of

work on his daily production logs. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 187:22-188:6,

191:20-192:9, 195:15-19, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18,

300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2,

56:4-7, 67:4-6, 83:21-23, 84:1-18;  Ex. Q at ¶ 21-25.)..

33.    From 1995 through 2006, Plaintiff was disciplined on at least fifteen occasions;

two of which involved suspension and nine of which were for work order errors (the remainder

were for unacceptable performance, slowing down production, taking company property without

permission,[6] and failure to wear safety glasses):

Date Discipline (repetitive work order errors in **bold**)

5/11/95 Written warning, unacceptable performance
1/29/99 One-day suspension for lack of production
**5/28/99 Letter of counsel, failure to follow order procedures**
**6/15/99 Oral warning, repetitive work order errors**
7/16/99 One-day suspension for failure to stop, wasting time
**1/10/01 Oral warning, incorrect labeling of work orders**
**2/12/01 Written warning, failure to follow order procedures**
11/7/01 Letter of counsel, failure to wear safety goggles
**10/1/02 Oral warning, repetitive work order errors**
**9/12/[no year] Oral warning, repetitive work order errors**
**9/22/03 Written warning, repetitive work order errors**
**9/22/04 Written warning, incorrect labeling of work orders**
**5/11/05 Oral warning, repetitive work order errors**

---

[6] On March 28, 2006, M. DeMien issued Plaintiff a written warning for failure to perform a task, which could have been deemed removal of company property without the proper written permission and subject to immediate termination. (Wingo Dep. at 136-37.) At the time of that occurrence Plaintiff was 52 years old.

12/1/05 Written warning, slowing down production
3/28/06 Written warning, failure to perform task – did not request permission
(Wingo Dep. at 85, 88, 106, 108-12, 117-18, 127, 129, 131, 135, 137-39, 228-29; Exhibit M

(Pl.'s Pre-2007 Disciplinary Records).)

**Response:**

Plaintiff disputes paragraph 33 on the basis of foundation and relevance.  Defendant

terminated Plaintiff's employment on the basis of "falsifying company documents," not repetitive

work errors, nor did Defendant support its decision to terminate Plaintiff's employment on the basis

of "repetitive work errors", and accordingly, is irrelevant to Plaintiff's claim of age discrimination

in terminating his employment. (Wingo Dep. at 205:4-206:24.)  Further, work order errors were a

frequent occurrence at the Schaumburg Plant, and Warehousemen regularly committed work order

errors.  Plaintiff processed work orders in substantially the same manner as every other

Warehousemen at the Schaumburg Plant.  (Ex. A -Wingo Dep. at 264:13-21, 269:9-15, 297:9-18;

Ex. B -Alvarez Dep. at 38:21-39:1; Ex. D -DeMien Dep. at 39:14-40:3; Ex. G -Pucalik Dep. at 21:5-

17.)  Defendant's allegations in footnote six (6) are further without merit, as there is no allegation

that Plaintiff engaged in any disciplinary conduct. (Ex. A -Wingo Dep. at 137:1-24.)

34.    Plaintiff knew he could file grievances under the CBA to challenge disciplinary
actions by the Company and other conduct that violated the CBA's non-discrimination provision
but never filed any grievances challenging any of his discipline before being terminated. (Wingo
Dep. at 161, 228-29; Exhibit N (Pl.'s Termination Grievance).)
**Response:**

Plaintiff disputes paragraph 34 on the basis of relevance and lack of foundation.

35.    On June 22, 2007, Lunt issued Plaintiff a verbal warning for repetitive work order
errors, which Plaintiff never grieved under the CBA. (Wingo Dep. at 140; Exhibit O (Pl.'s Jun.
22, 2007 Discipline).)
**Response:**

Plaintiff disputes paragraph 35 on the basis of relevance, lack of foundation, and relying on

an incomplete document.  Exhibit O is only one (1) page of a multi-page document, and is, thus,

inadmissible as an incomplete document.  Fed R. Evid. 106.  At the time that Lunt issued Plaintiff

this verbal warning, there was a recent change of policy for key punching work orders, and Plaintiff

was getting used to the new system. (Wingo Dep. at 140:5-10.).

36.    In August, 2007, M. DeMien issued letters of counsel for wasting time and talking
on the job to Plaintiff and Pat Bishop, who was 30 years old. After Plaintiff complained that he
felt the counseling was unfair, Lunt investigated the situation and concluded that M. DeMien
acted appropriately. Plaintiff never grieved this discipline under the CBA. (Lunt Dep. at 48-53;
Wingo Dep. at 330; Bishop Dep. at 10.)
    **Response:**

Plaintiff disputes paragraph 36 on the basis of foundation.  Plaintiff made a verbal grievance

of DeMien's abuse of Plaintiff. (Ex. A -Wingo Dep. at 25:16-26:6.)  DeMien swore at Plaintiff in

front of the other Warehousemen when he stated "what the fuck are you doing?" Then, he told

Plaintiff get to "fucking work," "are you gong to fucking do anything today," and "fuck you, I'll do

anything I want" before walking away. (Ex. H; Ex. A -Wingo Dep. at 258:2-260:21; Ex. E -Bishop

Dep. at 44:14-21.) Plaintiff's account of the abuse he received from M. DeMien was corroborate by

Bishop, who heard DeMien yelling at him, cussing at him. (Ex. E -Bishop Dep. at 34:15-36:13).

37.    On October 4, 2007, Plaintiff was issued a written warning by M. DeMien for
repetitive errors in properly filling work orders after improperly labeling shipments which caused
missed and late customer deliveries. Plaintiff never grieved the discipline under the CBA.
Plaintiff does not claim that the discipline was issued because of his age and admits that he made
the mistake which resulted in the discipline. (Wingo Dep. at 145-46; Exhibit P (Pl.'s Oct. 4,
2007 Discipline.)
    **Response:**

Plaintiff disputes paragraph thirty-seven (37) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph thirty-seven (37) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  Plaintiff argues

that the October 4, 3007 issuance of a written warning is supportive of his claim of age

discrimination as the discipline as Hernandez, 43 years old, engaged in the identical conduct but was

issued only an oral warning, a lesser form of discipline.  Plaintiff further notes that Exhibit P

references a June 22, 2007 oral warning, but Hernandez was issued a more recent July 10, 2007

disciplinary action.(Ex. A -Wingo Dep. at 143:13-145:6; Ex. C -Lunt Dep. at 20:17-22, 111:21-

113:11; Def. Mem. Ex. Q; Ex. J; Ex. K.)

38.     On October 10, 2007, Plaintiff was issued a one-day suspension by M. DeMien
for repetitive work order errors and not properly filling work orders after he admittedly allowed
the wrong product to be shipped to the customer, but never filed a grievance under the CBA
contesting that discipline. Plaintiff admits his duties included reviewing work orders before he
packs them and that he should have caught the mistake before allowing it to be shipped to the
customer. (Lunt Dep. at 99; Wingo Dep. at 146-50, 154; Exhibit Q (Pl.'s Oct. 10, 2007
Discipline).)
         **Response:**

Plaintiff disputes paragraph thirty-eight (38) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph thirty-eight (38) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  There is no

evidence in the record that Plaintiff "admittedly allowed the wrong product to be shipped to the

customer."  Rather, Plaintiff testified that "it shouldn't come to my area.  It was a cut order that

should have went to a whole other area.  The operator, Tyler DeMien, a younger operator, made the

mistake, and was not disciplined but Plaintiff was disciplined for the same conduct with respect to

the work order error. Wingo was not responsible for cutting the material on October 10, 2007. (Ex.

A -Wingo Dep. at  104:12-106:6, 149:10-151:1, 178:14-14-179:22; Ex. C -Lunt Dep. at 20:17-22,

101:4-7, 104:6-110:1; Ex. I; Ex. Q at ¶ 13; Ex. K.)

39.    On November 8, 2007, Plaintiff was suspended for three days by Lunt for repetitive key punch errors, which he never grieved under the CBA. Plaintiff does not dispute making the error or claim that he was suspended because of his age. (Wingo Dep. at 155-59, 161, 178; Exhibit R (Pl.'s Nov. 8, 2007 Discipline).)

**Response:**

Plaintiff disputes paragraph thirty-nine (39) as being incomplete, misleading, and

misrepresenting facts in evidence. Plaintiff further disputes paragraph thirty-nine (39) as lacking

foundation and relying on impermissible inferences in favor of the moving party. Plaintiff testifed

that he did everything right with respect to the key punch error he was disciplined by Lunt on

November 8, 2007. (Ex. A -Wingo Dep. at 104:6-106:6,158:15-159:6, 257:17-258:9; Ex. H; Ex. Q

at  ¶ 15-17.)

