IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT G. WINGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08:CV-00368 |
| ) | |
| THYSSENKRUPP MATERIALS NA, INC., ) | Honorable Samuel Der-Yeghiayan |
| d/b/a COPPER and BRASS SALES, INC. ) | Magistrate Judge Schenkier |
| ) | |
| Defendant. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]**

Apparently believing that the volume of a response will create the appearance of questions of fact to avoid summary judgment, Plaintiff Robert Wingo ("Plaintiff") has submitted a voluminous Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 28, "Pl.'s Mem." or "Plaintiff's Memorandum") and Response to Defendant's [Local] Rule 56.1 Statement of Facts (Dkt. No. 29, "Pl.'s Rule 56.1 Statement" or "Pl.'s Rule 56.1 Statement") that are replete with factual inaccuracies. Additionally, Plaintiff's Memorandum otherwise cites readily distinguishable authorities. Despite that tactic, Plaintiff's age discrimination claim against Defendant ThyssenKrupp Materials NA, Inc. d/b/a Copper and Brass Sales, Inc. ("Copper and Brass" or "the Company") lacks merit. In the words of the Seventh Circuit, Plaintiff has "simply collected the sum total of all the unpleasant events" in the last six months of his employment, "dumped them into the legal mixing bowl of this lawsuit, set the [ADEA]-blender to puree and poured the resulting blob on the court." *Volovsek v. Wisconsin Dep't of Agriculture, Trade and Cons. Protection*, 344 F.3d 680, 686 (7th Cir. 2003). Clearly, Copper and Brass's summary judgment motion should be granted.

---

[1] Defendant's Response to Plaintiff's Local Rule 56.1(b) Statement of Additional Facts, filed concurrently with this Reply Memorandum, is referred to as "Def.'s Rule 56.1 Resp."

I.   **PLAINTIFF'S MISSTATEMENT OF MATERIAL FACTS**

Plaintiff misstates numerous material facts in his Memorandum and Rule 56.1 Statement.[2] That effort includes improperly contradicting or disputing his own deposition testimony as well as undisputed testimony from other witnesses. A party seeking to avoid summary judgment may not contradict his deposition testimony to create a fact question. *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998). Nor may a party seek to contradict testimony of witnesses that is otherwise undisputed to avoid summary judgment. *Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 521 (7th Cir. 1988).

A.   **Plaintiff's Job Responsibilities and Performance**

Contrary to Plaintiff's assertion, his own testimony establishes that the general job classification of "warehouseman" consists of a number of discrete positions, each one with its own duties and responsibilities, including the fact that not all have to prepare daily production logs. (Def.'s Rule 56.1 Resp. ¶ 82; Wingo Dep. at 287-88; Lunt Dep. at 56-58.) Again contrary to his pleadings, Plaintiff also testified that he only held warehouse clerk-type positions for the last seven to nine years of his employment, including working at the rod, bar and wire ("RBW") station for the last two years of his employment. That testimony directly contradicts his assertion that he held a number of positions under the warehouseman classification in addition to his assignment at the RBW station during his last year at Copper and Brass. (Def.'s Rule 56.1 Resp. ¶ 82; Wingo Dep. at 46-47, 50-52.)

---

[2] Plaintiff's Rule 56.1 Statement fails to comply with L.R. 56.1(b). He has not stated the "concise response" mandated under that rule and has engaged in prohibited "evasive denials" and citations to legal argument, which subject his factual responses to being stricken by this Court. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527-29 (7th Cir. 2000).

While Plaintiff contends that Copper and Brass failed to comply with L.R. 56.1(a), none of his authorities support this position. *George v. Am. Airlines*, 378 F. Supp. 2d 870, 872 (N.D. Ill. 2005), is completely misplaced as nothing in that case suggests that a plaintiff simply disputing all of a defendant's facts thereby avoids summary judgment. Equally unavailing is *Daoust v. Abbott Labs.*, No. 05 C 6018, 2006 U.S. Dist. LEXIS 72064 at *4, *16 (N.D. Ill. Sept. 19, 2006), where the defendant submitted nine conclusory paragraphs of undisputed material facts pursuant to L.R. 56.1, but later included *ten pages* of detailed, comprehensive facts in its corresponding memorandum of law. *Id.* at *6-7. Here, Copper and Brass fully developed and provided detailed material facts in its L.R. 56.1 Statement, and only referenced those facts in its memorandum. Likewise, *McKay v. Town and Country Cadillac, Inc.*, No. 97 C 2102, 2002 U.S. Dist. LEXIS 2357 at *13 (N.D. Ill. Feb. 8, 2002), is inapposite. That court denied a plaintiff's motion to strike the defendant's responses to the plaintiff's statement of additional facts, and used the language that Plaintiff quotes (Pl.'s Rule 56.1 Resp. ¶ 10 n.4) as support for its denial of the motion.

