# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

C

Dinkins v. Varsity Contractors, Inc.
N.D.Ill.,2005.

United States District Court,N.D. Illinois, Eastern Division.
Anthony DINKINS, Plaintiff,
v.
VARSITY CONTRACTORS, INC., Defendant.
**No. 04 C 1438.**

March 10, 2005.

Penny Nathan Kahan, Michael John Merrick, Kristin Meridith Case, Penny Nathan Kahan and Associates, Ltd., Chicago, IL, for Plaintiff.
Cathryn Elizabeth Albrecht, Christine Patricia Shields, Leslie Jennifer Johnson, Jackson Lewis LLP, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

GETTLEMAN, J.

*1 Plaintiff Anthony Dinkins has filed a six-count first amended complaint, alleging discrimination and retaliation in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601*et seq.*, violations of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161*et seq.*, retaliation in violation of the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1*et seq.*, and breach of contract.

Defendant Varsity Contractors, Inc. ("Varsity") has moved for summary judgment pursuant to Fed.R.Civ.P. 56 on four counts: Count I (interference with plaintiff's rights under the FMLA); Count II (retaliation in violation of the FMLA); Count III (breach of contract), and Count VI (retaliation in violation of the IWCA). For the reasons discussed herein, defendant's motion for partial summary judgment is granted in part and denied in part.

*FACTS*[FN1]

FN1. Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits, are not in dispute.

Plaintiff Anthony Dinkins was a central plant technician at Lincolnwood Town Center ("Lincolnwood") in Lincolnwood, Illinois from April 1, 2001, until he was terminated on March 26, 2002. Plaintiff performed general maintenance and repair services at Lincolnwood. Defendant is a third-party provider of total facility maintenance services at Lincolnwood, pursuant to a service agreement with Lincolnwood's owner, Simon Property Group ("Simon"). Defendant employs its own staff at Lincolnwood, and hired plaintiff. In February and March 2002, defendant employed 48 employees at work sites within a 75 mile radius of Lincolnwood. Simon employs more than 10 employees at Lincolnwood.[FN2]

FN2. The court notes that paragraph 3 of plaintiff's L.R. 56.1 statement states that, "Simon employs more than ten employees at the Lincolnwood Mall."Defendant's L.R. 56.1 response objects to this statement on the grounds that it lacks foundation, is inconsistent with plaintiff's prior deposition testimony, and is irrelevant because Simon is not a party to the instant action. Defendant neglects, however, to deny the statement as required by L.R. 56.1, and the court therefore treats paragraph 3 as admitted. *See*L.R. 56.1(a) & (b)(3)(B); *McGuire v. United Parcel Service,* 152 F.3d 673, 675 (7th Cir.1998)("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); *Spencer v. Office of the Illinois Attorney General,* 2002 WL 31898190, at

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

*1 (N.D.Ill.Dec.31, 2002)("The only two acceptable responses to a statement of fact are 'admit or deny.' "). Because defendant has admitted that Simon employs more than ten employs, the court need not address defendant's argument that the court disregard paragraph 3 of plaintiff's declaration, which states that Simon "employs more than ten mall employees."

During plaintiff's employment with defendant, Terry Schoen ("Schoen") was the operations director at Lincolnwood, Thom Craner ("Craner"), defendant's regional operations manager, was Schoen's immediate supervisor, and Dorothy Ricks ("Ricks") was defendant's director of legal and benefit services. In 2002, John Sabeno ("Sabeno) was employed by Simon as the mall manager at Lincolnwood. According to defendant, Simon does not hire, discipline, or terminate defendant's employees, pay their salary or provide employee benefits, or keep employment records regarding defendant's employees. Ricks testified that pursuant to the service agreement between defendant and Simon, Simon had "the right to require any employee that [it] deem[s] as undesirable to be on the property removed from the property.[FN3] Sabeno and Schoen regularly inspected the Lincolnwood property. Plaintiff contends that Sabeno commented on defendant's employees' job performance and directed their work "on a regular basis by telling the individual employees what jobs to do." Defendant denies that Sabeno directed defendant's employees' work, and asserts that Sabeno spoke to defendant's managers about any concerns he had about defendant's employees' work and spoke directly with Schoen about any operational issues at Lincolnwood.

FN3. The court notes that neither party has provided a copy of the agreement between Simon and defendant.

Defendant maintained an FMLA policy. According to defendant, during the period plaintiff was employed, it posted a notice at Lincolnwood that explained employees' rights under FMLA. The notice, a copy of which is attached to Ricks's declaration, states that, "Employees are eligible if they have worked for their employer for at least one year, and for 1,250 hours over the previous 12 months, and if there are at least 50 employees within 75 miles." Plaintiff asserts that there was no FMLA notice posted at Lincolnwood while he was employed.

*2 Defendant gave plaintiff an employee handbook when he was hired in 2001. Plaintiff signed a form acknowledging receipt of the handbook. The acknowledgment form states, "[T]he employee handbook is for your use and source of information about the company and your job. It is not a contract of employment, express or implied." In October 2001, plaintiff was placed on a performance improvement plan and received only a partial pay raise because of his negative attitude and difficulty following direction from his supervisors. Plaintiff later received a raise, but defendant claims that his performance subsequently declined.

Prior to working for defendant, plaintiff worked for Southeast Services Corporation, which also provided maintenance services for Lincolnwood. In or around February 1999, plaintiff was in a work-related explosion at Lincolnwood in which he suffered severe burns to his face and body and a herniated disk. After the explosion, plaintiff was unable to work for two to three months. As a result of the explosion plaintiff experienced severe emotional distress, was diagnosed with post traumatic stress disorder, and was treated by a psychiatrist.

