# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT G. WINGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08:CV-00368 |
| ) | |
| THYSSENKRUPP MATERIALS NA, INC., ) | Honorable Samuel Der-Yeghiayan |
| d/b/a COPPER and BRASS SALES, INC. ) | Magistrate Judge Schenkier |
| ) | |
| Defendant. ) | |
| ) | |

## DECLARATION OF MARK DEMIEN

STATE OF ILLINOIS    )
                     )ss
COUNTY OF COOK       )

I, Mark DeMien, state, based on my personal knowledge, that I am competent to testify as follows:

1. Since 2003, I have served as a foreman at ThyssenKrupp Materials NA, Inc., d/b/a Copper and Brass Sales, Inc.'s ("Copper and Brass" or "the Company") warehouse facility located in Schaumburg, Illinois.

2. My job responsibilities include responsibility for supervising and disciplining the hourly workforce, and their terms and conditions of employment are governed by the collective bargaining agreement between Copper and Brass and Teamsters Local 714 ("the Collective Bargaining Agreement") and related work rules.

3. An employee who makes a verbal complaint about an incident at the Company is not the same thing as filing a formal, written grievance under the Collective Bargaining Agreement.

4. During the Fall of 2007 and through the time of Plaintiff's termination, my normal work hours were 3:00-3:30 a.m. until 2:30 p.m.

5. Pursuant to its authority under the Collective Bargaining Agreement, Copper and Brass enacted work rules governing its hourly workforce. Pursuant to the work rules, certain categories of infractions are subject to progressive discipline, and certain specified major work rule offenses, such as falsifying company documents, may result in immediate termination. The work rules further specify that, when possible, progressive discipline will be followed but the severity of the violation as well as the employee's past work rule violations may influence management's action. See Def.'s L.R. 56.1 Statement of Undisputed Material Facts, Ex. L.

6. Plaintiff Robert Wingo ("Plaintiff") was employeed as a warehouse clerk at Schaumburg from 1984 until his termination on December 3, 2007.

7. I supervised Plaintiff from September 2004 until his termination.

8. During Plaintiff's employment, I never saw Tyler DeMien ("T. DeMien"), Lizardo Hernandez ("Hernandez") or Ray Cather ("Cather") using cell phones during work hours.

9. Although using a cell phone during work hours and repetitive work order errors are both Category A offenses under Company work rules, they are separate, and unrelated, types of work rule violations.

2

10. During Plaintiff's employment, I never saw Cather sleeping during work hours when he was not on break or at lunch, nor did I see Cather sit at his work station doing nothing, nor did I fail to discipline Cather for any work rule violations that I did observe.

11. I do not recall Plaintiff speaking to me about concerns that T. DeMien and/or Hernandez brought him incorrect work orders and/or material in the Fall of 2007.

12. If Plaintiff did raise concerns about incorrect work orders and/or materials, I would not have laughed at him in response to those concerns.

13. I did not allow any employees to leave warehouse doors open after being instructed to leave doors closed, and would tell anyone caught doing so to close the door. Failure to close the door would then result in a written warning for insubordination (Category B Work and Safety Rule).

14. At the end of November 2007, I discovered, for the first time during Plaintiff's employment, that he included work orders on his daily production logs that he did not actually complete, and did not indicate the orders were incomplete.

15. During the years I have reviewed employees' daily production logs, I never saw any logs that were prepared in the same manner as the logs prepared and maintained by Plaintiff on November 28 and 29, 2007. I never saw any daily production logs prepared by anyone else that indicated that work orders were completed by them, when in fact they were not, or otherwise failed to disclose that they had not completed the work orders.

16. I otherwise have no knowledge of any other warehouse employee preparing daily production logs in a similar manner to Plaintiff's November 28 and 29, 2007 daily production logs. Therefore no other employee has ever been terminated for violating the work rule for falsifying company documents for the same reason as Plaintiff.

08/08/2008 08:54   18478438680   COPPER BRASS   PAGE 04

17. Nothing on Plaintiff's November 28, 2007 daily production log indicates to me that he had to finish a work order that another warehouse clerk did not complete.

18. Nothing on Plaintiff's November 28, 2007 daily production log would justify terminating another warehouse clerk for falsifying company documents.

19. Copper and Brass has a harassment policy that includes a complaint procedure, but Plaintiff never made a complaint of harassment under the policy when he complained about my alleged use of an obscenity on or around August 30, 2007.

I declare under penalty of perjury that that the foregoing is true and correct. Further Declarant sayeth not.

*Mark A. DeMien* (signature)

Mark DeMien

Dated: August 8, 2008

DETROIT.3259707.1