# EXHIBIT E

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

ROBERT G. WINGO,                          )
                                          )
            PLAINTIFF,        )
                                          )
      VS.                     ) No. CV 0 0368
                                          )
THYSSENKRUPP MATERIALS NA, INC. )
                                          )
D/B/A COOPER AND BRASS        )
                                          )
SALES, INC.                   )
                                          )
            DEFENDANTS,       )

This is the discovery deposition of Mark DEMIEN, taken in the above-entitled cause before GWENDOLYN BEDFORD, a Notary Public and Certified Shorthand Reporter within and for the County of Cook, State of Illinois, taken at the offices of VICTORIA COURT REPORTING SERVICES, INC., 29 South LaSalle Street, Suite 200, Chicago, Illinois, held on the 12th day of June, 2008 at the hour of 10 o'clock a.m. pursuant to notice.

1 workstations.

2    Q    What do you currently earn as the Plant
3 supervisor at Cooper and Brass Sales?

4         MR. DISBROW:  I am going to object as to
5 relevance.  You can answer the question.

6         THE WITNESS:  $53,000 a year is my salary.
7 BY MS. WEGNER:

8    Q    Have you been the person supervising your
9 son, Tyler, since you have been working at Cooper and
10 Brass Sales?

11        MR. DISBROW:  Object to form and foundation,
12 also object because in it currents form it
13 mischaracterizes his earlier testimony.

14             You can answer if you can.

15        MS. WEGNER:  I'll withdraw that question.
16 BY MS. WEGNER:

17   Q    When Tyler began working at Copper and Brass
18 Sales about three and a half years ago and you started
19 on the first shift, did you supervise him?

20   A    Yes.

21   Q    Did you supervise your son, Tyler, while he
22 worked on the second shift at Copper and Brass Sales?

23   A    No.

24   Q    And have you supervised your son, Tyler,

1 while he worked on the third shift at Copper and Brass
2 Sales?
3    A    Yes.  For part of the shift, not all of the
4 shift.
5    Q    For what part of the third shift do you
6 supervise your son, Tyler?
7         MR. DISBROW:  Object to the whole line of
8 questioning as to relevance.  You can answer.
9         THE WITNESS:  From the time I start until the
10 time third shift ends or the time Tyler stops working
11 overtime, if he is asked to work overtime and agrees to
12 stay.
13 BY MS. WEGNER:
14    Q    And at what time did you start working at
15 Copper and Brass Sales?
16    A    3:30 a.m. on most days.
17    Q    And has 3:30 a.m. been your start time since
18 you became the Plant Supervisor at Copper and Brass
19 Sales?
20    A    For part of the time.
21    Q    When you first became Plant Supervisor, what
22 were your hours?
23    A    Generally 5 until 2:30 p.m. or 3 o'clock.
24    Q    And when did your start time as Supervisor at

1 says "MEA" and then at the bottom of the page where it
2 says, "two more filled by second shift", my initials
3 and the date, 12/1/07.
4    Q    And if you look at the next page of Exhibit
5 Number 1, 000106, do you recognize that as a Daily
6 Production Log at Copper and Brass Sales?
7    A    Yes.
8    Q    And is your handwriting contained on this
9 page Bates stamped 06 at Exhibit Number 1?
10    A    Yes.
11    Q    And where on Page 06 of Exhibit Number 1 is
12 your writing or printing contained?
13    A    Right next to Number 20 where it is circled
14 "MEA" and just under that, MEA where it says "IG". The
15 arrow pointing to these two work orders, WO'S were
16 filled by second shift. My initials "MD" and the date,
17 12/1/07 at the bottom, right.
18         MR. DISBROW: Let me state for the record
19 this is a poor copy. It appears that part of the page
20 has been cut off on this particular document on the
21 right hand side. I don't know if that is a complete
22 copy of this document. In fact, I'm fairly confident
23 it is not.
24         MS. WEGNER: The documents that are following

1   A   I believe so, but I can't recall for sure.

2   Q   While you worked at the Copper and Brass

3 Sales location, at which you are currently employed,

4 are you aware of anyone who hasn't made a mistake on a

5 work order?

6       MR. DISBROW:  Objection as to form and

7 foundation.  Very broad.

8           You can answer if you know.

9       THE WITNESS:  No.

10 BY MS. WEGNER:

11  Q   On the Daily Production Log that we have

12 marked as Exhibit Number 2 for November 28, 2007, this

13 is a Daily Production Log that you believe was prepared

14 by Mr. Wingo; is that right?

15  A   Yes.

16  Q   On the November 28, 2007 Daily Production Log

17 that we have marked as Exhibit Number 2, there are a

18 number of notations in the Comments Section next to the

19 different work orders.

20          Do you know the reason those comments

21 were placed there?

22      MR. DISBROW:  Objection as to foundation.  He

23 didn't prepare the document.

24          To the degree that you know.

1　　　　THE WITNESS:　I believe that Bob was trying
2　to comment, you know, why, things he was running into
3　while filling the order.
4　BY MS. WEGNER:
5　　　Q　Do you know whether employees of Copper and
6　Brass Sales typically made comments next to the work
7　order numbers on the Daily Production Logs when they
8　encountered any type of problem?
9　　　A　Yes.
10　　Q　And there were other employees at Copper and
11　Brass Sales who also made notes in the Comments Section
12　on the Daily Production Logs noting any problems they
13　encountered or unusual things with particular work
14　orders?
15　　　A　Yes.
16　　　Q　And it also appears from Exhibit Number 2
17　that Mr. Wingo noted on the November 28, 2007
18　Production Log that he had no work orders in the first
19　half hour on Line Number 2.　Do you see that?
20　　　　MR. DISBROW:　Objection to the degree that
21　the document speaks for itself and foundation because
22　he didn't prepare this document.
23　　　　THE WITNESS:　I see he wrote that, yes.
24

1          follows:

2               "Q   Do you know whether or not on

3          November 28, 2007, Daily Production

4          Log, if any filled out by Mr. Alvarez,

5          these two work orders on Line 16 and 17

6          of Exhibit Number 2 were also

7          written?")

8          MR. DISBROW:  Objection as to Form.  I think

9 it is vague.  I don't really understand it.

10         THE WITNESS:  I don't understand it.

11                (WHEREUPON Exhibit 2 was marked

12                   for identification)

13 BY MS. WEGNER:

14    Q    Isn't the Daily Production Log a document

15 where each employee is supposed to note each work order

16 that they worked on so that you know what they have

17 done during the day?

18    A    Completed work order.

19    Q    Do you use any of the information contained

20 on these Daily Production Logs relating to the starting

21 and stopping times for work orders to gauge

22 productivity?

23         MR. DISBROW:  Object as to form.  The one

24 that we have been looking at appears to only have stop