# EXHIBIT F

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

ROBERT G. WINGO,                )
        PLAINTIFF,               )
    VS.                          ) No. CV 0 0368
THYSSENKRUPP MATERIALS NA, INC.  )
D/B/A COOPER AND BRASS           )
SALES, INC.                      )
        DEFENDANTS,              )

This is the discovery deposition of MARIO ALVAREZ, taken in the above-entitled cause before GWENDOLYN BEDFORD, a Notary Public and Certified Shorthand Reporter within and for the County of Cook, State of Illinois, taken at the offices of VICTORIA COURT REPORTING SERVICES, INC., 29 South LaSalle Street, Suite 200, Chicago, Illinois, held on the 12th day of June, 2008 at the hour of 10 o'clock a.m. pursuant to notice.

1    A    Yes, there were two people, Juan Martinez and
2 Al Herrera.
3    Q    And did Mr. Martinez and Mr. Herrera work in
4 the RBW non-processed area on the third shift?
5    A    Yes, they did.
6    Q    And if you weren't able to complete
7 everything on a work order before your shift ended, did
8 you mark down how much you did so that Juan or Al would
9 know to finish?
10   A    Yeah.
11   Q    Did you mark down how much you had completed
12 on a work order, but were not able to complete fully by
13 the end of your shift, did you write that on your
14 production log --
15   A    Yes.
16        MR. DISBROW: Objection. Let her finish the
17 question.
18        MS. WEGNER: -- similar to this document that
19 we earlier marked as Exhibit 2.
20        THE WITNESS: Yes.
21        MR. DISBROW: Objection. Calls for
22 speculation. Form and foundation.
23             I'm not trying to interrupt you. I get
24 an opportunity to object to the question. I really

1 different things that they came out with.

2    Q    Are you aware of anyone that worked at Copper
3 and Brass Sales while you worked there who did not make
4 a mistake on a work order?

5        MR. DISBROW:  Object as to foundation.

6        THE WITNESS:  Everybody make mistakes.

7 BY MS. WEGNER:

8    Q    Are you familiar with Tyler DeMien?

9    A    Yes, ma'am.

10    Q    And Tyler DeMien is someone that you worked
11 with at Copper and Brass Sales?

12    A    Yes.

13    Q    And is Tyler DeMien the person that you
14 indicated was the side loader?

15    A    Yes, that is correct.

16    Q    And Tyler's -- to your knowledge, how long
17 did Tyler work at Copper and Brass Sales?

18    A    I don't know.  His dad brought him in.  So,
19 three -- let's see.  I worked two and a half years
20 second shift.  He was there.  About three and a half
21 years.

22    Q    Do you know how old Tyler DeMien is?

23    A    When he started, he was only 19 or so.  Yeah.

24    Q    While you worked at Copper and Brass Sales

1 with Tyler DeMien, did you ever witness him receiving
2 more favorable treatment than other employees?
3          MR. DISBROW:  Objection as to foundation.
4          THE WITNESS:  Well, that is every single day.
5 He used to get drunk.  He used to get drunk in the
6 parking lot and his dad would come in at 3 o'clock in
7 the morning and wake him up so he can go work.  They
8 punch him in.  They punch him out early.  So all this
9 treatment that he has, he always made mistakes.  He
10 always did all these things that his dad, who is Mark
11 DeMien, never wrote anything to him, you know.  So it
12 is the other foremen's because he is the son of a
13 foreman.
14     Q    Who did you witness punching Tyler DeMien in
15 or out?
16          MR. DISBROW:  Objection as to foundation.
17 Assumes facts not in evidence?
18     A    Mark.
19     Q    When did you witness John Behenna punching
20 Tyler DeMien in and out.
21     A    It was going on for three months.  I mean
22 every single time.  They would go early.  So is his
23 nephew by the way, John's nephew, which the policy of
24 Copper and Brass you are not supposed to have any

Page 41

1 family working with you for the simple reason, that is

2 the reason, the treatment.  They get special treatment.

3     Q    All right.  Who is John Bahenna's nephew?

4     A    We call him Junior.  His name is -- what is

5 his name?  I can't remember his last name right now,

6 his first name.  We always called him Junior.

7     Q    During what period of time did you witness

8 Mr. Behenna punching out Tyler DeMien and his nephew,

9 Junior?

10    A    About one o'clock in the morning.  They used

11 to leave at 12 and John used to punch him out by

12 one o'clock.

13    Q    Do you know the reason that Tyler and Junior

14 would leave at midnight?

15         MR. DISBROW:  Objection as to foundation.

16         THE WITNESS:  Smoke weed.

17 BY MS. WEGNER:

18    Q    When you noticed Mr. Bahenna punching out

19 Tyler and Junior, to your knowledge had Tyler and

20 Junior finished their shift?

21    A    No.  There was another guy named Mike.  Mike

22 works in cross stock, starts from 4:30 to one o'clock

23 in the morning.  They used to leave between 12 and one

24 o'clock.  John used to punch them out all the time.

1    Q    To your knowledge, is it a violation of
2 Copper and Brass Sales' policy to punch out any other
3 employee?
4    A    Most definitely.  Everybody else would get
5 fired right there on the spot.
6    Q    While you worked at Copper and Brass Sales,
7 were you allowed to use your cell phone during working
8 hours?
9         MR. DISBROW:  Objection as to relevance.
10        THE WITNESS:  No, but they allowed several
11 people to do it.
12 BY MS. WEGNER:
13   Q    Who are you aware of being allowed to use
14 their cell phones during working hours?
15   A    Junior, Mike, Tyler, Peter LaRocco in front
16 of Randy's office.  Sitting in his forklift doing
17 nothing, talking on the phone.  Who else?
18   Q    Who would be sitting on a forklift doing
19 nothing, talking on the phone?
20   A    Pete LaRocco.
21   Q    Do you believe that Mr. Wingo was treated
22 unfairly by his termination?
23        MR. DISBROW:  Objection as to relevance.
24        THE WITNESS:  Personally, we all talked about