40.    On November 14, 2007, after returning to work from his suspension, Lunt and M. DeMien met with Plaintiff and discussed the importance of reading, understanding and following all work orders, the need to key punch all work orders correctly, offered him assistance, counseled him about his lack of production, and issued him a memo concerning their meeting, after which Plaintiff filed no grievance. (Wingo Dep. at 162-65, 167, 171-72; Exhibit S (Pl.'s Nov. 19, 2007 Discipline).)

**Response:**

Plaintiff disputes the allegations in paragraph 40 as lacking foundation. There is no evidence

in the record that the November 14, 2007 memo was justified, was a disciplinary action or the

product of any wrongdoing of Plaintiff. Rather, Plaintiff testified that Lunt and DeMien's discussion

with Plaintiff was another attempt by them to hold Plaintiff to another standard that other

Warehousemen were not being held, and hold Plaintiff accountable for the mistakes of other

substantially younger Warehousemen's mistakes. (Wingo Dep. at 164:8-165:8).

41.    On November 30, 2007, Lunt appropriately counseled Plaintiff after he admittedly failed to follow the instruction on a work order which required Plaintiff to repack the order. Plaintiff never grieved the counseling. Plaintiff admits that Lunt acted appropriately and Lunt was not discriminating against Plaintiff on the basis of his age when counseling and issuing the memo. (Wingo Dep. at 173-74, 176-77; Exhibit T (Pl.'s Nov. 30, 2007 Discipline).)

**Response:**

Plaintiff disputes paragraph 41 as lacking foundation. There is no evidence in the record that Exhibit T was a disciplinary action. Further, Plaintiff did state that November 30, 2007 memo was given to him as possibly as a means of discrimination against him on the basis of his age, as the alleged mistakes identified in Exhibit T, were also, a lot of times, the fault of other people too. Plaintiff further testified that he was trying to fill the order accurately, and give the customer what it ordered. (Wingo Dep. at 174:17-175:23.)

42.    Sometime in November or December 2007, Plaintiff rejected Lunt's offer to reassign him to the helper position. (Wingo Dep at 72-73; Ex. J ¶ 10.)

**Response:**

Plaintiff disputes paragraph forty-two (42) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff rejected Lunt's offer to reassign him to a general warehouse helper position because it was a loss in pay. (Wingo Dep. at 73:4-12.)


43.    On a daily basis at the end of his shift, M. DeMien enters work production data onto a computer spreadsheet for which he relies on his shift's warehousemen's daily production logs and also conducts daily and/or weekly random checks of the accuracy of the data written on the logs. (M. DeMien Dep. at 33-35.)

**Response:**

Plaintiff disputes paragraph 43 as misrepresenting facts in evidence and lacking foundation. There is no evidence in the record that M. DeMien "relies" on his shifts' warehousemen's daily production logs. Further, DeMien reviews all of the daily production logs of his shift's warehousemen before entering them into a computer spreadsheet, including Plaintiff's daily production logs he submitted for the past 5 ½ years for which he never had previous issues regarding their accuracy, despite Plaintiff doing them in the same manner for the past 15 years. (M. DeMien

Dep at 12:19-13:20; 33:24-35:18; Wingo Dep. at 298:23-299:5, 294:20-24, 296:13-17,; Alvarez

Dep. at 96:23-97:22.)

44.    As part of his checking daily production logs for November 29, 2007, M. DeMien
discovered that Plaintiff's November 28 and 29, 2007 logs improperly took credit for packing
orders that were packed by other employees on other shifts. Warehouse clerks are only
permitted to take credit for orders that they actually complete themselves and Plaintiff admits
that he would not want to take credit for work he did not do. (Lunt Dep. at 62, 80, 90; Wingo
Dep. at 192; M. DeMien Dep. at 44-45, 51-52.)

**Response:**

Plaintiff disputes paragraph forty-four (44) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph forty-four (44) as lacking

foundation and relying on impermissible inferences in favor of the moving party. Plaintiff entries

on November 28 and 29, 2007 logs accurately reflect the work that he performed on those shifts. (Ex.

A -Wingo Dep. at 197:1-198:23, 237:6-239:5.)  Plaintiff's entries on his November 28 and 29, 2007

logs are the way that Warehousemen always complete their daily production logs, and are not

improper.  (Ex. B -Alvarez 29:3-30:7, 31:3-34:2, 67:4-6, 83:21-23, 84:24-85:12.)    In the

Schaumburg Plant, Warehousemen  include in their daily production logs, the work order number,

the pieces and weight, and a general time to when the Warehouseman began processing the work

order.  Depending on their comfort level, every Warehousemen uses a different system for recording

the times that they spent processing work orders on their daily production logs. Warehousemen

customarily include incomplete work orders in their daily production logs for such reasons as being

provided a defective metal, or if the Warehousemen's shift ended in the middle of processing the

order.  If an incomplete work order is included in their daily production log, Warehousemen would

write notes to that effect to show that the work order was not finished, so the next shift could

complete processing the work order. Significantly, Plaintiff's November 28, 2007 daily production

log notes that he had to complete another Warehousemen's work order, which the Warehousemen

left incomplete for Plaintiff to finish. (Ex. A -Wingo Dep. at  64:15-:67:7, 104:6-106:6; 187:22-

188:6, 191:20-192:9, 195:15-19, 196:18-197:18, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24,

295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22,

29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. Q at ¶ 21-25.)

45.    After M. DeMien brought his findings to Lunt, they reviewed a random sample of
Plaintiff's daily production logs for November 2007, and discovered that Plaintiff's logs for
November 15, 19, 20, 28 and 29, 2007 listed work orders that he did not complete and failed to
indicate that those orders were incomplete at the end of his shift. (Lunt Dep. at 79-80; Wingo
Dep. at 184-87, 194, 238; Exhibit U (Selected November 2007 Daily Production Logs).)
    **Response:**

Plaintiff disputes paragraph forty-five (45) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph forty-five (45) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  The comments and

times listed in Plaintiff's daily production logs indicate which work orders were not completed by

Plaintiff and which work orders were completed by Plaintiff. (Ex. A -Wingo Dep. at  64:15-:67:7,

104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10,

294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at

27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex. Q at ¶ 21-25.)

46.    Lunt and M. DeMien confirmed that Plaintiff misrepresented the items on his
November 28 and 29, 2007 daily production logs because the documents listed piece counts, weight
and completion times for work orders, but computer data indicated that other employees
actually packed those orders. M. DeMien then placed the initials of the other employees who
actually completed the work orders on copies of Plaintiff's daily production logs, those versions
are referred to as the Annotated November 2007 Daily Production Logs and they are Exhibit V.
(Lunt Dep. at 82-91; M. DeMien Dep. at 44-45; Exhibit V (Annotated November 2007 Daily
Production Logs).)
    **Response:**

Plaintiff disputes paragraph forty-six (46) as being incomplete, misleading, and misrepresenting facts in paragraph forty-six (46) as lacking foundation and relying on impermissible inferences in favor of the moving party. Defendant has not produced any admissible evidence regarding that the work orders, as alleged by Defendant, were completed by other Warehousemen. Plaintiff received instruction on how to fill out the daily production logs from Lunt or his foreman. (Ex. A -Wingo Dep. at 191:20-192:9.) Randy Lunt told Plaintiff to try and get a general time of when Plaintiff began filling out his production logs. (Ex. A -Wingo Dep. at 325:1-10). The timing that you do and how you do it, is how you feel comfortable how you do your orders. Everybody has a different system. (Ex. B -Alvarez Dep. at 83:21-23). The comments and times listed in Plaintiff's daily production logs indicate that he did not complete any work orders that were not completed by him. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex. Q at ¶ 21-25.) DeMien believes that Plaintiff was trying to comment about things he was running into while trying to fill his order in the comments section in the production log, which was typical to do. (Ex. D -DeMien Dep. at 41:16-42:15).

47.    Plaintiff admits that he completed the daily production logs by listing a completion time and other information for work orders that he did not complete himself. (Lunt Dep. at 84-85; Wingo Dep. at 184-85.)
    **Response:**

Plaintiff disputes paragraph forty-seven (47) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph forty-seven (47) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff does not

admit that he listed a completion time for work orders that he did not complete himself.  Plaintiff

included start times to the work orders he processed as instructed to do by Lunt. (Ex. A -Wingo Dep.

at 275:20-276:2, 325:1-10.)  If his shift ended at the time that he began the work order, Plaintiff's

start time would obviously represent both his start time and his completion time, but, in such case,

you could tell by the time that he did not complete the work order. (Ex. A -Wingo Dep. at 275:20-

276:10; Ex. B -Alvarez Dep at 84:24-85:12.)  Plaintiff further disputes any wrongdoing in the

manner to how he completed his November 28 and 29, 2007 daily production logs. (Ex. A -Wingo

Dep. at  64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22,

237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10;

Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex. Q at ¶ 21-

25.)