Plaintiff references that Mark Pucalik ("Pucalik"), who was not his supervisor, (Def.'s Rule 56.1 Resp. ¶ 83) testified that Plaintiff performed in a similar manner as other warehousemen. Pucalik's cited testimony (*see* Pl.'s Mem. at 3) actually concerned the *manner* of how Plaintiff performed his duties, but not anything concerning the *accuracy* with which he processed work orders or prepared his daily production logs. (Pl.'s Rule 56.1 Statement ¶ 83; Pucalik Dep. at 21.)

While Mario Alvarez ("Alvarez") testified conclusorily about how he completed daily production logs, he never stated that he would list a completion time for orders that remained incomplete at the end of his shift. Rather, Alvarez testified he would be sure to note any work orders that were incomplete. Nor did Alvarez testify that he would misleadingly list incomplete work orders suggesting that he had completed them. (Def.'s Rule 56.1 Resp. ¶ 110; Alvarez Dep. at 31.)

### B.    Plaintiff's Daily Production Logs

It is clear that Randy Lunt ("Lunt") never told Plaintiff to put incomplete work orders on his daily production logs, as Plaintiff now claims, or that he indicated orders could be included without clearly noting their incomplete status. (Def.'s Rule 56.1 Resp. ¶ 105; Lunt Dep. at 62.) Mark DeMien ("M. DeMien") also did not testify that he believed Plaintiff was documenting work he performed on his November 28 and 29, 2007 daily production logs. (*See* Pl.'s Mem. at 13 n.21.) In fact, M. DeMien's testimony indicates he was hypothesizing that Plaintiff may have been commenting about issues he encountered with work orders, but expressed no belief about actual work performed. (Def.'s Rule 56.1 Resp. ¶ 108; M. DeMien Dep. at 41-42.) Regardless, Plaintiff received numerous training opportunities in how to complete work orders and daily production logs, including at least ten specific instances he testified to at his deposition. (Def.'s Rule 56.1 Resp. ¶ 110; Wingo Dep. at 91-96, 122-24, 191-92.) Furthermore, he was repeatedly disciplined about prior deficiencies in his paperwork.

### C.    Plaintiff's Alleged Comparables and Replacement

Plaintiff contends that M. DeMien's limited supervision of his son, Tyler DeMien ("T. DeMien"), when their shifts happened to overlap, violated the policy prohibiting family members from supervising each other. Plaintiff fails to recognize that this policy was enacted *after* T.

3

DeMien's hire date. (Def.'s Rule 56.1 Resp. ¶ 88; Lunt Dep. at 105-06.) For that matter, any violation of that policy is not probative of age discrimination.

Eluterio Herrera ("Herrera") was not disciplined in a manner inconsistent with the work rules as Plaintiff contends. (Pl.'s Mem. at 11.). Instead, at the time of his and Plaintiff's discipline on October 4, 2007, Herrera had not previously been disciplined for repetitive work order errors as had been Plaintiff. Instead, Herrera's prior discipline on July 10, 2007 was for not wearing safety glasses, and not another repetitive work order error discipline like Plaintiff received on June 22, 2007. Accordingly, the two individuals were at different stages of the disciplinary process for the offense of repeated work order errors. (Def.'s Rule 56.1 Resp. ¶ 96.)

Finally, Plaintiff is misleading on the replacement issue. His vacancy was initially filled temporarily by overtime from warehouse clerks on other shifts; one of whom was Arturo Flores, only three years younger than Plaintiff. (Def.'s Rule 56.1 Resp. ¶ 119; Def.'s Rule 56.1 Statement, Ex. J. ¶ 29.) Eventually, a seniority-based bidding procedure under the collective bargaining agreement resulted in another existing employee, Mike Perrone ("Perrone"), successfully bidding for and then assuming the RBW station duties. (Def.'s Rule 56.1 Resp. ¶ 119; Lunt Dep. at 125-27.)

### D.  Copper and Brass Work Rules and Disciplinary Procedures

Plaintiff claims that (1) Copper and Brass's work rules never permit termination for Category A offenses, including repetitive work order errors; and (2) that only offenses committed in the past 90 days may be considered in imposing discipline. Neither claim is supported by the plain language of the work rules, as they provide for a "4 step progressive disciplinary action process,"[3] and that "[v]iolations prior to the 90 consecutive calendar day framework may influence the action to be taken." (Def.'s Rule 56.1 Resp. ¶ 84; Def.'s Rule 56.1 Statement, Ex. L at 2.) The work rules do not provide that after 90 days the discipline is removed from an employee's record as Plaintiff suggests.

Although falsifying time cards is a Category D violation that subjects an employee to a first-offense termination (just like falsifying company documents), time card issues are a separate and distinct violation, so they are not the same as falsifying other general company documents. (Def.'s Rule 56.1 Resp. ¶ 84; Def.'s Rule 56.1 Statement, Ex. L at 8.) Plaintiff was

---

[3] For Category A violations, the four steps are: (1) oral warning; (2) written warning; (3) three-day suspension; and (4) termination. (Def.'s Rule 56.1 Statement, Ex. L at 2.)