According to plaintiff, on February 19 or February 20, 2002, he aggravated the previously herniated disc in his back while doing repetitive heavy lifting at work. Plaintiff wrote a letter to Schoen, dated February 20, 2002, stating that he had injured his back, and that he had had an appointment with his doctor on February 19, 2002 for "back complications," and that he had another appointment scheduled for February 26, 2002. Plaintiff's letter did not state that he needed time off work or that he had suffered a work-related injury. Plaintiff left the let-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760  
**2005 WL 599979 (N.D.Ill.)**

Page 3

ter in Schoen's mailbox. Schoen was on vacation for several days, and did not see plaintiff's letter until some time during the week of February 25, 2002. According to Schoen, he did not contact plaintiff after he read the February 20 letter because plaintiff stated he had an upcoming doctor's appointment, and Schoen thought plaintiff would bring him a doctor's note after the appointment.

Defendant revised its employee handbook in 2002.FN4In February 2002, Schoen distributed copies of the revised handbook to defendant's employees at Lincolnwood, and advised them that they would not receive their next paycheck until they signed and returned the Handbook acknowledgment forms. Plaintiff did not return the form. On the evening of February 22, 2002, plaintiff went to Lincolnwood to pick up his paycheck. Norman George ("George"), an assistant operations director for defendant and plaintiff's day-to-day supervisor, told plaintiff that he could not have his paycheck unless he signed an acknowledgment form that he had received and understood the terms of the Handbook. According to plaintiff, the Handbook contained substantial changes about which he had questions, and the only person who could answer those questions was Schoen, who was not available on February 22, 2002. Plaintiff did not sign the form and did not ask George any questions about the Handbook. Plaintiff became angry, yelled at George, and used vulgar language. Plaintiff alleges that George became angry and hostile toward plaintiff.

> FN4. The court notes that neither party distinguishes between the 2001 and 2002 handbooks, but each party attaches a copy of the 2002 handbook to their L.R. 56.1 statements. The court assumes that all references, unless otherwise specified, are to the 2002 handbook (the "Handbook").

*3 Following this exchange, plaintiff left George's office and called the police, who arrived and ordered George to give plaintiff his paycheck. George gave plaintiff his paycheck, and suspended him for the rest of the weekend for his conduct and his refusal to sign the acknowledgment form. George instructed plaintiff to return to Lincolnwood on February 25, 2002, to talk to Schoen. According to plaintiff, this incident, coupled with his back injury, caused him emotional distress. After the police officer left, Sabeno overheard plaintiff complaining to a co-worker and told George, who explained the situation. Sabeno told George that he wanted plaintiff off the Lincolnwood property. Plaintiff left Lincolnwood. George called Schoen later that night, and told him about plaintiff's behavior and Sabeno's request that plaintiff leave the Lincolnwood property. When Schoen returned to work on February 25, 2002, Sabeno told Schoen that he felt threatened by plaintiff's actions on February 22 and that he did not want plaintiff on Lincolnwood property. Plaintiff did not return to Lincolnwood after February 22, 2002.

Plaintiff wrote Schoen a letter dated February 22, 2002, which he faxed or mailed to Schoen. The letter stated, in part, that plaintiff was under a doctor's care for a back injury. Plaintiff also stated that "due to working in a hostile work environment [and] not giving me my paycheck when I asked [and] mistreating my person by John Sabino (sic) [and] Norman George [and] Doug George I am fearful for my well being. You are also advised that I (Anthony) am also under psychiatric care and unavailable for work until notified and released by my doctors (back) [and] psychiatrist."Plaintiff also sent Schoen a fax on February 25, 2002, stating that he had injured his back while working and that he was now also under the care of a psychiatrist.

On March 5, 2002, plaintiff faxed two doctor's notes to Schoen. The first note, dated March 4, 2002, was from a psychiatrist, Dr. Goforth. It stated that plaintiff was under psychiatric care and could not return to work until April 4, 2002. The other note was from Dr. Wetzel at the University of Chicago Spine Center, and stated that plaintiff was, "Temp. 100% disabled. Needs PT." Defendant argues that Dr. Wetzel's note did not state that plaintiff required time off work or that he was re-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760  
**2005 WL 599979 (N.D.Ill.)**

Page 4

stricted in his daily activities. Plaintiff claims that because of his back injury he was not able to work until May 13, 2002, at which point he filed for unemployment.

In late February or early March 2002, Schoen called Craner, his supervisor, and advised him of plaintiff's refusal to sign the Handbook acknowledgment form, the paycheck incident on February 22, 2002, and the correspondence that Schoen had received from plaintiff. Schoen also forwarded copies of plaintiff's February 20, 22, and 25 letters to Craner. Craner instructed Schoen to forward the letters to Ricks, and to discuss the possibility of terminating plaintiff with her. On March 4, 2002, Schoen faxed plaintiff's letters of February 20, 22, and 25 to Ricks, and wrote on the fax cover sheet that he wanted to terminate plaintiff. On March 5, 2002, Schoen faxed Ricks the two doctor's notes that he had received from plaintiff earlier that day. Ricks testified at her deposition that she did not see these doctor's notes until some point between March 19 and March 26, 2002. At the request of defendant's human resources department, Schoen completed a first report of work injury for plaintiff on or about March 19, 2002.