     48.    Even though Plaintiff recorded some comments regarding certain orders, this does
not excuse the fact that he represented he had completed those orders by listing a completion
time on his daily production logs. (Lunt Dep. at 90.)

**Response:**

    Plaintiff disputes paragraph forty-eight (48) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph forty-eight (48) as lacking

foundation and relying on impermissible inferences in favor of the moving party. Nothing in

Defendant's citation states that "recording some comments regarding certain orders...does not excuse

that he had completed those orders by listing a completion time."  Nevertheless, Plaintiff included

start times to the work orders he processed as instructed to do by Lunt. (Wingo Dep. at 275:20-276:2,

325:1-10.)  If his shift ended at the time that he began the work order, Plaintiff's start time would

obviously represent both his start time and his completion time, but, in such case, the time that

Plaintiff wrote in his daily production logs show that Plaintiff did not complete the work order. (Wingo Dep. at 275:20-276:10; Alvarez Dep at 84:24-85:12.). Even if Lunt were to interpret that Plaintiff put down his completion time, this would not be a violation of the customary procedure used to complete production logs as putting down completion times without completing a work order was not falsification as everybody does it. (Alvarez Dep. at 67:4-6). Plaintiff further disputes any wrongdoing in the manner to how he completed his daily production logs. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex. Q at  ¶ 21-25.)

49.    While Plaintiff admits he did not know who made the decision to terminate him, Lunt made the decision on December 3, 2007, with input from M. DeMien. (Lunt Dep. at 36-38; Wingo Dep at 132; M. DeMien Dep. at 27-28; Exhibit W (Pl.'s Dec. 3, 2007 Termination Record).)
       **Response:**

       Plaintiff disputes paragraph forty-nine (49) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph forty-nine (49) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff testified that he believed Mark DeMien and Randy Lunt terminated his employment, but does not know who else. (Ex. A -Wingo Dep. at 132:12-17.)

50.    Lunt terminated Plaintiff for falsifying Company records/documents for two days in a row -- specifically, taking credit for completing work orders on November 28 and 29, 2007 -- which is a "Category D" work rule violation warranting discharge for the first offense. (Lunt Dep. at 38; Wingo Dep. at 201; M. DeMien Dep. at 28; Ex. L at 2, 8.)
       **Response:**

       Plaintiff disputes paragraph fifty (50) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph fifty (50) as lacking foundation and relying

on impermissible inferences in favor of the moving party. Plaintiff does not dispute that Lunt gave Plaintiff as the reason for terminating his employment was allegedly "taking credit for completing work orders, specifically work orders 466844 and 466883 on his November 28, 2007 production log and work orders 467112 and 467012 on his November 29, 2007 production log, that he did not complete." However, Plaintiff did not take credit for completing work orders on November 28 and 29, 2007 that he did not complete as the comments and times listed in Plaintiff's daily production logs indicate that he did not complete any work orders that were not completed by him. (Ex. A - Wingo Dep. at  64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex. Q at  ¶ 21-25.)  Plaintiff further states that Lunt terminated his employment on the basis of age discrimination. (Wingo Dep at 211:7-214:22; Alvarez Dep. at 42:24-43:19.)

51.    According to Plaintiff, any age discrimination against him began on August, 30, 2007 at the earliest, or perhaps in September 2007. (Compl. ¶ 10; Wingo Dep. at 242.)
    **Response:**

Plaintiff disputes paragraph fifty-one (51) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph fifty (51) as lacking foundation and relying on impermissible inferences in favor of the moving party.  Plaintiff does not dispute that his claim of age discrimination began on August 30, 2007.

52.    Any age discrimination based upon disciplinary action taken against Plaintiff is limited to: (a) his one-day suspension on October 10, 2007; and (b) his termination on December 3, 2007. (Wingo Dep. at 178, 206.)
    **Response:**

Plaintiff disputes the allegations contains in paragraph 52 as lacking foundation and

31

misrepresenting facts in evidence.  In addition to the discipline against him stated in paragraph 52,

Plaintiff  alleges that DeMien's harassment of him, and subsequent letter of counsel, from August

30, 2007 was discriminatory on the basis of his age, Plaintiff alleges that his written warning

disparately issued to him as compared to the substantially younger Herrera who only received an oral

warning was discriminatory against him on the basis of his age, Plaintiff alleges that the November

8, 2007 three (3) day suspension was discriminatory against him on the basis of his age, and

DeMien's oral discipline in November 2007 against him for leaving the door open was

discriminatory against him.  (Wingo Dep. at 25:12-26:19, 146:9-14, 157:13-17, 225:2-226:10.) In

fact, Plaintiff produces evidence that substantially younger Warehousemen were provided favorable

treatment daily at the Schaumburg Plant. (Wingo Dep. at 133:13-22, 150:18-151:1, 164:17-165:8,

178:14-14-179:22, 208:11-17, 220:17-222:9, 238:6-240:22; Alvarez Dep.  at 38:21-39:1, 40:4-

43:19.)

  53.  The remaining disciplinary actions Plaintiff received between June 2007 and his
termination were admittedly his fault and not age-related. (Wingo Dep. at 145-46, 161, 177.)
  **Response:**

   Plaintiff disputes paragraph 53 as lacking foundation and misrepresenting facts in evidence.

See Plaintiff's response to paragraph 52 above.  Plaintiff further states that the discipline he received

from June 2007 through November 2007 were based on acts in which Defendant punished Plaintiff

more severely than similarly situated, substantially younger coworkers, to which others were

responsible, were untrue, or for acts in which Plaintiff shared responsibility with other employees,

but Defendant punished Plaintiff more severely. (Ex. A -Wingo Dep. at 132:2-7,133:13-22,158:9-

159:6,146:9-14,149:12-150:11,150:18-151:1,178:14-14-179:22, 239:10-240:1, 240:18-20, 248:11-

20; Ex. Q)

54.    Plaintiff's one-day suspension on October 10, 2007 resulted from another work order mistake which he admitted making. Plaintiff testified that he "*could* have caught [the] mistake," should not have allowed the wrong product to be shipped to the customer, and it was his *responsibility* to catch the mistake. (Wingo Dep. at 178-79, 315-16; Ex. Q (emphasis added).)

**Response:**

Plaintiff disputes paragraph fifty-four (54) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph fifty-four (54) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff did not testify that it was his responsibility to catch the mistake.  Rather, Plaintiff testified that "it shouldn't come to my area.  It was a cut order that should have went to a whole other area.  The operator, Tyler DeMien, a younger operator, made the mistake, and was not disciplined but Plaintiff was disciplined for the same conduct with respect to the work order error. (Wingo Dep. at 149:10-151:1.)  Wingo was not responsible for cutting the material on October 10, 2007. (Lunt Dep. at 101:4-7).  Consequently, Plaintiff disputes the allegations in paragraph 54. (Ex. A -Wingo Dep. at  104:12-106:6, 149:10-151:1, 178:14-14-179:22; Ex. C -Lunt Dep. at 20:17-22, 101:4-7, 104:6-110:1; Ex. I; Ex. Q at ¶ 13; Ex. K.)

55.    Plaintiff has no evidence, but speculates that his termination was age-related because "[the younger workers are] still there and I'm gone." (Wingo Dep. at 244.)

**Response:**

Plaintiff disputes paragraph fifty-five (55) as being argumentative, incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph argumentative (55) as lacking foundation and relying on impermissible inferences in favor of the moving party.  Plaintiff presents abundant, sufficient, and compelling evidence to support his claims of age discrimination.

*See Plaintiff's Rule 56.1 Statement of Additional Facts* and *Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment*.  However, Plaintiff does not dispute the fact that younger workers, who engaged in identical and similar conduct as Plaintiff, but for which Plaintiff was disciplined and terminated and they were not, are still working there is further supportive of his claim of age discrimination.

56.    Plaintiff admits that the following warehouse employees are still employed by Copper and Brass at Schaumburg: Frederick Stalzik (whom Plaintiff says is probably over age 50); Tony Falco (whom Plaintiff says is probably age 47); Arturo Flores (whom Plaintiff says is probably age 50); and Lance Amack. (Wingo Dep. at 245, 247-48.)
**Response:**

Plaintiff disputes paragraph 56 as lacking foundation and relevance.  Defendant's employment of Stalzik, Falco, Flores , and Amack, if true, does not have any relevance to whether Plaintiff was treated less favorably than similarly situated younger warehousemen and terminated upon a pretext of age discrimination.