4

also never disciplined for altering time records, nor is there evidence that Copper and Brass ever knew Plaintiff's alleged comparables did it.

## II. PLAINTIFF'S RULE 56.1 STATEMENT ADMITS CERTAIN FACTS[4]

Virtually every one of Plaintiff's responses to Defendant's Rule 56.1 Statement contains technical legal objections (e.g. lack of foundation, irrelevancy, incompleteness). A responding party who merely objects to the movant's L.R. 56.1(a) statement of undisputed material facts in such a manner without providing contradictory citations from the record violates L.R. 56.1. *Dinkins v. Varsity Contractors, Inc.*, No. 04 C 1438, 2005 WL 599979 at *1 n.2 (N.D. Ill. Mar. 10, 2005). (Exhibit A.) Under the circumstances, Plaintiff's Rule 56.1 Statement should be stricken in its entirety. *See* L.R. 56.1(b)(3)(C). Alternatively, those statements that consist simply of technical objections should be deeded admitted. (*See* Def.'s Rule 56.1 Statement ¶¶ 6, 12, 17, 20, 22, 29, 34, 55-58, 61-62, 72 and 78.) *See also,* L.R. 56.1(b)(3)(C)).

## III. RANDY LUNT'S AFFIDAVIT IS VALID EVIDENCE

Plaintiff's Memorandum characterizes Lunt's supporting affidavit as "supplementing" his testimony and thus creating a "credibility issue." (Pl.'s Mem. at 3 n.6, 15.) There is no basis for rejecting Lunt's affidavit. Plaintiff's reliance on *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004), is misplaced. In that case, the subject affidavit was rejected because it conclusorily stated that an audit the plaintiffs conducted was incorrect and provided no details or supporting contradictory documents. Lunt's affidavit does not suffer from any such deficiency.

*Fischer v. Avanade, Inc.*, 519 F.3d 393 (7th Cir. 2008), is also readily distinguishable and actually supports considering Lunt's affidavit. The court there expressed concern that the declarant had other prior opportunities to disclose the information in the declaration, but still held that a declaration filed at the summary judgment stage *could* be considered because it did not necessarily contradict the declarant's deposition testimony. *Id.* at 406-07. Moreover, the *Fischer* court noted that "where the deposition testimony is ambiguous or incomplete, . . . the

---

[4] Plaintiff has expressly admitted the following material facts in Defendant's Local Rule 56.1(a) Statement of Undisputed Material Facts ("Def.'s Rule 56.1 Statement"): Paragraphs 1, 18 and 19 in their entireties, and the portion of Paragraph 51 stating that his claim of discrimination began on August 30, 2007. Notably, Plaintiff has fully disputed 75 of the 79 facts contained in Defendant's Rule 56.1 Statement, despite Copper and Brass largely relying on Plaintiff's own testimony in support of most of those facts.

5

witness may legitimately clarify or expand upon that testimony by way of an affidavit." *Id*. at 406 (quoting *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999)). Lunt's affidavit does not contradict his prior testimony. Indeed, Plaintiff makes no such claim. Instead, this affidavit provides additional information about which he had not previously testified. Clearly, his affidavit should be considered.

### IV.     PLAINTIFF'S AGE DISCRIMINATION CLAIM LACKS MERIT

#### A.     Plaintiff Abandoned Any Claim Under the Direct Method of Proof

Plaintiff's Memorandum concedes his only evidence of age discrimination is circumstantial. (Pl.'s Mem. at 1.) He does not dispute Copper and Brass's argument that he has no direct evidence of age discrimination, which is fatal to any such claim. Nevertheless, Plaintiff posits that he has shown the requisite "convincing mosaic" necessary for a circumstantial claim under the direct method (Pl.'s Mem. at 11-13), but all of Plaintiff's supporting authorities had evidence of *some* statement that reflected discriminatory animus against the relevant protected group.[5] Plaintiff has no such evidence here. Accordingly, his claim may not proceed under the direct method as a "convincing mosaic" of circumstantial evidence either.