*4 Plaintiff asserts that he believed that he was entitled to FMLA leave and requested that defendant provide him with FMLA paperwork numerous times between late February and March 2002, but that defendant initially refused to send plaintiff his FMLA paperwork. Defendant denies that it was aware that plaintiff was attempting to request FMLA leave in any of his correspondence with Schoen. On March 18, 2002, plaintiff called defendant's human resources department and spoke to Kathy Figg ("Figg"). Plaintiff alleges that he asked Figg to send him his FMLA paperwork. Figg spoke to Glenn Yearsley ("Yearsley"), a human resources representative who worked under Ricks' supervision, about her conversation with plaintiff. Ricks was not in the office on March 18, and the next day Yearsley told Ricks about Figg's telephone conversation with plaintiff. Yearsley told Ricks that he was confused about plaintiff's statements because defendant had no record of a workers' compensation claim by plaintiff, and did not understand why plaintiff was requesting FMLA leave. Ricks instructed Yearsley to "look into it." Ricks never told Schoen about Figg's telephone conversation with plaintiff. According to defendant, although it had already decided to terminate plaintiff, Ricks decided it was better "not to take a chance," and faxed and mailed FMLA paperwork to plaintiff on March 22, 2002. Plaintiff never returned the FMLA paperwork.

In early March 2002, Ricks called Schoen to talk to him about plaintiff, and told Schoen that either she or another member of the human resources department would look into the matter and contact him. Defendant asserts that Yearsley contacted Schoen "shortly thereafter," and Schoen testified that he believed that he spoke to Yearsley in early March and told Yearsley that he wanted to terminate plaintiff for refusing to sign the Handbook acknowledgment form. Plaintiff contends that Yearsley was not assigned to investigate the matter until after plaintiff's telephone conversation with Figg on March 18, 2002. According to Ricks, Yearsley investigated the events surrounding plaintiff's refusal to sign the Handbook, but plaintiff argues that Yearsley investigated plaintiff's request for FMLA leave only, and did not investigate the February 22 incident. Yearsley testified that he had several conversations with Schoen and spoke with plaintiff's medical providers, but that he could not recall if he spoke to George or the precise scope of his investigation. Yearsley testified that he called plaintiff at least three times during the week of March 19, 2002, but that plaintiff did not return his calls. Plaintiff denies that he was contacted by defendant.

At the completion of his investigation, Yearsley reported his findings to Ricks and told her that defendant had grounds to terminate plaintiff. Ricks subsequently approved plaintiff's termination. During the week of March 19, 2002, Schoen prepared plaintiff's termination letter with assistance from

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760  
**2005 WL 599979 (N.D.Ill.)**

Page 5

Craner, Yearsley and Ricks. The letter, signed by Schoen and dated March 19, 2002, was sent to plaintiff by certified mail on March 26, 2002. The letter stated in part that, "By refusing to sign the acknowledgment page, it is considered that you are also unwilling to abide by the company policies and procedures outlined in the Handbook." The letter also stated that plaintiff was placed on a performance improvement plan in October 2001, that his "continual refusal to follow direction has lead to a hostile work environment," and that the mall manager had "expressed his concern" and asked that plaintiff not be allowed on mall property. The letter's concluding sentence advised plaintiff who to contact in defendant's human resources department to discuss his worker's compensation claim and "continue in the filing process," and provided a phone number.

*5 In late March or early April 2002, plaintiff filed a workers' compensation claim. In November 2002, plaintiff settled his workers' compensation claim, and all of his medical bills were paid. On or about April 2, 2002, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights, alleging that defendant discriminated against him on the basis of race, national origin, and disability. On November 7, 2002, plaintiff signed a settlement agreement with defendant and dismissed the Illinois Department of Human Rights charge.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial, *See* Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum-Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *See* *Fisher v. Transco Services-Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir.1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Stewart v. McGinnis,* 5 F.3d 1031, 1033 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252.

## DISCUSSION

I. Interference with plaintiff's rights under the FMLA (Count I)

In Count I of his first amended complaint, plaintiff alleges that defendant interfered with his rights under the FMLA by failing to provide plaintiff with FMLA paperwork in a reasonable amount of time, and by denying plaintiff's right to FMLA leave. Defendant has moved to for summary judgment on Count I, arguing that plaintiff was not an "eligible employee" under the FMLA because defendant did not employ the requisite number of employees, and that defendant did not have sufficient notice that plaintiff was entitled to FMLA leave.[FN5]

> FN5. Defendant argues that the court should not consider two documents from the U.S. Department of Labor regarding plaintiff's FMLA claim that were attached

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

Page 6

to plaintiff's L.R. 56.1 statement because they contain hearsay, indicate a lack of trustworthiness, and have a prejudicial effect that substantially outweighs their probative value. Without reaching the merits of defendant's argument, the court did not consider these documents.

*FMLA eligibility*

The FMLA provides "eligible employees" with twelve weeks of unpaid leave during any 12 month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."29 U.S.C. § 2612(a)(1)(D); *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 951 (7th Cir.2004). The FMLA also provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" to an "eligible employee." 29 U.S.C. § 2615(a)(1). To be an "eligible employee," an employee must establish that he was employed for at least 12 months and for at least 1,250 hours of service in the 12 months immediately preceding the commencement of his leave. 29 U.S.C § 2611(2); 29 C.F.R. § 825.110(a). An employee is not eligible, however, if he "is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50,"29 USC § 2611(2)(B); *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1136 (7th Cir.2001). For the purposes of calculating the number of employees working at a site, only those employees on the employer's payroll as of the date of the request for FMLA leave should be counted. *Bliss v. Jennifer Convertibles, Inc.*, 2003 WL 22239655, at *14 (N.D.Ill. Sept.29, 2003)(citing 29 C.F.R. § 825.105(b)-(d)).

*6 Plaintiff in the instant case alleges that he requested FMLA leave in late February or early March 2002. It is uncontested that at that time defendant employed only 48 employees within a 75 mile radius of Lincolnwood. Although he does not allege that Simon was a joint employer or name Simon as a defendant in his first amended complaint, plaintiff argues in his response to defendant's motion for partial summary judgment that he was eligible for FMLA leave because defendant and Simon are joint employers, and that together they employed more than 50 employees within 75 miles at the time plaintiff requested leave.[FN6] The question then is whether defendant and Simon are joint employers under the FMLA.