57.    When Plaintiff was terminated, twenty-three of thirty-nine Schaumburg hourly employees were over age 40; four of whom were between the ages of 50 and 59 years, and two of whom were over age 60. (Ex. J ¶ 18.)
**Response:**

Plaintiff disputes paragraph 57 as lacking foundation and relevance.  Defendant erroneously relies on an affidavit to support paragraph 57 containing conclusory allegations with no evidentiary support.

58.    Copper and Brass continues to employ numerous warehouse employees at Schaumburg that are members of Plaintiff's protected class, such as Frederick Stelzik (age 64 at the time of Plaintiff's termination), Lance Amack (age 63), Denny Prosser (age 51), Flores (age 51) and Tony Falco (age 49). Of the thirty-four total employees at Schaumburg, twenty-three are over age 40, six of whom are between the ages of 50 and 59 years, and two of whom are over age 60 years. (Wingo Dep. at 52-53, 245-48; Ex. J ¶¶ 19, 26-30.)
**Response:**

Plaintiff disputes paragraph 58 as lacking foundation and relevance.  Defendant erroneously relies on an affidavit to support paragraph 57 containing conclusory allegations with no evidentiary support.

59.    Plaintiff knew that the CBA prohibited age discrimination and that he could have filed a grievance for such violations. Plaintiff never filed any such grievance. (Wingo Dep. at 23-24.)

**Response:**

Plaintiff disputes paragraph fifty-nine (59) as being relevance, incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph fifty-nine (59) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff grieved DeMien's abusive harassment against him on August 30, 2007. *See* Plaintiff's Response to paragraph 36.  Plaintiff further did not grieve many of his complaints of age discrimination in fear of retaliation and because his union steward did not adequately represent his interests. (Wingo Dep. at 265:1-13, 302:2-14, 314:12-23; Alvarez Dep. at 14:22-15-20, 26:3-14; LaRocco Dep. at 39:9-17.)

60.    Plaintiff did not mention age discrimination when he complained about being terminated to William Fruehauf, Copper and Brass's Vice President and Regional Manager, on December 4, 2007. (Wingo Dep. at 260.)

**Response:**

Plaintiff disputes paragraph 60 as lacking foundation, relevance, and relying on impermissible inferences in favor of the moving party.  Plaintiff informed Fruehauf that he was being treated unfairly in comparison to other workers, who were younger, that he was disciplined and fired on baseless accusations, and that he was harassed by M. DeMien. (Ex. A-Wingo Dep. at 257:19-258:8; Ex. H)

61.    Plaintiff never complained that anyone harassed him because of his age, that his termination was a result of his age, or that anyone made comments about his age. (LaRocco Dep. at 74, 77-78; Bishop Dep. at 49.)

**Response:**

Plaintiff disputes paragraph 61 as lacking foundation, relevance, and relying on

impermissible inference in favor of the moving party as Plaintiff does not present a harassment

claim.

62.    Plaintiff's union grievance challenging his termination did not mention age
discrimination. (Ex. N.)
**Response:**

Plaintiff disputes paragraph 62 as lacking foundation and relevance.  There is no foundation

for Ex. N to be admitted into evidence.

63.    The younger employees that Plaintiff has identified as comparables are T.
DeMien (age 22), Herrera (age 43), Alvarez (age 47), Garcia (age 52), Hernandez (age 35) and
Cather (age 27). (Compl. ¶ 12; Wingo Dep. at 105-06; Alvarez Dep. at 8; Ex. J ¶¶ 21-25.)
64. Side load operators like T. DeMien and Hernandez and receiving clerks like
Bishop had different job duties and responsibilities than warehouse clerks like Plaintiff, do not
complete daily production logs or other paperwork, and Plaintiff admits that they do not have the
same job as him. (Lunt Dep. at 57; Wingo Dep. at 210-11, 221-22.)
**Response:**

Plaintiff disputes paragraph sixty-three (63) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph sixty-three (63) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  T. DeMien,

Hernandez, and Bishop are Warehousemen, and all Warehousemen have the same job duties and

responsibilities.  Defendant moves Warehousemen around the Schaumburg Plant where they are

needed. Warehousemen, including side Loaders and warehouse clerks, all have responsibilities that

overlap in many respects and work together to process work orders.(Ex. A -Wingo Dep. at 44:23-

45:7, 287:20-288:9; Lunt Dep. at 15:19-24, 39:12-41:21; Ex. -D DeMien Dep. at 63:6-17; Ex. E -

Bishop Dep. at 12:20-22; 13:24-15:6, 28:7-15; Ex. L) T. DeMien worked primarily as a side loader,

36

not exclusively. (Ex. D -DeMien Dep. at 19:16-20.)  Plaintiff worked as a side loader, an order clerk,

a machine operator, and shipping/receiving during 2007. (Ex. A -Wingo Dep. 44:23-45:7.)

     65.    Plaintiff admits that he does not know whether his alleged comparators have as
extensive of a disciplinary history as him; and does not know their disciplinary records. The
only disciplinary record that Plaintiff has actual knowledge about is his own. (Wingo Dep. at
101, 200-01, 209-10, 212, 217, 219, 223-24.)
     **Response:**

     Plaintiff disputes paragraph sixty-five (65) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph sixty-five (65) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  Defendant's

decision to terminate Plaintiff's employment was, allegedly, on the basis of taking credit for

completing work orders that he did not commit on his November 28, 2007 and November 29,

2007 daily production logs, not his alleged disciplinary record or the disciplinary records of other

Warehousemen.(Ex. A -Wingo Dep at 202:6-209:17; Ex. N.)  Plaintiff further disputes paragraph

sixty-five (65) on the basis that Plaintiff's disciplinary history is the byproduct of Defendant's

disparate discipline of him, and should not be considered in distinguishing Plaintiff from his

comparatives. (Ex. A -Wingo Dep. at 132:2-7,133:13-22,158:9-159:6,146:9-14,149:12-

150:11,150:18-151:1,178:14-14-179:22, 239:10-240:1, 240:18-20, 248:11-20)

     66.    T. DeMien did not have a comparable disciplinary record to Plaintiff. (Wingo
Dep. at 210.)
     **Response:**

     Plaintiff disputes paragraph sixty-five (65) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph sixty-five (65) as lacking

foundation and relying on impermissible inferences in favor of the moving party.  Notwithstanding

the fact that Plaintiff's claim of age discrimination is based, in part, upon T. DeMien's lack of

disciplined for his conduct, T. DeMien had a worse disciplinary record as he was given numerous

verbal and written warnings, in addition to a minimum of four (4) final warnings from August 2005

through December 21, 2006 and a May 2005 three (3) day suspension, for absenteeism. Plaintiff

further disputes paragraph sixty-five on the basis that Plaintiff's disciplinary history is the byproduct

of Defendant's disparate discipline of him and T. DeMien, and should not be considered in

distinguishing Plaintiff from T. DeMien. (Ex. A -Wingo Dep. at  104:12-106:6; 178:14-14-179:22;

Ex. C -Lunt Dep. at 20:17-22, 104:6-110:1; Ex. I; Ex. Q at ¶ 13; Ex. K.).

67.    T. DeMien and Herrera worked on the third shift, and Alvarez and Garcia worked
on the second shift, and all had different supervisors than Plaintiff. (Wingo Dep. at 211, 215;
Alvarez Dep. at 12.)
    **Response:**

Plaintiff disputes paragraph sixty-seven (67) as being incomplete, misleading, and

misrepresenting facts in evidence. Plaintiff further disputes paragraph sixty-seven (67) as lacking

foundation and relying on impermissible inferences in favor of the moving party. M. DeMien was

the foreman, supervising Warehousemen on the first and third shifts. T. DeMien and Herrera were

supervised by M. DeMien, same as Plaintiff. (Ex. C -Lunt Dep. at 105:19-106:4; Ex. D -DeMien

Dep. 12:21-13:20; 18:20-22, 19:6-9, 20:17-21:4; Ex. J)

68.    No other hourly Schaumburg employee had as extensive a disciplinary record as
Plaintiff, whether during the last six months of his employment or during the entire time Copper
and Brass disciplined Plaintiff. In fact, Plaintiff's disciplinary record was far more extensive
than any other Schaumburg employee. (Ex. J ¶¶ 16-17.)
    **Response:**

Plaintiff disputes paragraph 68 as lacking foundation and relevance. Notwithstanding the fact

that Plaintiff's claim of age discrimination is based, in part, on a disparate application of Defendant's

disciplinary policy, paragraph 68 erroneously relies on an affidavit containing conclusory allegations

with no evidentiary support. Plaintiff's claim of age discrimination stems, in part, from Defendant's

disparate discipline against him. Further, Plaintiff was the number two (2) ranking senior employee

at the Schaumburg Plant. (Ex. A -Wingo Dep. at 6:7-8, 15:24-16:1, 16:17-19, 100:17-102:1; Ex. E

-Bishop Dep. at 55:10-21). Plaintiff performed his responsibilities and duties as a Warehousemen

in substantially the same manner as any other Warehouseman. (Ex. A -Wingo Dep. at 264:13-21,

269:9-15, 297:9-18; Ex. B -Alvarez Dep. at 38:21-39:1; Ex. D -DeMien Dep. at 39:14-40:3; Ex. G

-Pucalik Dep. at 21:5-17.) Plaintiff requested the disciplinary records of warehousemen at the

Schaumburg Plant; however, Defendant did not produce such evidence. Therefore, Defendant

cannot now rely upon the disciplinary records of other Warehousemen to refute Plaintiff's claim.