#### B.     Plaintiff Has Not Established a *Prima Facie* Case of Age Discrimination

##### 1.     Plaintiff Was Not Meeting Defendant's Legitimate Expectations

Plaintiff argues he satisfies the second prong of a *prima facie* case even while his own testimony establishes that nearly all of the discipline he received was unrelated to his age, but instead, the result of his mistakes. Plaintiff concedes that none of the 16 disciplines he received prior to August 30, 2007, Plaintiff's alleged starting date for the age discrimination, were the result of age discrimination. (Pl.'s Mem. at 3; Pl.'s Rule 56.1 Statement ¶ 51.) Plaintiff also admitted that the discipline he received on October 4, 2007 (written warning), November 8, 2007 (three-day suspension), November 14, 2007 (counseling memorandum) and November 30, 2007 (counseling memorandum) were not related to his age, and that he made the mistakes leading to

---

[5] *See Rudin v. Lincoln Land Cmty. Coll*, 420 F.3d 712, 722 (7th Cir. 2005) (race-based testimony); *Volovsek*, 344 F.3d at 690 (statement concerning pregnant women); *Venters v. City of Delphi*, 123 F.3d 956, 973-74 (7th Cir. 1997) (numerous statements regarding religion); *Shager v. Upjohn Co.*, 913 F.2d 398, 400-02 (7th Cir. 1990) (statements concerning age); *Taylor v. Brinker Int'l Payroll Corp.*, No. 00 C 3866, 2002 U.S. Dist. LEXIS 5702 at *3 (N.D. Ill. Mar. 28, 2002) (race-based statements) (Pl.'s Mem., Ex. D).

those disciplines. (Def.'s Rule 56.1 Statement ¶¶ 37, 39-41.)[6] He cannot now defeat Defendant's summary judgment motion by taking a directly contrary position. *Nowak*, 142 F.3d at 1003. This leaves only the following incidents that could support Plaintiff's age discrimination claim: (1) M. DeMien's alleged swearing on August 30, 2007; (2) Plaintiff's October 10, 2007 one-day suspension;[7] and (3) Plaintiff's termination. Plaintiff concedes that he did not catch the mistake resulting in his discipline on October 10, 2007, and that it was his responsibility to catch it. (Wingo Dep. at 149-50.) That discipline cannot therefore be considered discriminatory. Given Plaintiff's testimony, he clearly was not meeting the Company's legitimate expectations.

Plaintiff's authorities are distinguishable. *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827 (7th Cir. 2007), involved a plaintiff-franchisee who had identified similarly-situated franchisees as comparables. Plaintiff has not done so here, as discussed further in this Memorandum. Moreover, *Elkhatib* involved franchisees that the defendant *knew* were doing the same thing as the plaintiff, and yet treated him differently. *Id.* at 830. In this case, Plaintiff has produced no evidence that Company management was aware that any employees listed incomplete work orders on their daily production logs in the same manner as Plaintiff. (Def.'s Rule 56.1 Resp. ¶ 107.) In *Goodwin v. Bd. of Trs. of the Univ. of Illinois*, 442 F.3d 611, 619 (7th Cir. 2006), that plaintiff had a *clean discipline record* except for the single terminable offense. In contrast here, Plaintiff concedes that most of his lengthy discipline was warranted and not age-related.[8]

---

[6] Plaintiff's Rule 56.1 Statement Paragraphs 37 and 40-41 state that Plaintiff asserts these events are age-related, but Plaintiff's testimony clearly contradicts that assertion. (Wingo Dep. at 145-46, 161, 176-78.) Plaintiff's assertion that Tyler DeMien brought him the wrong material on October 10, 2007 is equivocal at best and does not address his admission that he was at fault for not correcting the mistake. (Wingo Dep. at 179.) Morover, Plaintiff later testified that it was *Lizardo Hernandez* who brought him this material and not T. DeMien. (Def.'s Rule 56.1 Resp. ¶ 98; Wingo Dep. at 218-19.)

[7] The discipline was issued on October 10, 2007, but Plaintiff refers to the date of the underlying incident, October 5, 2007. Regardless, both refer to the events described in the document attached as Exhibit Q to Defendant's Rule 56.1 Statement.

[8] Plaintiff's citation to *Fortier v. Ameritech Mobile Comms., Inc.*, 161 F.3d 1106 (7th Cir. 1998) is misplaced, as that case *affirmed* the district court's grant of summary judgment to the defendant.

Plaintiff's effort at distinguishing *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445 (7th Cir. 1998), is unavailing. Consistent with *Cengr*, Plaintiff's admissions establish that he was not meeting his employer's expectations. 135 F.3d at 452.[9]

Nor can Plaintiff establish he met Copper and Brass's expectations through bald assertions of another fellow employee, Mario Alvarez. (Pl.'s Rule 56.1 Statement ¶ 112.) "[G]eneral averments of adequate performance by [a plaintiff] or a co-worker are ordinarily insufficient to create a factual issue on summary judgment." *Sirvidas v. Commonwealth Edison, Co.*, 60 F.3d 375, 378 (7th Cir. 1995).