> FN6. The court notes that defendant is correct that plaintiff does not specifically allege that Simon employed at least two employees at the time plaintiff requested leave (as required to reach the minimum of 50 employees of allegedly joint employers). However, Simon clearly had at least one employee (Sabeno) and defendant does not deny that Simon had more.

The Department of Labor regulations construing the FMLA state that where "two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities."29 C.F.R. § 825.106(a). The regulation further provides that determination of whether a joint employment relationship exists requires analysis of several factors:

Where the employee performs work which simultaneously benefits two or more employers ..., a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between employers to share an employee's services or to interchange employees;

(2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,

(3) Where the employers are not completely disassociated with respect to the employee's employment

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760  
**2005 WL 599979 (N.D.Ill.)**

Page 7

and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 825.106(a)(1)-(3).

Whether a joint employment relationship exists "is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality." 29 C.F.R. § 825.106(b).

The regulations do not provide much guidance to assist courts in defining the parameters of a joint employment relationship, and there is little case law interpreting the question of joint employment under the FMLA. The Seventh Circuit has not addressed the definition of a joint employer within the FMLA context. The only circuit the court can identify that has addressed the issue, the Ninth Circuit, looked to case law and regulations from the Fair Labor Standards Act ("FLSA"). *See Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir.2004). Only a handful of district courts in this district or elsewhere have considered the issue, and they have also consulted the case law interpreting the FLSA. *See Sherry v. Protection, Inc.*, 981 F.Supp. 1133, 1135 (N.D.Ill.1997); *Schubert v. Bethesda Health Group, Inc.*, 319 F.Supp.2d 963, 970 (E.D.Mo.2004); *Harbert v. Healthcare Services Group, Inc.* 173 F.Supp.2d 1201, 1105 (D.Colo.2001). As the Ninth Circuit noted in *Moreau*, the FMLA employs a number of definitions from the FLSA, and the FMLA joint employer regulation, 29 C.F.R. § 825.106, "mirrors the wording of the FLSA joint employment regulations [29 C.F.R. § 791.2(b) ]." *Moreau*, 356 F.3d at 946. The court therefore looks to FLSA case law regarding joint employment.

*7 The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). Whether an entity is an employer for the purposes of the FLSA turns on the "economic reality" of the working relationship. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). The determination of an employment relationship "does not depend on ... isolated factors but rather upon the circumstances of the whole activity." *Rutherford*, 331 U.S. at 730. Neither party directs the court to a particular test or set of factors to determine whether a joint employment relationship existed between Simon and defendant, and the Seventh Circuit has not established such a test for either the FMLA or FLSA context.

There is a split among the circuits as to the precise factors to consider in determining joint employment under the FLSA. Some courts, including the First Circuit and the Ninth Circuit, have applied a four-factor test. *Baystate Alternative Staffing, Inv. v. Herman*, 163 F.3d 668, 675 (1st Cir.1998); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983). Others, including the Second Circuit, have established a less restrictive six-factor test drawn from the Supreme Court's decision in *Rutherford*, *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 69 (2nd Cir.2003). The Seventh Circuit has applied some of the *Rutherford* factors in determining whether an entity in an employer under the FLSA, but it has not done so in the context of joint employment. *See Secretary of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir.1987). The only district court in this district that has addressed joint employment under the FLSA adopted the six-factor test used in *Zheng*. *Vega v. Contract Cleaning Maintenance, Inc.*, 2004 WL 2358274, at *6 (N.D.Ill. Oct.18, 2004). The court has considered both tests, and determined that for the purposes of the instant case the court would reach the same result under either the *Bonnette* four-factor test or the *Rutherford* six-factor test. The court therefore employs the more general "economic realities" test argued by the parties.[FN7]

> FN7. Defendant relies on *Moreau*, which uses a four-part test, but does not systemat-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

Page 8

ically apply the factors to the facts of the instant case.

Defendant asks to court to following the reasoning of *Moreau,* in which the Ninth Circuit affirmed summary judgment against the plaintiff who asserted FMLA claims and argued that his employer, an airline, was the joint employer of employees of the ground handling, catering and cargo handling companies that provided services to the airline's planes. 356 F.3d 942. The defendant in *Moreau* was the secondary employer and had limited supervision over the service companies' employees, including providing specific information about how to clean its planes and checking the planes after the service employees cleaned them. *Id.* at 948. The defendant in *Moreau* did not hire, fire or discipline the employees of the service companies, and communicated its complaints about the service companies' employees to their direct supervisors. *Id.* The Ninth Circuit concluded that such limited supervision over the service employees' work was not sufficient control for the companies to be joint employers. *Id.*

*\*8* *Moreau,* however, is distinguishable from the instant case because it is undisputed that Simon had the ability to bar defendant's employees from Lincolnwood, their place of employment. The power to fire an employee is one of the hallmarks of the control possessed by employers. *SeeLauritzen,* 835 F.2d at 1536 (finding that defendants were employers under the FLSA because they exercised control over migrant farm workers, and noting that the employees believed that the defendants had the right to fire them); *Schreiber v. Idea Engineering & Fabricating,* 2003 WL 1338474, at \*2 (N.D.Ill. Mar.18, 2003) (finding that the defendant exercised control over the plaintiff, and noting that defendant had the right to terminate employees). Plaintiff here essentially argues that Simon had the *de facto* ability to fire him by barring him from Lincolnwood. Defendant does not dispute that during the February 22 incident Sabeno told George that he wanted plaintiff off the Lincolnwood property, and that George relayed Sabeno's message to Schoen later that evening. Plaintiff was immediately suspended from Lincolnwood and subsequently terminated. Plaintiff has thus raised a triable issue of fact whether Simon had the ability to fire defendant's employees.