69.    Copper and Brass followed its progressive disciplinary policy in Plaintiff's
situation, and gave Plaintiff more chances than other employees. (LaRocco Dep. at 26, 79, 83.)
**Response:**

Plaintiff objects to paragraph 69 on the basis of misleading and misrepresenting facts in

evidence, hearsay, relevance, argumentative and lack of foundation. LaRocco's knowledge about

Plaintiff's performance and discipline is limited to the information provided to him by Lunt, and,

thus, hearsay. (Ex. F -LaRocco Dep. at 80:12-18.) Further, LaRocco stated to Plaintiff and other

Warehousemen, that Plaintiff "was a dead man" almost every day. (Ex. B -Alvarez Dep. at 26:3-23.)

Plaintiff claim of age discrimination is based, in part, on Defendant's disparate application of its

progressive disciplinary policy to Plaintiff compared to Plaintiff's similarly situated, substantially

younger coworkers. *See Plaintiff's Statement of Additional Facts and Memorandum of Law.*

70.    Plaintiff does not know if Copper and Brass management was aware that Herrera
included on his daily production logs work orders which Herrera allegedly did not complete. (Wingo
Dep. at 224.)
**Response:**

Plaintiff disputes paragraph seventy (70) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph seventy (70) as lacking foundation and relying on impermissible inferences in favor of the moving party. Lunt and DeMien instructed Plaintiff to include incomplete work orders in Plaintiff's daily production logs. Moreover, DeMien conducted checked the daily production logs every night for the Warehousemen he supervised, including Plaintiff and Herrera. Further, all the Warehousemen at the Schaumburg Plant included incomplete work orders in their daily production logs. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12, 96:23-97:22.; Ex. D - DeMien Dep. at 12:21-13:20; 18:20-22, 19:6-9, 20:17-21:4, 33:24-34:8; Ex. Q at ¶ 21-25.)

71.     Alvarez never told Lunt or M. DeMien that he thought it was acceptable to include on his daily production logs work orders which he did not complete. (Alvarez Dep. at 89.)
     **Response:**

Plaintiff disputes paragraph seventy-one (71) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph seventy-one (71) as lacking foundation and relying on impermissible inferences in favor of the moving party. Plaintiff was instructed by Lunt to include incomplete work orders in his daily production logs. Moreover, DeMien conducted daily and weekly checks of the daily production logs of Warehousemen, all the Warehousemen at the Schaumburg Plant included incomplete work orders in their daily production logs. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-

301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12, 96:23-97:22.; Ex. C -Lunt Dep. at  72:10-73:22; Ex. D - DeMien Dep. at 12:21-13:20; 18:20-22, 19:6-9, 20:17-21:4, 33:24-34:8, 48:5-50:7; Ex. Q at ¶ 21-25.)

72.    Alvarez was terminated on January 28, 2008 for a verbal altercation with another employee pursuant to a last chance agreement between he and the Company. (Lunt Dep. at 119-20; Alvarez Dep. at 13.)

**Response:**

Plaintiff objects to paragraph 72 on the basis of relevance.

73.    Alvarez testified that he completed some of the work orders that Plaintiff indicated were done by him on his November 29, 2007 daily production log. (Alvarez Dep. at 61, 80-81.)

**Response:**

Plaintiff disputes paragraph seventy-three (73) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph seventy-three (73) as lacking foundation and relying on impermissible inferences in favor of the moving party. Alvarez testified that Plaintiff completed his production log the same way the other Warehousemen completed there production logs and in accordance with the customary procedures at the Schaumburg Plant. (Ex. B -Alvarez Dep. at 29:3-34:2, 67:4-6, 83:21-23, 84:24-85:12)

74.    Like Plaintiff, Alvarez, Garcia and Herrera received discipline for repetitive work order errors, and Plaintiff does not know whether any other employees were disciplined for repetitive errors. (Wingo Dep. at 98-99; LaRocco Dep. at 27-28; Exhibit X (Herrera and Alvarez Discipline).)

**Response:**

Plaintiff disputes paragraph 74 as lacking foundation and relevance. La Rocco's testimony lacks foundation.  Exhibit X also does not have any foundation.  Nevertheless, mistakes regularly occurred at the Schaumburg Plant. (Ex. B -Alvarez Dep at 38:21-39:1). There can be hundreds of types of errors that can occur at the Schaumburg facility warehouse. (Ex. C -Lunt Dep. at 69:6-22).

Many different Warehousemen can be responsible for a single work order error. (Ex. D -DeMien Dep. at 63:6-17.). Herrera was never suspended for repetitive work order errors. (Ex. C -Lunt Dep. at 115:17-19). Mark Pucalik, who checks the accuracy of work orders almost daily, observed just about every warehouseman working and Mr. Wingo performed his job duties in a similar manner as other warehouseman. (Ex. G -Pucalik Dep. at 21:5-17; Ex. D -DeMien Dep. at 39:14-40:3).

75.    Copper and Brass did not discipline Plaintiff for using his cell phone during work hours, and Herrera (one of the alleged comparators) also complained that T. DeMien was allowed to use a cell phone during work hours. (Wingo Dep. at 151-52.)
    **Response:**

Plaintiff disputes paragraph 75 on the basis of relevance.  There is no evidence in the record that Plaintiff ever used his cell phone during work hours.  Contrary to the allegations in paragraph 75, substantially younger Warehousemen, like Cather, T. DeMien, and Hernandez were allowed to use their cell phones during work hours against company rules without discipline. (Ex. A -Wingo Dep. at 48:7-11, 133:13-22;150:18-151:1,218:14-220:19, 222:18-225:22; Ex. B -Alvarez Dep. at 39:24-42:17; Ex. C -Lunt at 20:17-22, 105:16-106:4; Ex. F -LaRocca Dep. at 43:13-24, 105:8-106:4; Ex. K.).

76.    No other warehouse employee had ever misrepresented their work in the manner that Plaintiff did on his November 28 and 29, 2007 daily production logs. (Ex. J ¶ 16.)
    **Response:**

Plaintiff disputes paragraph seventy-six (76) as being incomplete, misleading, and misrepresenting facts in evidence.  Plaintiff further disputes paragraph seventy-six (76) as lacking foundation and relying on impermissible inferences in favor of the moving party.  Defendant relies upon a conclusory allegation from an affidavit with no evidentiary support.  Contrary to the allegations in paragraph 76, Plaintiff's November 28 and 29, 2007 daily production logs did not

include any misrepresentations, were done in the same manner as other Warehousemen, and were done according to the instruction he received from his supervisors. Moreover, Plaintiff did not take credit for completing work orders on November 28 and 29, 2007 that he did not complete as the comments and times listed in Plaintiff's daily production logs indicate that he did not complete any work orders that were not completed by him. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12, 96:23-97:22.; Ex. D - DeMien Dep. at 12:21-13:20; 18:20-22, 19:6-9, 20:17-21:4, 33:24-34:8; Ex. Q at ¶ 21-25.) Further, Plaintiff was instructed by Lunt, or one of his foremen, to document partially completed work orders in his daily production log. (Ex. A -Wingo Dep. at 191:7-9, 295:10-296:7, 299:6-18; Ex. D -DeMien Dep. at 48:5-50:7.). Lunt further expected Plaintiff to write down all the work he performed on a shift, which would include incomplete and complete work orders. (Ex. C -Lunt Dep. at 72:10-73:22.)

77.    T. DeMien did not replace Plaintiff, and Plaintiff does not know the identity of the employee, if any, who replaced him. (Lunt Dep. at 126; Wingo Dep. at 334; M. DeMien Dep at 66.)

**Response:**

Plaintiff disputes paragraph seventy-seven (77) as being incomplete, misleading, and misrepresenting facts in evidence. Plaintiff further disputes paragraph seventy-seven (77) as lacking foundation and relying on impermissible inferences in favor of the moving party. Mike Perrone, 34 years old, replaced Plaintiff permanently. (Ex. C -Lunt Dep. at 127:6-24.)