### 2. Plaintiff's Comparables Were Not Similarly Situated[10]

A discrimination plaintiff must prove that he was similarly situated to his allegedly comparable co-workers in terms of position, responsibilities, job performance and the reasons for, or amount of, any past discipline. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Plaintiff incorrectly asserts that all warehousemen performed the same job simply because they fall under one general job description. He makes that assertion despite his admission that there are different jobs with different responsibilities within the warehouseman classification. Even if two employees hold the same job title, however, it is the *duties* that they perform which are the relevant comparable characteristic. *Dunn v. Old Republic Life Ins. Co.*, No. 97 C 4994, 1999 WL 65051 at *3 (N.D. Ill. Feb. 5, 1999) (finding that the plaintiff was not similarly situated to another mail clerk because the plaintiff "had different job duties."). (Exhibit B.) In particular, Plaintiff admitted that warehousemen held different positions, such as side loaders and order clerks at other work stations. He also admitted that the employees in those positions performed separate and distinct responsibilities from him and were not similarly

---

[9] Equally distinguishable are Plaintiff's cases involving positive employment reviews received shortly before the employer's adverse employment action. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 390 (7th Cir. 2007) (noting that the plaintiff had "generally excellent" performance for two-and-a-half years of his employment before being issued five disciplinary actions); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 772-73 (7th Cir. 2006) (defendant could not use an employee's failing performance on a certification test as evidence that he was not meeting its legitimate expectations when he previously had two years of good performance reviews); *Applebaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 576 (7th Cir. 2003) (plaintiff received positive ratings until less than a year before her termination). Clearly, Plaintiff here had not received positive job reviews.

[10] Plaintiff's assertion that Copper and Brass did not produce requested disciplinary records of other warehousemen is incorrect. (Pl.'s Rule 56.1 Statement ¶ 68.) Plaintiff agreed to sign a protective order before Copper and Brass would produce any such records, but he never did so. (Exhibit B at 1.) He also never filed a motion to compel to obtain the records.

8

situated to him as he worked at the RBW work station during his last two years of employment.[11] (Def.'s Rule 56.1 Resp. ¶ 82; Wingo Dep. at 329.) Plaintiff's testimony is also consistent with that of plant manager Lunt. (Def.'s Rule 56.1 Resp. ¶ 82; Lunt Dep. at 56-58.)

Furthermore, Plaintiff's statement that he held numerous positions during his last year of employment at Copper and Brass directly contradicts his own testimony. (Pl.'s Rule 56.1 Statement ¶ 82.) Plaintiff specifically testified that he worked at the RBW for the last two years of his employment and held a similar packing position for five to seven years before that. (Def.'s Rule 56.1 Resp. ¶ 82; Wingo Dep. at 46-47.) The last time he was a machine operator or side load operator was in the 1980s, and his shipping and receiving experience was from approximately 1990 to 1995. (Def.'s Rule 56.1 Resp. ¶ 82; Wingo Dep. at 46-47.)

Contrary to Plaintiff's current claim, T. DeMien is not a comparable because, as Plaintiff testified, a side load operator like T. DeMien had different responsibilities than Plaintiff, including not having to complete and prepare daily production logs. (Def.'s Rule 56.1 Resp. ¶ 82; Wingo Dep. at 329.) Herrera is also not a comparable because he was not subject to the same discipline as Plaintiff, as described in further detail in Section IV.C.1.b below. Moreover, Plaintiff's claims regarding any younger employee's attendance issues, alleged time card reporting problems, sleeping on the job, and/or using cell phones during work hours are irrelevant because Plaintiff was not disciplined for doing these things.[12] Specific to T. DeMien, the reason that he was given a last-chance agreement following his continued absenteeism is because he *filed a union grievance* which his union pursued on his behalf. (Def.'s Rule 56.1 Resp. ¶ 118; Pl.'s Rule 56.1 Statement, Ex. I.) Plaintiff admittedly never challenged his pre-termination discipline through the grievance procedure provided in the collective bargaining agreement. (Def.'s Rule 56.1 Statement ¶ 34; Wingo Dep. at 228-29.) Nor can Plaintiff blame his mistakes in filling work orders on the side load operators, as even Plaintiff concedes that it was his responsibility to catch mistakes of the employees who brought him material.[13] (Wingo

---

[11] Plaintiff therefore lacks foundation for his bald assertion in response to Paragraphs 63 and 64 of Defendant's Rule 56.1 Statement that such jobs have the same responsibilities.

[12] Such items, even if Plaintiff was disciplined for doing them, are exactly the type of "minor" and "trivial" matters that do not rise to the level of unlawful discrimination. *Smart v. Ball St. Univ.*, 89 F.3d 437, 442 (7th Cir. 1996). The same analysis applies to being told not to leave warehouse doors open.

[13] This directly contradicts Plaintiff's labrythine denial of Defendant's Rule 56.1 Statement ¶ 9. Plaintiff has provided no evidence that Copper and Brass management knew of such mistakes by T.

Dep. at 315-16; Alvarez Dep. at 73-74.) Lastly, no other employee was similarly situated to Plaintiff with regards to the way he filled out his daily production logs on November 28 and 29, 2007, because no other employee had filled out their logs this way. (Def.'s Rule 56.1 Statement ¶ 76, Ex. J ¶ 16; Def.'s Rule 56.1 Resp. ¶¶ 112, 116-17, Ex. A ¶ 15.) M. DeMien also had no knowledge of such activity by other employees. (Def.'s Rule 56.1 Resp. ¶ 114, Ex. A ¶ 16.)