Plaintiff argues that Simon also controlled defendant's employees' work assignments and performance in other ways, and asks the court to follow the reasoning of *Harbert v. Health Care Services Group,* 173 F.Supp.2d 1101, 1106 (D.Colo.2001). The *Harbert* court applied the economic realities test and found triable issues of fact whether a secondary employer was a joint employer with the defendant, the primary employer, under the FMLA. Plaintiff argues that like the manager in *Harbert,* Simon, through Sabeno, "controlled defendant's employees by assigning, directing, and supervising their tasks and duties."The court agrees with defendant that the plaintiff in *Harbert* presented more evidence of the secondary employer's control than plaintiff has presented in the instant case, but finds that plaintiff here has proffered some evidence that Simon controlled defendant's employees. George and Schoen testified at their depositions that Sabeno discussed defendant's employees' performance with Schoen and George, and that at times Sabeno directed defendant's employees to perform certain tasks at Lincolnwood. Taken together, albeit it a bit a thin, the evidence offered by plaintiff demonstrates genuine issues of material fact whether Simon controlled the job responsibilities and performance of defendant's employees, and therefore whether Simon and defendant were joint employ- ers.

*FMLA benefits*

Defendant argues that even if the court finds that the FMLA applies to its employees, defendant is entitled to summary judgment because plaintiff has not established that he was actually entitled to FMLA leave. The FMLA entitles an eligible employee with a "serious health condition" up to 12 weeks of medical leave. 29 U.S.C. § 2612(a)(1)(D).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

Page 9

Defendant does not dispute that plaintiff actually had a serious health condition, but argues that plaintiff did not provide sufficient notice that he was requesting FMLA leave or proper certification of his condition.

*9 To be eligible for FMLA leave, an employee must put his employer on notice of his need for leave. If, as in the instant case, the need for leave is not foreseeable, notice must be given "as soon as practicable under the facts and circumstances of the particular case."29 C.F.R. § 825.303(a). The FMLA does not require employees to "expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed."29 C.F.R. § 825.303(b). The Seventh Circuit has held that the employee satisfies his notice requirement by requesting leave for a covered reason. *Price v. City of Fort Wayne,* 117 F.3d 1022, 1026 (7th Cir.1997); *seealsoAubuchon v. Knauf Fiberglass GmbH,* 359 F.3d 950, 953 (7th Cir.2004)(an employee is not required to write a "brief demonstrating legal entitlement," but must give the employer "enough information to establish probable cause ... to believe that he is entitled to FMLA leave."). Such notice is sufficient to trigger the employer's duty to request such additional information from the employee's doctor as may be necessary to confirm the employee's entitlement. 29 C.F.R §§ 825.302(c)-(d); *Aubuchon,* 359 F.3d at 953;*Price,* 117 F.3d at 1026.

In the instant case, plaintiff wrote a letter to Schoen on February 20, 2002, the day after he injured his back, stating that he "had an appointment on Tuesday February 19, 2002 for back complications."Schoen testified that he was not aware of plaintiff's injury but that he "took [the letter] to mean that he was going to be off work for a few days."On February 22, 2002, plaintiff sent Schoen another letter, stating that he was under the care of a doctor and a psychiatrist and that he was "unavailable for work until notified and released by [his] doctors."Plaintiff sent Schoen a third letter on February 25, 2002, stating in part that he was under a doctor's care for his back injury, under psychiatric care, and "not available for job services (work) until [he is] well and able to do so."On March 4, 2005, plaintiff faxed two doctors' notes to Schoen indicating that he was receiving medical care and unable to work for some period of time. During this time period neither Schoen nor any other employee of defendant attempted to contact plaintiff, and plaintiff received no response from defendant. Plaintiff asserts that in late February and early March he repeatedly made oral requests for FMLA paperwork. Defendant denies that it was aware of plaintiff's request for FMLA paperwork or FMLA leave prior to at least March 18, 2002.

Plaintiff's letters repeatedly stated that he was unable to return to work due to a medical condition, and plaintiff contends that he was never contacted by defendant to provide more information or clarification. A jury could reasonably find that plaintiff provided defendant with notice of his need for FMLA leave. Plaintiff has thus created a triable issue of fact whether defendant had sufficient notice of plaintiff's need for FMLA leave. *SeeShivakumar v. Abbott Laboratories,* 2001 WL 775967, at *6 (N.D.Ill. July 10, 2001)(plaintiff's repeated statements that she "could not work" were sufficient to create a genuine dispute as to whether defendant's obligations under the FMLA were triggered).

*10 Defendant also argues that its obligations under the FMLA were not triggered because plaintiff failed to provide the necessary certification of his serious medical condition. An employer may require that leave requested under the FMLA "be supported by a certification issued by the health care provider of the eligible employee."29 U.S.C. § 2613(a). The employer must advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any deficiency. 29 C.F.R. § 825.306(b). In the instant case, defendant argues that although plaintiff provided two doctors' notes, they failed to state the information required by defendant's FMLA policy, including "the day on which the serious health condition commenced, the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

Page 10

probable duration of the condition, the appropriate medical facts within the knowledge of the health care provider regarding the condition, and that the leave is needed either to care for a family member or that the employee is unable to perform the functions of his or her positions."It is undisputed that defendant never advised plaintiff that the doctors' notes were insufficient and did not mail formal FMLA paperwork to plaintiff until March 22, 2002. Plaintiff asserts that he was not asked for further certification regarding his medical condition, and that because he received notice of his termination less than a week after he received his FMLA paperwork, he did not have an opportunity to complete it or provide more complete medical certification. Plaintiff has created a triable issue of fact as to whether he provided sufficient medical certifica-tion.

Disputed issues of fact exist as to whether defendant and Simon were joint employers and defendant's employees therefore eligible for FMLA benefits, and whether plaintiff provided defendant with sufficient notice and medical certification regarding his need for FMLA leave. Accordingly, the court denies defendant's motion for summary judgment as to Count I.