78.    After Plaintiff's termination, Copper and Brass initially had RBW warehouse clerks on second and third shifts work overtime to cover the opening pursuant to the CBA (this included Arturo Flores ("Flores"), who was 50 years old at the time, and Herrera), but other employees could have been asked if Flores or Herrera declined the overtime. (Lunt Dep. at 125-

43

26; Wingo Dep. at 247-48.)

**Response:**

Plaintiff disputes paragraph 78 as lacking foundation and relevance.

79.    The Company filled the opening at the RBW station on a more permanent basis through a seniority-based bidding process under the CBA by drawing from a pool of available warehousemen who sought the position -- at first, Alvarez moved over from second shift and Mike Perrone has held the position since March or April, 2008. No one has been hired to replace Plaintiff. (Lunt Dep. at 126-27.)

**Response:**

Plaintiff disputes paragraph seventy-nine (79) as being incomplete, misleading, and

misrepresenting facts in evidence.  Plaintiff further disputes paragraph seventy-nine (79) as lacking

foundation and relying on impermissible inferences in favor of the moving party. Mike Perrone, 34

years old, replaced Plaintiff permanently. (Ex. C -Lunt Dep. at 127:6-24).  Prior to replacing Plaintiff

with Perrone, Defendant asked people from the third shift and second shifts to work overtime

because they did not have anybody yet to replace Plaintiff. (Ex. B -Alvarez Dep. at 21:23-22:16.)

## PLAINTIFF'S 56.1(B) STATEMENT OF ADDITIONAL FACTS

80.    Plaintiff, Robert G. Wingo, born on May 24, 1953 and currently fifty-five (55) years

old, was a twenty-four (24) year employee of Defendant.  Further, Plaintiff was the number two (2)

ranking senior employee at Defendant's Copper & Brass Plant in Schaumburg, Illinois, when

Defendant terminated Plaintiff's employment.  Plaintiffs' twenty-four (24) years of employment

withstood Defendant's end to the employment of nearly 300 employees. (Ex. A -Wingo Dep. at 6:7-

8, 15:24-16:1, 16:17-19, 100:17-102:1; Ex. E -Bishop Dep. at 55:10-21).

81.    At the time of being fired by Defendant, Plaintiff earned $14.50 per hour as a

Warehouseman, which is the same position he started as an employee of Defendant after graduating

from college. (Ex. A -Wingo Dep. at 6:7-8, 40:16-42:16, 44:23-45:7, 287:20-288:9)

82.    As a Warehouseman at Defendant's Schaumburg Plant, Plaintiff performed all the duties and responsibilities of a Warehousemen, which included performing the duties of a warehouse clerk, machine operator, side loader operator, and shipping/receiving during his final year of employment.  The duties of Warehousemen overlap and are interdependent each other, including the duties and responsibilities performed by side loader operators and warehouse clerks.  Warehousemen further shift their responsibilities around the Schaumburg Plant as needed; however, both all Warehousemen are subject to the same job description and classification, same set of supervisors, and same standards of employment. (Ex. A -Wingo Dep. at 44:23-45:7, 287:20-288:9; Lunt Dep. at 15:19-24, 39:12-41:21; Ex. -D DeMien Dep. at 63:6-17; Ex. E -Bishop Dep. at 12:20-22; 13:24-15:6, 28:7-15; Ex. L)

83.    During his tenure as a Warehouseman, Plaintiff processed 200,000 orders for the Schaumburg Plant.  Processing orders at the Schaumburg Plant is a repetitive process with repetitive errors of which a hundred types are committed nearly daily by Warehousemen.  Mark Pucalick, Defendant's Material Control Supervisor, who is responsible for checking Warehousemen's work orders almost daily for accuracy, concluded that he has "observed just about every warehouseman working and Mr. Wingo performed his job duties in a similar manner as other warehouseman." (Ex. A -Wingo Dep. at 264:13-21, 269:9-15, 297:9-18; Ex. B -Alvarez Dep. at 38:21-39:1; Ex. D -DeMien Dep. at 39:14-40:3; Ex. G -Pucalik Dep. at 21:5-17.)

84.    At all relevant times, Defendant had a progressive disciplinary policy in place governing the terms on which all Warehousemen are subject to discipline. Defendant's progressive disciplinary policy provides, *inter alia*, that repetitive errors, such as filling work orders, administrative, or otherwise, and wasting time are "Category A" violations and are never subject to

termination; rather, within a 90-day framework, "Category A" violations are subject to an oral warning as a first disciplinary step, a written warning as a the second disciplinary step, and a three (3) day suspension as a third and final disciplinary step.  The disciplinary policy also provides that sleeping on the job while not on break or at lunch is a Category C violation and is subject to a first disciplinary step of a three (3) day suspension and a second disciplinary step of termination.  Further, the disciplinary policy states that "altering or defacing your own or another employee's time card, punching in or out another employees' time card or improperly handling of another employee's time card," like "falsifying company documents," is a Category D violation and subject to a first step disciplinary action of termination. (Ex. A -Wingo Dep. at 297:9-18; Ex. C -Lunt Dep. at 33:2-36:4; Ex. L.)

85.    Discipline for work order errors varied at Defendant's Schaumburg Plant as supervisors would handle it differently as far as whether to do a verbal, a sit-down, letter of counsel, or sometimes just a blurb in the Warehouseman's training file to go over and make sure that the employee understood what he did wrong and how to correct that situation. (Ex. C -Lunt Dep. at 115:8-15, Ex. A -Wingo Dep. at 297:9-18.)

86.    The conditions of Plaintiff's employment went "downhill" soon after Plaintiff submitted to Randy Lunt, the Schaumburg Plant Supervisor, and Pete LaRocco, his union steward, a grievance of harassment against Mark DeMien, the Schaumburg Plant's first and third shift foreman, on August 30, 2007. (Ex. A-Wingo Dep. at 25:12-26:6, 239:10-240:7; Ex. B-Alvarez Dep. at 26:3-7)

87.    Plaintiff's August 30, 2007 grievance against M. DeMien stemmed from M. DeMien's shouting at Plaintiff, stating "What the fuck are you doing," while Plaintiff was waiting

46

to receive material from Jason Prosser, a 29-year-old Warehouseman.  After Plaintiff explained what he was doing, M. DeMien further stated, "fuck you, get to work." After stating, "fuck you, I'll do anything I want," M. DeMien walked away from Plaintiff.  Later that shift, M. DeMien resumed swearing and cussing at Plaintiff for talking to Pat Bishop, while Plaintiff was moving two (2) eighty (80) pound PVC rolls as Plaintiff was still waiting for Prosser to bring him Plaintiff's materials, which was common conduct at the Schaumburg Plant. (Ex. C -Lunt at 20:17-22; Ex. E -Bishop Dep. at 34:15-36:13; Ex. A-Wingo Dep. at 257:19-258:8; Ex. H; Ex. K.)

88.     Beyond verbally abusing Plaintiff, M. DeMien issued Plaintiff a letter of counsel for "wasting time" on August 30, 2007.  M. DeMien regularly permitted substantially younger employees under his supervision, such as Tyler DeMien, twenty-three (23) years old, and Lizardo Hernandez, thirty-five (35) years old, to waste time by using their cellular phones on company time. M. DeMien further allowed T. DeMien to leave the building and use his cellular phone during work hours without discipline.  M. DeMien was also frequently witnessed waking up T. DeMien before his shifts, when he was sleeping, drunk, in the Schaumburg Plant's parking lot.  M. DeMien is both the father and supervisor of T. DeMien, which violates Defendant's policy against relatives supervising each other. (Ex. A -Wingo Dep. at 48:7-11, 133:13-22;150:18-151:1,218:14-220:19, 223:5-15; Ex. B -Alvarez Dep. at 39:24-42:17; Ex. C -Lunt at 20:17-22, 105:16-106:4; Ex. F -LaRocca Dep. at 43:13-24, 105:8-106:4; Ex. K.)

89.     M. DeMien allowed Ray Cather, a twenty-seven (27) year-old Warehouseman, who worked on Plaintiff's shift, to use his cell phone for personal business without discipline.  Plaintiff witnessed M. DeMien catch Cather sleeping three (3) times during work hours; however, M. DeMien simply ignored and walked by Cather sleeping, despite sleeping on the job being a Category C

violation of Defendant's disciplinary policy and immediately subject to a three (3) day suspension as a first step disciplinary action and termination as a second step disciplinary action.  M. DeMien further permitted Cather to sit on the job and simply do nothing without any disciplinary action. (Ex. A -Wingo Dep. at 222:18-225:22; Ex. C -Lunt at 20:17-22; Ex. K.)