### 3. Plaintiff Was Not Replaced

Plaintiff's contentions concerning being replaced by Perrone are misleading. Plaintiff has not contested the fact that his job vacancy was filled through established job bidding procedures under the collective bargaining agreement. Nor has he disputed the fact that his vacancy was originally filled by employees at the RBW work station from the first and third shifts who worked overtime on a temporary basis -- and one of these was Arturo Flores, who was 51 years old at the time. (Def.'s Rule 56.1 Resp. ¶ 95; Wingo Dep. at 315-16; Alvarez Dep at 21-22.) Eventually, Perrone, another existing employee, successfully bid for the job under a seniority-based bidding process pursuant to the collective bargaining agreement. (Def.'s Rule 56.1 Resp. ¶ 119; Lunt Dep. at 125-27.) A terminated employee is not replaced, however, when existing union members cover the duties temporarily, and one of the union members is later put in the position permanently. *Parries v. Makino, Inc.*, 148 F. App'x 291, 298 (6th Cir. 2005) (Exhibit D). Lastly, the number of warehousemen at Schaumburg has actually *decreased* from 39 at the time of Plaintiff's hiring to 34 at the time Copper and Brass filed its motion for summary judgment, further disproving his assertion that the Company has hired a replacement. (Def.'s Rule 56.1 Statement ¶ 20; Ex. J ¶¶ 18-19.)

### C. Plaintiff Fails to Demonstrate Pretext

Plaintiff has not established that the reason for his termination was a pretext for unlawful discrimination.

### 1. No Disparate Treatment

#### a. Daily Production Logs

Plaintiff's claim that others prepared daily production logs in the same manner as him is baseless. Plaintiff was never instructed to list incomplete jobs on his daily production logs in a

---

DeMien. In fact, Plaintiff could not identify with certainty whether T. DeMien or Lizardo Hernandez delivered the wrong material that he failed to catch before packing it for shipment to the customer. (Def.'s Rule 56.1 Resp. ¶ 98; Wingo Dep. at 179-80, 218-219.)

manner to suggest he completed the work.  (Def.'s Rule 56.1 Resp. ¶ 110; Lunt Dep. at 62, 87-88, 90; M. DeMien Dep. at 47, 50-51.)  Plaintiff has also not provided evidence that he properly included incomplete work orders on his November 28 and 29, 2007 daily production logs or otherwise properly noted that the work was incomplete.  Those documents (Def.'s Rule 56.1 Statement, Ex. U) show that Plaintiff may have written comments, but there was nothing to indicate the subject orders were incomplete or that he was not taking credit for completing the work.  Statements such as "bad-quarantine metal," "quality of metal-rejected" and "fire drill" (November 28), and "box" (November 29) lack any indication that such orders were not completed by Plaintiff.  He otherwise noted the work order numbers, the number of pieces, and weight of the order; all of which suggested he completed those work orders.  Indeed, Plaintiff himself could not even determine whether the times he wrote on his daily production logs were the start or stop times for a particular order, further underscoring that his daily production logs did not disclose the incomplete status of the work orders.  (Def.'s Rule 56.1 Resp. ¶¶ 113, 116; Wingo Dep. at 315-19.)

Lunt's affidavit is consistent with the Company's discovery response that no other Copper and Brass employee has been fired for misrepresenting Company documents or records by listing incomplete work orders as completed on daily production logs in the last five-plus years. (Def.'s Rule 56.1 Statement, Ex. J ¶ 16.)  Further, during the years M. DeMien reviewed employees' daily production logs, he never saw logs that were prepared in the same manner as Plaintiff's logs on November 28 and 29, 2007 (indicating that Plaintiff completed work orders that he did not complete without indicating as such on the log).  (Def.'s Rule 56.1 Resp. ¶ 112, Ex. A ¶ 15.)  M. DeMien also had no knowledge of any other warehouse employee preparing logs in the manner that Plaintiff did, which is why no other employees were terminated for falsifying company documents for this same reason.  (Def.'s Rule 56.1 Resp. ¶ 114, Ex. A ¶ 16.)  Nor is Alvarez's testimony contradictory on that point.  When it happened that Alvarez was unable to fully complete an order, he noted that it was incomplete and did not list the completion time.  (Def.'s Rule 56.1 Resp. ¶ 110; Alverez Dep. at 31.)  He would list how much was completed and the portion that he could not complete.  (Def.'s Rule 56.1 Resp. ¶ 110; Alverez Dep. at 31.)  Thus, Alvarez did not misleadingly reference the work orders as completed by him.  In contrast, Plaintiff represented that he had completed particular work orders by listing a completion time, detailing the number of pieces and weight of the order, and failed to otherwise

11

indicate that the work was incomplete, contrary to Lunt's instructions. (Def.'s Rule 56.1 Resp. ¶ 116.)