Because the court denies summary judgment as to Count I, it need not reach plaintiff's argument that defendant is estopped from challenging plaintiff's FMLA eligibility, or defendant's argument that the court disregard paragraph 4 of plaintiff's declaration, which states that defendant "did not post any information, whatsoever, about an employee's rights pursuant to the [FMLA]."

II. Retaliation under the FMLA

In Count II, plaintiff alleges that he was retaliated against for attempting to exercise his rights under the FMLA. Defendant argues that summary judgment should be granted as to Count II because defendant's employees were not eligible for FMLA leave because defendant did not employ the requite number of employees. As discussed above, the court finds that plaintiff has raised triable issues of fact as to whether defendant's employees were eligible for FMLA leave. Defendant argues that even if defendant was subject to the FMLA, plaintiff cannot establish a prima facie case of retaliation.

**\*11** The FMLA affords employees protection in the event they are discriminated against for exercising their rights under the FMLA. See29 U.S.C. § 2615(a)(1)-(2). To assert a claim for retaliatory discharge under the FMLA, a plaintiff must establish that the employer engaged in intentional discrimination against him for exercising his FMLA rights. See*King v. Preferred Technical Group,* 166 F.3d 887, 892 (7th Cir.1999); *Nowak v. Oce-USA, Inc.,* 2004 WL 2967432, at \*4 (N.D.Ill.Dec.1, 2004). The plaintiff in a retaliation case may satisfy his burden of proof by offering direct evidence that he engaged in protected activity and as a result suffered the adverse employment action, or by offering indirect evidence under the burden-shifting approach established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).*Id.*

The Seventh Circuit recently clarified the proper standard for analyzing retaliation claims at the summary judgment stage in *Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640 (7th Cir.2002), which adapted the *McDonnell Douglas* approach to retaliation claims.[FN8]The *Stone* court held that under the indirect method, a plaintiff must show that: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; (3) he was performing his job in a satisfactory manner; and (4) he was treated less favorably than any other similarly situated employee who did not engage in such protected activity. *Stone,* 281 F.3d at 644. If the plaintiff establishes a prima facie case of retaliation in this manner, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse ac-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 11
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

tion, [it] is entitled to summary judgment. Otherwise, there must be a trial."*Id.*

> FN8. The Seventh Circuit subsequently held that the retaliation analysis of *Stone* applies to FMLA retaliation claims. *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 504 n. 3 (7th Cir.2004).

Other courts have applied the *Stone* court's exact iteration of a prima facie case to FMLA retaliation claims. *See e.g.,Brown v. Chicago Sun-Times Inc.,* 2002 WL 3184484 (N.D.Ill.Dec. 17, 2002)(granting the defendant's motion for summary judgment on the plaintiff's FMLA retaliation claim because plaintiff failed to establish a prima facie case). However, "[t]he *McDonnell Douglas* methodology was 'never intended to be rigid, mechanized, or ritualistic." ' *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas,* 411 U.S. at 802 n. 13 (prima facie case will vary depending upon the type of case and the factual situation alleged). In some instances, as courts have repeatedly recognized, the factual allegations simply do not fit neatly into the categories created by various renderings of the elements a prima facie case, and a rote application of the elements is inappropriate. *See e.g.,Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 (7th Cir.1989)("By narrowly focusing on [plaintiff's] initial burden as it concerned his qualifications, the district court was distracted from the real issues in this case. At issue is the lawfulness of [plaintiff's] termination.").

*12 As in *General Scanning,* the issue in the instant case is the lawfulness of plaintiff's termination, which plaintiff claims was motivated by his intention to file a claim for FMLA benefits. Defendant urges the court to rigidly apply the elements delineated in *Stone,* and argues that plaintiff has failed to establish that other similarly situated employees were not terminated. Plaintiff counters that "similarly situated" employees may not exist in this situation because he was fired for a single, unique incident. The court agrees that in these circumstances plaintiff need not demonstrate that similarly situated employees were treated differently. Retaliation cases are not always relative; that is, a comparison with other employees may not be not necessary to discern the illegality of the employer's action. Here, a jury could reasonably find that defendant violated the anti-retaliation provision of the FMLA, and this determination does not require a consideration of other employees. Thus, in the instant case, plaintiff's failure to allege similarly situated employees is not fatal to establishing a prima facie case of retaliation.

Defendant also argues that plaintiff has failed to establish a second element of the prima facie case from *Stone,* that he was performing his job satisfactorily, but defendant's argument is unpersuasive. Plaintiff was placed on a performance review plan in October 2001, but he was subsequently removed from the plan and granted what Schoen described as a "generous pay increase." Although Schoen testified at his deposition that plaintiff's performance had deteriorated recently, Schoen stated that it was not a serious problem. Schoen also stated that he was not aware of other performance problems with plaintiff. Defendant argues that the incident of February 22 constitutes unsatisfactory performance, and also the reason for his termination, which is precisely what plaintiff challenges and is discussed below. In the instant case, to require plaintiff to undermine defendant's explanation for his termination in order to establish his prima facie case puts the cart before the horse. Plaintiff here has offered enough evidence to establish a prima facie case that he was unlawfully terminated in retaliation for his intention to file an FMLA claim.