90.    Warehousemen, like Plaintiff, are customarily forced to wait hours for other Warehousemen to provide them with materials that they need to complete processing work orders. As was customary, Plaintiff occupied himself with other work responsibilities, such as putting away two (2) skids, containing 8-10 rolls of PVC, cleaning his station, and reloading PVC rolls, while waiting for Prosser to retrieve his materials to allow Plaintiff to process his next work order. Defendant's regulations further required Plaintiff to get additional help from another Warehouseman to reload the eighty (80) pound PVC rolls, due to the Schaumburg Plant's (70) pound weight restriction. (Ex. A-Wingo Dep. at 257:19-258:8; 284:13-16; Ex. E -Bishop Dep. at 36:9-37:17; Ex. H.)

91.    Lunt did not discipline M. DeMien as a consequence of Plaintiff's grievance, despite Plaintiff identifying two witnesses, Sergio Garcia and Patrick Bishop, to M. DeMien's abusive behavior.  M. DeMien further remained as Plaintiff's foreman, and issued a letter of counsel for "wasting time," for his work while waiting for Jason Prosser to bring him his materials to process the work order. (Ex. C -Lunt Dep. at 47:23-49:19; Ex. A -Wingo Dep. 25:12-26:19)

92.    Following Plaintiff's August 30, 2007 grievance for harassment against M. DeMien, Plaintiff began to see an increasing number of bad orders coming from T. DeMien and Hernandez, which prevented Plaintiff from having any chance of success.  Plaintiff attempted to have a member of Defendant's management, such as Lunt, hold T. DeMien and Hernandez accountable for their

errors, but Defendant did nothing to hold them accountable. M. DeMien was further witnessed laughing at Plaintiff in response to Plaintiff explaining to M. DeMien, the problems he was having with T. DeMien and Hernandez bringing him bad work orders. (Ex. A -Wingo Dep. at 239:10-240:7; Ex. B -Alvarez Dep. at 20:1-6; 24:12-17, 25:14-16.)

93.     Coinciding with the increase in bad orders sent to Plaintiff, Lunt inexplicably approached Plaintiff to offer him a general warehouse helper position, which Plaintiff rejected as the change in position would result in a significant loss of pay to Plaintiff, who had the responsibility of paying for the college tuition of his children and the mortgage on his house. (Ex. A -Wingo Dep. at 71:17-73:12, 257:19-258:8; Ex. H)

94.     After Plaintiff made his grievance about M. DeMien's conduct, Plaintiff's union steward, Pete LaRocco, would tell Plaintiff practically daily, "you're a dead man." (Ex. B -Alvarez Dep. at 26:3-14, 42:24-43:19)

95.     From October 2007 through November 2007, Lunt and M. DeMien began disciplining Plaintiff for acts in which others were responsible, which were untrue, or which Defendant punished Plaintiff more severely, but Plaintiff shared responsibility with other Warehousemen. (Ex. A -Wingo Dep. at 132:2-7,133:13-22,158:9-159:6,146:9-14,149:12-150:11,150:18-151:1,178:14-14-179:22, 239:10-240:1, 240:18-20, 248:11-20)

96.     Despite Elutario Herrera, a 43-year-old Warehouseman, and Plaintiff engaging in the identical conduct on October 4, 2007, M. DeMien, both Herrera's and Plaintiff's supervisor, issued Herrera a first step disciplinary action of an oral warning, but issued Plaintiff a more severe second step disciplinary action of a written warning to Plaintiff. (Ex. A -Wingo Dep. at 143:13-145:6; Ex. D -DeMien Dep. 12:21-13:20; 18:20-22, 19:6-9, 20:17-21:4; Ex. C -Lunt Dep. at 20:17-22, 111:21-

113:11; Def. Mem. Ex. Q; Ex. J; Ex. K.)

97.    M. DeMien cited a June 22, 2007 "Category A" disciplinary action as his basis for elevating Plaintiff's October 4, 2007 discipline from an oral warning to a written warning; however, Herrera's previous "Category A" discipline occurred more recently, on July 10, 2007. (Ex. A - Wingo Dep. at 143:13-145:6; Ex. C - Lunt Dep. at 111:21-113:11; Def. Mem. Ex. Q; Ex. J.)

98.    On October 5, 2007, M. DeMien suspended Plaintiff for one (1) day for an error in work order 45685, despite it being the result of the twenty-three (23) year-old Warehouseman, T. DeMien, bringing Plaintiff the wrong material for Plaintiff to process the work order. Despite Plaintiff bringing T. DeMien's fault in the work order error to the attention of M. DeMien, M. DeMien, both Plaintiff's and T. DeMien's supervisor, nevertheless disciplined Plaintiff, but not T. DeMien, for the error in processing work order 45685. (Ex. A - Wingo Dep. at  104:12-106:6, 149:10-151:1, 178:14-14-179:22; Ex. D - DeMien Dep. 12:21-13:20; 18:20-22, 19:6-9, 20:17-21:4; Ex. C - Lunt Dep. at 20:17-22, 101:4-7, 104:6-110:1; Ex. I; Ex. Q at ¶ 13; Ex. K.)

99.    In giving Plaintiff a one (1) day suspension, Defendant failed to follow its uniform progressive disciplinary procedure as Plaintiff is entitled to an oral warning as a first step disciplinary action and a written warning as a second step disciplinary action for work order errors falling within the 90-day framework. Defendant's progressive disciplinary policy states that Plaintiff should have received an oral warning for the October 4, 2007 alleged incident and a written warning for the October 5, 2007 alleged incident, as Plaintiff did not receive any other discipline within the 90 days preceding October 5, 2007. (Ex. A - Wingo Dep. at 178:14-179:23; Ex. C - Lunt Dep. at:39:12-40:4; Ex. L)

100.    Lunt placed Plaintiff on a three (3) day suspension without pay on November 8, 2008

for alleged key punch errors; however, Plaintiff keypunched everything correctly when he entered the order into the computer with no harm done to the company.  Despite Plaintiff correctly keypunching the order, M. DeMien issued Plaintiff a three (3) day suspension without ever showing Plaintiff what he did incorrectly. (Ex. A -Wingo Dep. at 104:6-106:6,158:15-159:6, 257:17-258:9; Ex. H; Ex. Q at ¶ 15-17; Ex. H.)

101.    In November 2007, M. DeMien further issued plaintiff another oral warning for leaving the warehouse door open, despite M. DeMien permitting other Warehousemen, like Cather, 27- years-old, to leave the warehouse door open all the time, around the clock. (Ex. A -Wingo Dep. at 225:2-226:13; Ex. C -Lunt Dep. at 20:17-22; Ex. K.)

102.    Lunt, with input from M. DeMien, terminated Plaintiff's employment solely on the basis for allegedly "falsifying company documents.".  Lunt accused Plaintiff of a category D violation. Ten (10) years previously, Plaintiff trained Lunt, as an employee of Defendant. (Ex. A -Wingo Dep at 133:4-8; 202:6-209:17; Ex. N.)

103.    Defendant has not articulated a cohesive definition of "falsifying company records," nor did Defendant instruct Warehousemen to what constituted "falsifying company records"; however, M. DeMein, who participated in the termination of Plaintiff's employment, believed that "falsifying company documents" was writing untrue figures on a company document.  Lunt informed Plaintiff, when terminating his employment, that "falsifying company documents" was "taking credit for work order completed by other Warehousemen." (Ex. A -Wingo Dep at 202:6-209:17, 272:16-273:10; Ex. B -Alvarez Dep. at 67:4-6; Ex. E -Bishop Dep. at 57:21-24; Ex. D -DeMien Dep. at 28:16-19; Ex. N.)

104.    Defendant purportedly based its decision to fire Plaintiff on two (2) daily production

51

logs that Plaintiff maintained on November 28, 2007 and November 29, 2007 in which Defendant alleged that Plaintiff included work orders that he did not complete, but were completed work orders by other employees. (Ex. A -Wingo Dep at 202:6-209:17; Ex. N.)

105.    Defendant requires warehouse clerks to maintain daily production logs in order for the Warehousemen to document all of the work that they performed on a shift, including work performed on orders that cannot be completed either because the order was defective or because he could not complete them within his shift times.  (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 187:22-188:6, 191:20-192:9, 195:15-19, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. Q at ¶ 21-25.)