Plaintiff also lacks any evidence that Copper and Brass management was aware of him, or any other employee for that matter, listing incomplete work orders on daily production logs in a similar manner as he did on November 28 and 29, 2007, that suggested the work was complete. Thus, contrary to Plaintiff's authorities, the facts here do not involve a situation where the employer knew that two employees had committed the same offense but disciplined them differently. Without knowledge by Copper and Brass management that other employees prepared daily production logs in the same manner as Plaintiff did on November 28 and 29, 2007, the Company cannot be accused of failing to discipline those unknown employees. (Wingo Dep. at 224; Alvarez Dep. at 89-90.)

Nor is Plaintiff's difference of opinion with Lunt over whether his actions constituted falsifying Company documents under the work rules sufficient to avoid summary judgment. *Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 829 (7th Cir. 2008) (holding that evidence an employer interpreted one of its policies too strictly or is "too hard on an employee" does not establish pretext, even if the policy is not perfectly consistent).

### b.     October 4, 2007 Discipline Involving Herrera

Plaintiff also claims that the Company deviated from its progressive discipline practices with younger employee Herrera when they were both disciplined on October 4, 2007. (Pl.'s Mem. at 9-10.) There is no merit to that assertion. Plaintiff admitted that this discipline was *not* discriminatory because of age. (Wingo Dep. at 145-46.) Further, Plaintiff's most recent discipline prior to that time was for the same offense that resulted in the October 4 discipline, repetitive work order errors. In contrast, Herrera's last discipline issued on July 10, 2007 was not for repetitive work orders but rather for failure to wear safety glasses, a different work rule. (Def.'s Rule 56.1 Resp. ¶ 96.) Thus, Herrera's first commission of repetitive work order errors distinguished him from Plaintiff under the Copper and Brass work rules.

### c.     Plaintiff's Cases Are Distinguishable

Plaintiff cites *Wright v. Efficient Lighting Sys., Inc.*, 63 F. App'x 937 (7th Cir. 2003), for the apparent proposition that once he merely identifies a proposed comparable employee in Herrera, "Defendant must explain this discrepancy to the jury," (Pl.'s Mem. at 10, quoting *Wright*, 63 F. App'x at 942) but Plaintiff omits the rest of the sentence stating: "(absent a non-

12

pretextual rationale)." *Wright*, 63 F. App'x at 942. The lack of pretext here is enough to distinguish *Wright*, but that case is also factually distinguishable as the plaintiff there had an identical, clean disciplinary record as a similarly situated co-worker, Plaintiff's record here was far from clean and not equivalent to his alleged comparators. *Id.* (Def.'s Rule 56.1 Statement, Ex. J ¶ 16.)

Nor does *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994), provide support for Plaintiff's claim. That court noted that "general averments of adequate performance are insufficient to create a factual issue on summary judgment even when corroborated by statements of supervisors or co-workers . . . ." *Id.* at 1460. In contrast, Plaintiff here has admitted that falsifying company documents is terminable as a first offense, he was disciplined appropriately for his numerous mistakes, and nearly all of his discipline admittedly was not imposed because of his age.

### 2. Plaintiff Cannot Demonstrate Pretext By Referencing Offenses He Was Never Disciplined For

Plaintiff cannot establish age discrimination based upon offenses he was not disciplined for himself. *Radue*, 219 F.3d at 617-18. Accordingly, his complaints regarding younger employees being able to use cell phones, sleeping on the job and having others punching their time cards are irrelevant, because Plaintiff was never disciplined for these things. (Def.'s Rule 56.1 Resp. ¶ 88; Wingo Dep. at 152.)

Although altering time cards or punching them for others is a Category "D" offense under Copper and Brass's work rules, that offense is a separate and distinct offense from falsifying company documents.[14] More significantly, Mario Alvarez's conclusory testimony is the only evidence on this issue, which does not establish that Copper and Brass management was aware of the situation.[15] (Def.'s Rule 56.1 Resp. ¶ 117; Alvarez Dep. at 40-41.)

---

[14] While Plaintiff's Memorandum references footnote 18 in its text, there is no such footnote.

[15] Nor is there evidence that Copper and Brass's management engaged in the same type of conduct (e.g. falsifying daily production reports) as Plaintiff, which is necessary to invoke the facts of *Ezell v. Potter*, 400 F.3d 1041 (7th Cir. 2005) (noting that the plaintiff's supervisor's lack of discipline for engaging in similar activities for which she fired him were probative evidence of unlawful discrimination).