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 938-39 (7th Cir.1996). In a retaliation claim, "the element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee."*Collins v.*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 12
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

*Dial Corp.,* 1997 WL 695730, at *4 (N.D.Ill. Nov.4, 1997)(citing *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720 (1992)). In the instant case, defendant has articulated a non-discriminatory reason for firing plaintiff. Plaintiff's termination letter states two reasons for plaintiff's termination: (1) that he wilfully violated company policy by refusing to sign the Handbook; and (2) that "[o]ver the last three months, your hostile attitude and refusal to follow direction has been discussed with you several times."Once the employer produces a valid reason for discharge, the employee must show the purportedly valid reason was pretextual. *Id.* An employee establishes pretext by showing that the employer's proffered reason is unworthy of credence or that the decision to terminate was more likely than not motivated by discriminatory reasons. *Id.*

*13 Plaintiff in the instant case argues that the reasons for his termination stated in his termination letter were pretextual. First, plaintiff argues that refusing to sign the Handbook is a "flimsy reason" for terminating him and that termination was contrary to defendant's progressive discipline policy. Plaintiff's argument is supported by the deposition testimony of George, plaintiff's day-to-day supervisor, that the "handbook incident was nothing," and that he did not believe that it warranted plaintiff's termination. Schoen did not decide to recommend plaintiff's termination immediately after learning of the February 22 incident, but asked that plaintiff return to Lincolnwood to speak with him a few days later. Lastly, plaintiff's termination letter references "any attempts that could have been made for you to continue your employment with [defendant]."

Second, plaintiff argues that the other explanation in his termination letter is also unworthy of credence. The termination letter states, "We would like to recognize that this termination is not solely based on your refusal to sign the acknowledgment agreement. Over the last three months, your hostile attitude and refusal to follow direction has been discussed with you several times."Plaintiff counters that his allegedly hostile attitude was not discussed with him during the three months prior to his termination. Schoen, plaintiff's direct supervisor, testified that he did not draft this portion of the termination letter, he did not know what this sentence in the termination letter referred to, and he had not spoken to plaintiff about his allegedly hostile attitude in the three months prior to his termination. Defendant offers no evidence of plaintiff's hostile attitude or other performance issues, or any discussions with plaintiff during the three-month period specified in the letter. Plaintiff has thus created a triable issue of fact whether the proffered explanations for his termination are pretextual.

When an employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses. *Collier v. Budd Co.,* 66 F.3d 886 (7th Cir.1995). Plaintiff has attacked the credibility of defendant's witnesses, particularly Ricks. "[T]his credibility judgment is best left to the finder of fact."*Id.,* citing *Courtney v. Biosound,* Inc., 42 F.3d 414, 423-24 (7th Cir.1994). As the Seventh Circuit has said many times, summary judgment cannot be used to resolve swearing contests between litigants.*Payne v. Pauley,* 337 F.3d 767 (7th Cir.2003).

In the instant case, plaintiff has cast enough doubt on defendant's proffered reasons for plaintiff's termination to make summary judgment inappropriate. The attack on defendant's proffered reasons for termination is bolstered by evidence that defendant was terminated only a few days after defendant became aware of plaintiff's intention to file an FMLA claim. *SeeDey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1458 (7th Cir.1994)(a plaintiff may establish a causal link through evidence that the discharge took place on "the heels of protected activity."). Accordingly, the court denies defendant's motion for summary judgment on Count II of the first amended complaint

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d   Page 13
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

III. Breach of contract (Count III)

**\*14** In Count III of his first amended complaint, plaintiff alleges that defendant contractually agreed in the Handbook to provide FMLA coverage to its employees, so that even if defendant is not an eligible employee under the FMLA, plaintiff was still entitled to a leave of absence. Defendant has moved for summary judgment on Count III, arguing that the Handbook did not create a contract.

Under Illinois law, there is a legal presumption that employment without a fixed duration is at will, but that presumption can be rebutted by establishing that the parties contracted otherwise. *Duldulao v. Saint Mary of Nazarath Hospital Center,* 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). To establish that an employee handbook or policy meets the requirements of contract formation, a plaintiff must allege that: (1) the language of the policy statement contains a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement was disseminated to the employee in such a manner that the employee was aware of its contents and reasonably believed it to be an offer; and (3) the employee accepted the offer by commencing or continuing to work after learning of the policy statement. *Bliss,* 2003 WL 22239655, at \*21;*Duldulao,* 115 Ill.2d at 490, 106 Ill.Dec. 8, 505 N.E.2d 314. The interpretation of the language of the employee handbook or policy manual is for the court. *Boulay v. Impell Corp.,* 939 F.2d 480, 482 (7th Cir.1991).

Plaintiff asserts that the Handbook created a contract because the introduction states, "neither this handbook nor any of its provisions are intended to bind the company in any way beyond the sole obligation to pay wages earned and benefits vested through the employee's last day worked."Another section of the Handbook states, "an employee may be eligible for the benefits of the [FMLA]. Employee eligibility for this benefit is defined as: any employee who has been employed for at least 12 months and has worked at least 1,250 hours (25 hours per week based on a 50 week year) during the previous 12 month period."Plaintiff argues that because the Handbook omits the 50 employee requirement from its statement of FMLA eligibility, plaintiff's FMLA rights vested when he worked 1,250 hours within a twelve month period.

Plaintiff cites *Thomas v. Pearle Vision,* 251 F.3d 1132 (7th Cir.2001), for the proposition that a handbook provision may be sufficient to create a contract between the employer and employee as to FMLA coverage. In *Thomas,* the court found that a contract was created by express language in the employer's summary plan description of employee benefits, which stated that, *"all* employees with one year of service who worked 1,250 hours with Pearle in the 12 months immediately prior to requesting leave" are eligible for FMLA leave, and "[i]f you have worked for Pearle for at least one year, and have worked 1,250 hours or more during the 12 month period prior to requesting leave, you are eligible for [FMLA] leave."*Id.* at 1133, 1137 (emphasis in original). The instant case is distinguishable from *Thomas* because, although the Handbook contains only a partial statement of eligibility, it states only that "an employee may be eligible" for FMLA benefits, and the omission of an eligibility requirement is not analogous to the express statements of guaranteed eligibility in *Thomas.*