106.    M. DeMien asserts that he found the alleged errors in Plaintiff's November 28, 2007 and November 29, 2007 production logs through a random check, which he does sometimes daily and other times weekly.  However, M. DeMien checks daily production logs every night. Prior to Plaintiff's termination, M. DeMien had been Plaintiff's foreman for the previous five (5) years, as M. DeMien was the foreman for the first and third shifts at the Schaumburg Plant. (Ex. D -DeMien Dep. at 12:19-13:20; 33:5-22; Ex. B -Alvarez Dep. at 96:23-97:22; Ex. C -Lunt Dep. at 111:20-112:21; Ex. J)

107.    Plaintiff had been completing daily production logs for the previous fifteen (15) years in the same manner, during which the process for completing the production logs basically stayed the same.  During his past fifteen (15) years of completing daily production logs, Plaintiff had never been accused of taking credit for the work of others, despite never doing anything different from how he completed his daily production logs on November 28, 2007 and November 29, 2007. (Ex. A -

Wingo Dep. at  64:15-:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-

214:22, 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6,

325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex.

Q at  ¶ 21-25.)

108.    M. DeMien believed that Plaintiff was documenting all of the work he performed on

his November 28-29, 2007 shifts in his daily production logs. (Ex. D -DeMien Dep. at 41:16-42:15,

Ex. C -Lunt Dep. at 72:10-73:22.)

109.    In the Schaumburg Plant, Warehousemen  include in their daily production logs, (a)

the work order number, (b) the pieces and weight, and (c) a general time to when the Warehouseman

began processing the work order.  Depending on their comfort level, every Warehousemen uses a

different system for recording the times that they spent processing work orders on their daily

production logs. Warehousemen customarily include incomplete work orders in their daily

production logs for such reasons as being provided a defective metal, or if the Warehousemen's shift

ended in the middle of processing the order.  If an incomplete work order is included in their daily

production log, Warehousemen would write notes to that effect to show that the work order was not

finished, so the next shift could complete processing the work order.(Ex. A -Wingo Dep. at  64:15-

:67:7, 104:6-106:6;, 180:16-184:17, 186:6-188:6, 191:20-198:23, 213:14-214:22, 237:6-239:2,

275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -

Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-34:2, 56:4-7, 67:4-6, 83:21-85:12; Ex. Q at  ¶ 21-25.)

110.    Lunt provided Plaintiff's training for how to complete daily production logs,

including Plaintiff's instruction to put a general time of when he began processing the work order,

and Lunt further instructed Plaintiff to include all the work he performed on a shift, which would

include partially completed work orders.  All Warehousemen included incomplete work orders in their daily production logs. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 196:18-197:18; 213:14-214:22, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. O.; Ex. S; Ex. Q at ¶ 21-25.)

111.    Beyond making comments in their daily production log that would suggest to the next shift's Warehouseman that their work order was incomplete, the customary procedure was that the Warehousemen would also tell the Warehouseman on the next shift by a note or verbally, if you could, that the order is incomplete, so the next shift's Warehouseman can finish the work order, but each Warehousemen had his own preference for doing so.  (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 196:18-197:18; 213:14-214:22, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. O.; Ex. S; Ex. Q at ¶ 21-25.)

112.    Plaintiff's November 28, 2007 daily production log was completed by Plaintiff exactly the way it is supposed to be done, and always done at the Schaumburg Plant.  Plaintiff's November 28, 2007 daily production log shows that all but two (2) work orders, were completed by Plaintiff.  As customarily done in the Schaumburg Plant, Plaintiff's November 28, 2007 daily production log indicates to the next shift's Warehouseman that work orders 466844 and 466883, which Lunt identified as the basis for Defendant's decision to fire Plaintiff, were incomplete to allow the next shift to complete the work orders. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-

184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 196:18-197:18; 213:14-214:22, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. O.; Ex. S; Ex. Q at ¶ 21-25.)

113.    Lunt alleged that Plaintiff took credit for completing work orders 466844 and 466883 on his November 28, 2007 daily production log.  However, as Plaintiff expressed to Lunt and M. DeMien during the meeting when his employment was terminated, Plaintiff's entry for work order 466844 notes that he was given a bad metal.  As Plaintiff was not able to complete the work order due to being provided a defective metal, which happens a lot, Plaintiff marked in the comments section, "quality of metal bad – Quarantine" to indicate that work order 466844 was incomplete. With respect to work order 466883, Plaintiff's entry in the November 28, 2007 daily production log shows that work order 466883  was incomplete, as the comments section states that it was "set up, it was stamped, it was boxed" to allow the second shift Warehouseman, Mario Alvarez, to complete the work order, which was a common practice at the Schaumburg Warehouse. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 196:18-197:18; 213:14-214:22, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. O.; Ex. S; Ex. Q at ¶ 21-25.)

114.    Plaintiff's November 28, 2007 daily production log also shows that Plaintiff had to finish the previous Warehousman's work order 466674.  Despite DeMien's review of Plaintiff's November 28, 2007 production log showing that Plaintiff completed the work order started by the previous shift's Warehouseman, Defendant has not fired any other employees for "falsifying

company documents" at the Schaumburg Plant in, at least, the past 5 ½ years. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 196:18-197:18; 213:14-214:22, 238:6-19, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. O.; Ex. S; Ex. Q at ¶ 21-25.)

115.    Plaintiff documented his work that he performed on November 29, 2007 in his daily production log in a manner that was commonly done in the Schaumburg Plant. Plaintiff's November 29, 2007 daily production log states that the two work orders, 467112 and 467012, were not completed by him. With respect to work order 467112, Plaintiff's entry shows that the work order was not completed, as the 2:25 time and the corresponding comment, "box," attributed to work order 467112, shows that he did not complete the work order, but only started it for the next shift's Warehouseman to finish. Plaintiff's entry for work order 467012 shows it was not completed as he wrote in the comment section that the "wrong size" was pulled, which was a mistake by another Warehouseman, so the work order could not be completed. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 213:14-214:22; 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18; Ex. P; Ex. Q at ¶ 21-25.)

116.    M. DeMien and Lunt allowed other substantially younger Warehousemen, like Herrera, 43 years old, working alongside Plaintiff in Plaintiff's exact same department under the exact same supervisors, to include incomplete orders on his daily production logs without discipline. Herrera, supervised by M. DeMien and Lunt, would take credit for at least one or two work orders

a day that he was not able to complete, including some Plaintiff completed for him. (Ex. A -Wingo Dep. at 64:15-:67:7, 104:6-106:6, 180:16-184:17, 187:22-188:6, 191:20-192:9, 195:15-19, 213:14-214:22; 237:6-239:2, 275:23-10, 294:16-24, 295:16-296:17, 298:23-299:5, 299:6-18, 300:8-301:6, 325:1-10; Ex. B -Alvarez Dep. at 27:4-22, 29:3-30:7, 31:3-15, 32:6-33:17, 33:22-34:2, 56:4-7, 67:4-6, 83:21-23, 84:1-18;  Ex. Q at ¶ 21-25; Ex. C -Lunt Dep. at 20:17-22; Ex. K.)

117.    Defendant further permitted other significantly younger Warehousemen to commit "falsification of company documents" and Category D violations without discipline or termination of employment as T. DeMien, 23 years old, and Michael Peronne, 34-years-old, and who later replaced Plaintiff, would leave their shifts at 12 a.m., despite being scheduled to work to 1 a.m., and John Barena, another supervisor at the Schaumburg Plant, would punch them out at 1 a.m., which should have resulted in them being "fired on the spot."  M. DeMien, who participated in the termination of Plaintiff's employment, was often witnessed punching T. DeMien in and out of the Schaumburg Plant to credit T. DeMien for times when he was not working. (Ex. B -Alvarez Dep. at 39:24-42:5; Ex. C - Lunt Dep. at 20:17-22; Ex. K.)

118.    T. DeMien, twenty-three (23) years old, was given numerous verbal and written warnings, in addition to a minimum of four (4) final warnings from August 2005 through December 21, 2006, which does not include T. DeMien's three (3) day suspension on May 5, 2005 for absenteeism.  Lunt, who terminated Plaintiff's employment, informed T. DeMien that his December 21, 2006 tardiness was grounds for termination of his employment, but instead only imposed upon him a three (3) day suspension. (Ex. C -Lunt Dep. at 20:17-22, 104:6-106:4; Ex. K; Ex. I.)

119.    Following Defendant's termination of Plaintiff's employment, Defendant replaced Plaintiff, fifty-five (55) years old, with Mike Perrone, a thirty-four (34) year old employee, who was

over twenty (20) years younger than Plaintiff. (Lunt Dep. at 20:17-22,127:6-24; Ex. K.)

Respectfully Submitted,

ROBERT G. WINGO, Plaintiff,

By:_____/s/Lisa Kane_____
      Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES, P.C.
120 S. LaSalle Street, Suite 1420
Chicago, IL 60603
(312) 606-0383
Attorney Code No. 06203093

58