### 3. Mark DeMien's Alleged Swearing Does Not Establish Pretext

Plaintiff alleges that he was subject to age discrimination after the incident on August 30, 2007 when M. Demien allegedly swore at him, as well as disciplined both Plaintiff and fellow employee Pat Bishop ("Bishop"), who was then age 30, for standing around and talking. (Def.'s Rule 56.1 Resp. ¶¶ 87-88; Pl.'s Mem. at 3.) Plaintiff's allegations that M. DeMien swore at him, which were never substantiated by Lunt's investigation, are not evidence of age discrimination. Even if M. DeMien swore as Plaintiff claims, there is nothing that suggests age discrimination.[16] Plaintiff and the younger Bishop were verbally counseled for the same reason, further negating any inference of age bias. (Def.'s Rule 56.1 Resp. ¶ 88; Lunt Dep. at 48.) In addition, a personality conflict with M. DeMien is not evidence of age discrimination, as even "unfortunate and destructive" conflicts do not establish an actionable discrimination claim. *Andre v. Bendix Corp.*, 774 F.2d 786, 798 (7th Cir. 1985). Finally, M. DeMien's supervision and alleged favoritism of his son, T. DeMien, also does not prove age discrimination. *E.E.O.C. v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528196 at *6 n.4 (N.D. Ill. July 12, 1999). (Exhibit E.)

Further undermining Plaintiff's claim is the fact that other employees testified that M. DeMien yelled and swore at everyone in the warehouse, not just Plaintiff or other older workers. (Bishop Dep. at 63.) Moreover, Plaintiff had worked with M. DeMien for several years prior to the alleged incident without a problem, did not have a similar problem with M. DeMien afterwards, and did complaint of harassment under the Company's harassment policy following this alleged incident. (Def.'s Rule 56.1 Resp., Ex. A ¶ 19; Wingo Dep. at 27, 34, 59.) Certainly, this underscores the insignificance of this so-called evidence.

### 4. Defendant's Termination Explanation Has Not Shifted

Finally, Plaintiff asserts that Copper and Brass's explanation for his termination has shifted. Contrary to that contention, it is clear that the Company has not wavered from the original reason stated to Plaintiff for his termination -- "falsifying company records/documents on both 11/28/07 and 11/29/07 [by taking] credit for completing work orders on his 'daily

---

[16] Plaintiff's dearth of evidence concerning age-related statements makes *Mantia v. Great Books Foundation*, No. 01 C 8971, 2003 U.S. Dist. LEXIS 16484 at *22-24 (N.D. Ill. Sept. 17, 2003), distinguishable on this fact alone, as the *Mantia* plaintiff cited a plethora of age-related statements.

production log' which were completed by other employees." (Def.'s Rule 56.1 Statement, Ex. W.)

Plaintiff's authorities are again inapposite. For instance, *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1046-47 (7th Cir. 2000), included a trial record that was "replete with . . . contradictory statement to the jury" when compared to testimony given by the same individual at deposition. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1040 (7th Cir. 1993), likewise, included differing testimony from various members of company management about the policy prohibiting dating that was used to justify the plaintiff's termination.[17] No such discrepancy is present here. Even Plaintiff's testimony confirms that Lunt's original reason for his termination was falsifying company documents (specifically, Plaintiff's November 28 and 29, 2007 daily production logs). (Def.'s Rule 56.1 Resp. ¶ 104; Wingo Dep. at 21.) Lastly, *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 851 (7th Cir. 2007), is a case involving no fewer than *five* separate reasons that the defendant gave for the plaintiff's termination over time. Copper and Brass's termination explanation has not wavered since the time of Plaintiff's termination, which actually supports a finding that its explanation is *not* pretextual. *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003).

## V.   CONCLUSION

Based on the foregoing, Copper and Brass's Motion for Summary Judgment should be granted.

Respectfully submitted,

DATED:  August 8, 2008      THYSSENKRUPP MATERIALS NA, INC.,
d/b/a Copper and Brass Sales, Inc.


By:    /s Russell S. Linden
         One of its Attorneys

Russell S. Linden                              Jeffrey S. Piell, Esq.
Admitted *pro hac vice*                 Quarles & Brady LLP
660 Woodward Avenue, Suite 2290   500 West Madison Street, Suite 3700
Detroit, Michigan 48226                   Chicago, IL 60661
(313) 465-7466                                (312) 715-5000

---

[17] Nor does Plaintiff provide any citation for his contention that Defendant's Memorandum claimed that he did not complete *any* of the work orders on his November 28 and 29, 2007 daily production logs. (Pl.'s Mem. at 14.)

15

## *CERTIFICATE OF SERVICE*

RUSSELL S. LINDEN states that on August 8, 2008, he caused a copy of this **Reply Memorandum in Support of Defendant's Motion for Summary Judgment,** along with this **Certificate of Service**, to be served via the electronic notification system of the United States District Court for the Northern District of Illinois Eastern Division to the e-mail address listed below:

Lisa Kane, Esq.
Lisa Kane & Associates, P.C.
lisakane@sbcglobal.net

                                                             s/Russell S. Linden
                                                            RUSSELL S. LINDEN

DETROIT.3242307.1