**\*15** Even if the language cited by plaintiff could be interpreted to contain a clear promise of FMLA benefits, plaintiff's breach of contract claim is extinguished by unambiguous disclaimers in the Handbook, which have been held to prevent the formation of a contract. *SeeWorkman v. United Parcel Service, Inc.,* 234 F.3d 998, 1000 (7th Cir.2000); *Boulay,* 939 F.2d at 483;*Robbins v. Bankers Life & Casualty, Inc.,* 1996 WL 341546, at \*19 (N.D.Ill. June 20, 1996); *Birks v. First Evergreen Corp.,* 1994 WL 36884, at \*4 (N.D.Ill. Feb.8, 1994). If an employee handbook specifically disclaims that it is a contract and a plaintiff cannot offer any evidence that the contract disclaimer lacks consideration or is otherwise void, no contract is formed.*Bliss,* 2003

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 14
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

WL 22239655, at *21 (citing *Garcia v. Kankakee County Hous. Auth.*, 279 F.3d 532, 535-36 (7th Cir.2002)).

In the instance case, at the time he was hired plaintiff received an employee handbook and signed a form acknowledging that he had received it. The acknowledgment form states, "[T]he employee handbook is for your use and source of information about the company and your job. It is not a contract of employment, express or implied."The Handbook, for which plaintiff did not sign an acknowledgment form, contains a disclaimer that states, "No contract, either express or implied, respecting the procedures, terms, conditions, or duration of employment is created by this handbook or by any other guidelines contained herein."Plaintiff does not argue that the earlier version of the employee handbook, for which plaintiff did sign an acknowledgment form, lacked this disclaimer. The Seventh Circuit has held that such a disclaimer, if it is clear and forthright, as it is here, is a complete defense to breach of contract claim based on an employee handbook. *See**Workman*, 234 F.3d at 1000.

Because the Handbook did not contain an express statement of eligibility, and plaintiff has presented no evidence that the multiple disclaimers lacked consideration or are otherwise void, he cannot maintain a breach of contract claim. Accordingly, defendant's motion for summary judgment is granted as to Count III.

IV. IWCA retaliatory discharge (Count IV)

Count IV of plaintiff's first amended complaint alleges that defendant violated Illinois law by terminating plaintiff in retaliation for exercising his rights under the IWCA. In Illinois, an employer generally may terminate an at-will employee at any time without cause. *See**Paz v. Commonwealth Edison*, 314 Ill.App.3d 591, 247 Ill.Dec. 641, 732 N.E.2d 696 (2nd Dist.2000). One exception to the at-will rule prohibits employers from terminating employees who exercise their rights under the IWCA.

*Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The analysis of an IWCA retaliation claim is analogous to the burden-shifting approach applied to an FMLA retaliation claim discussed above, in which plaintiff has the initial burden to establish a prima facie case. To establish a prima facie workers' compensation retaliatory discharge claim, a plaintiff must prove that: (1) he was an employee; (2) he exercised some right granted by the IWCA; and (3) his discharge was causally related to the exercise of his rights under the IWCA.*Paz*, 314 Ill.App.3d at 591, 247 Ill.Dec. 641, 732 N.E.2d 696. Defendant in the instant case has moved for summary judgment on Count IV, arguing that plaintiff cannot establish that his discharge was causally related to his exercise of rights under the IWCA.

*16 Illinois courts recognize claims for retaliatory discharge not only where the plaintiff is fired for filing a retaliatory discharge claim, but also where the plaintiff is fired because he intended to file a claim.[FN9]*Collins v. Dial Corp.*, 1997 WL 695730, at *3 (N.D.Ill. Nov.4, 1997); *Wolcowicz v. Intercraft Indus. Corp.*, 133 Ill.App.3d 157, 162, 88 Ill.Dec. 431, 478 N.E.2d 1039 (1st Dist.1985). In the instant case, there is evidence that, as with plaintiff's potential FMLA claim, defendant was aware of plaintiff's intention to file an IWCA claim at the time plaintiff was terminated. *See**Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994)("Factual support that the employer was informed of or in some way found out about plaintiff's intent to pursue relief under the [IWCA] is essential to a retaliatory discharge action."). Plaintiff's termination letter advised plaintiff that he could contact defendant's human resources department to discuss his workers' compensation claim and to continue the filing process. Further, on or about March 19, 2002, Schoen completed a report of work injury for plaintiff.

> FN9. The court notes that plaintiff's argument, without a supporting citation, that "the right to protection from retaliatory

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760
**2005 WL 599979 (N.D.Ill.)**

Page 15

discharge arises at the time of an employee's compensable injury," is patently incorrect. It is an actual or impending IWCA claim that triggers the protection against retaliation, not the injury itself.

Because plaintiff has presented evidence that defendant was aware of his intention to file an IWCA claim, and for the reasons discussed above regarding plaintiff's FMLA termination claim, plaintiff has established a prime facie case for retaliation under the IWCA. Defendant has proffered a non-discriminatory explanation for plaintiff's termination, but as with the FMLA retaliation claim, plaintiff has raised triable issues of fact regarding the truthfulness of the explanation and whether it was pretextual. Accordingly, the court denies defendant's motion for summary judgment as to Count IV.

*CONCLUSION*

For the reasons stated herein, defendant's motion for partial summary judgment is granted as to Count III (breach of contract), and denied as to Count I (FMLA), Count II (FMLA retaliation), and Count IV (IWCA retaliation). This matter is set for status on March 15, 2005, at 9 a.m.

N.D.Ill.,2005.
Dinkins v. Varsity Contractors, Inc.
Not Reported in F.Supp.2d, 2005 WL 599979 (N.D.Ill.), 10 Wage & Hour Cas.2d (BNA) 760

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.